No. 25-3136

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

MICHAEL ERWINE,

*Plaintiff – Appellant*,

v.

ZACHARY WESTBROOK, *et al.*,

*Defendants – Appellees*.

On Appeal from the United States District Court
for the District of Nevada
Case No. 3:24-cv-00045-MMD-CSD
Hon. Miranda M. Du

---

## APPELLEES' ANSWERING BRIEF

---

Sydney Tarzwell
NATIVE AMERICAN
RIGHTS FUND
745 W. 4th Avenue, Suite 502
Anchorage, AK 99501
(907) 276-0680

Leonard R. Powell
Morgan E. Saunders
NATIVE AMERICAN
RIGHTS FUND
950 F Street NW, Suite 1050
Washington, DC 20004
(202) 785-4166
powell@narf.org

*Counsel for Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 3

ISSUES PRESENTED ......................................................................... 4

STATEMENT OF THE CASE ............................................................. 5

    I.   LEGAL BACKGROUND ........................................................ 5

    A.  Official Immunity ................................................................. 6

    B.  Sovereign Immunity and Rule 19 ....................................... 8

    II.  FACTUAL BACKGROUND .................................................. 10

    III. PROCEDURAL BACKGROUND ......................................... 13

SUMMARY OF ARGUMENT ........................................................... 18

STANDARD OF REVIEW ................................................................ 21

ARGUMENT ..................................................................................... 22

    I.   ABSOLUTE IMMUNITY BARS APPELLANT'S CLAIMS. ....... 22

    A.  *Davis v. Littell* Controls. .................................................... 23

        *1.  Under* Davis*, Tribal Officers And Employees Possess Absolute Immunity For Personnel Actions.* ............................................ 23

        *2.  *Davis *Applies To These Facts.* ..................................... 25

        *3.  *Davis *Remains Good Law.* ........................................... 29

    B.  Washoe Tribal Law Confirms Tribal Appellees' Absolute Immunity .......................................................................... 32

    C.  Out-of-Circuit Cases Also Support Application Of Absolute Immunity Here ................................................................ 36

    D.  Appellant's Counterarguments Are Wrong. .............................. 39

    II.  ALTERNATIVELY, QUALIFIED IMMUNITY BARS APPELLANT'S CLAIMS. ....................................................... 41

i

A. Appellant's First Claim (Section 1981) ........................................ 42

B. Appellant's Fourth Claim (Section 1985(2)) ............................. 46

C. Appellant's Fifth Claim (Section 1985(3)) .................................. 51

D. Appellant's Eighth Claim (*Bivens*) ............................................ 52

III. SOVEREIGN IMMUNITY ALSO PRECLUDES APPELLANT'S SUIT. ...................................................................................................... 55

A. Sovereign Immunity Applies Because Appellant's Claims Would Interfere With The Tribe's Internal Governance. ....................... 56

B. Sovereign Immunity Applies Because The Requested Relief Would Effectively Run Against The Tribe. ................................... 59

C. *Lewis* and *Acres I* Are Not To The Contrary. .............................. 62

IV. THE DISTRICT COURT PROPERLY DISMISSED FOR FAILURE TO JOIN THE TRIBE. ................................................. 65

A. The Tribe Is A Required Party. .................................................... 66

B. Appellant's Counterarguments Miss The Mark. ......................... 70

CONCLUSION ...................................................................................... 71

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Acres Bonusing, Inc. v. Marston*, ("Acres I"),
  17 F.4th 901, 908 (9th Cir. 2021)................................................ *passim*

*Acres Bonusing, Inc. v. Ramsey* ("Acres II"), No. 19-CV-5418-WHO,
  2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ...................................6, 9

*Acres v. Marston* ("Acres,
  III"), 72 Cal. App. 5th 417 (2021)................................................27

*Armstrong v. Reynolds*,
  22 F.4th 1058 (9th Cir. 2022)...............................................47, 48

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...........................................................8

*Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*,
  159 F.3d 1178 (9th Cir. 1998) ................................................22

*Avila v. L.A. Police Dep't*,
  758 F.3d 1096 (9th Cir. 2014) ...............................................35

*Bakia v. Los Angeles Cnty.*,
  687 F.2d 299 (9th Cir. 1982) ................................................66

*Barrett v. United States*,
  798 F.2d 565 (2d Cir. 1986)..............................................27, 58

*Benningfield v. City of Houston*,
  157 F.3d 369 (5th Cir. 1998) ..............................................50-51

*Boney v. Valline*,
  597 F. Supp. 2d 1167 (D. Nev. 2009) .......................................53-54

*Bressi v. Ford*,
  575 F.3d 891 (9th Cir. 2009) ................................................52

*Brooks v. Clark Cnty.*,
  828 F.3d 910 (9th Cir. 2016) .................................................7

*Buckley v. Fitzsimmons*,
  509 U.S. 259 (1993) ..........................................................26

*Buckwalter v. Nev. Bd. of Med. Examiners*,
  678 F.3d 737 (9th Cir. 2012) ................................................26

*Butler v. San Diego Dist. Atty's Off.*,
  370 F.3d 956 (9th Cir. 2004) .................................................7

*C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
  532 U.S. 411 (2001) ..........................................................38

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California,*
  547 F.3d 962 (9th Cir. 2008) ............................................................ 66
*Chavez v. Robinson,*
  12 F.4th 978 (9th Cir. 2021) ............................................................ 64
*Cmty. House, Inc. v. City of Boise,*
  623 F.3d 945 (9th Cir. 2010) ............................................................ 6
*CoreCivic, Inc. v. Candide Grp., LLC,*
  46 F.4th 1136 (9th Cir. 2022) ...................................................... 31-32
*Corr. Servs. Corp. v. Malesko,*
  534 U.S. 61 (2001) ............................................................................ 54
*Cunningham v. Horvath,*
  860 A.2d 809, 2004 WL 2421222 (Del. Oct. 18, 2004) ........................ 33
*Davis v. Littell,*
  398 F.2d 83 (9th Cir. 1968) ...................................................... *passim*
*Dawavendewa v. Salt River Project Agricultural Improvement & Power District,*
  276 F.3d 1150 (9th Cir. 2002) ..................................................... 68, 69
*Dillon v. Yankton Sioux Tribe Hous. Auth.,*
  144 F.3d 581 (8th Cir. 1998) ..................................................... 43, 48
*Diné Citizens Against Ruining Our Env't v. BIA,*
  932 F.3d 843 (9th Cir. 2019) ................................................... 66-67, 69
*Diversity v. Babbitt,*
  150 F.3d 1152 (9th Cir. 1998) ..................................................... 67, 68
*Doe 1 v. Buratai,*
  318 F. Supp. 3d 218 (D.D.C. 2018) ................................................ 38-39
*E.E.O.C. v. Peabody W. Coal Co.,*
  400 F.3d 774 (9th Cir. 2005) ....................................................... 65, 70
*Erwine v. United States,* No. 25-3134
  (9th Cir. appeal docketed May 15, 2025) ............................................ 16
*Evans v. McKay,*
  869 F.2d 1341 (9th Cir. 1989) ............................................................ 46
*FTC v. Consumer Def., LLC,*
  926 F.3d 1208 (9th Cir. 2019) ............................................................ 31
*Great W. Casinos, Inc. v. Morongo Band of Mission Indians,*
  74 Cal. App. 4th 1407 (1999) ...................................................... 28, 29
*Gregoire v. Biddle,*
  177 F.2d 579 (2d Cir. 1949) ............................................................... 24

*Hardin v. White Mountain Apache Tribe,*
  is illustrative. 779 F.2d 476 (9th Cir. 1985) ...................... 56, 57, 58, 64

*Hernandez v. Mesa,*
  589 U.S. 93 (2020) ................................................................6

*Hilliard v. Ferguson,*
  30 F.3d 649 (5th Cir. 1994) ................................................47

*Hirata v. S. Nevada Health Dist.,*
  No. 2:13-CV-2302-LDG-VCF, 2014 WL 4798612 (D. Nev. Sept. 26,
  2014) ..................................................................................50

*Hui v. Castaneda,*
  559 U.S. 799 (2010) ............................................................40

*Jackman v. 20th Jud. Cir. Ct. Admin.,*
  No. 2:19-cv-828, 2020 WL 6321921 & n.7 (M.D. Fla. Oct. 28, 2020)...50

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,*
  523 U.S. 751 (1998) ............................................................38

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation,*
  48 F.4th 934 (9th Cir. 2022)............................................65-66

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005) ............................................45

*Lazy Y Ranch Ltd. v. Behrens,*
  546 F.3d 580 (9th Cir. 2008) ..........................................21-22

*Lewis v. Clarke,*
  581 U.S. 155 (2017) ....................................................*passim*

*Malley v. Briggs,*
  465 U.S. 335 (1986) ..............................................................8

*Maverick Gaming LLC v. United States,*
  123 F.4th 960 (9th Cir. 2024), cert. denied sub nom. *RunItOneTime*
  *LLC v. United States,* No. 24-1161, 2025 WL 2823742 (U.S. Oct. 6,
  2025) ................................................................ 10, 22, 66, 68

*Maxwell v. Cnty. of San Diego,*
  708 F.3d 1075 (9th Cir. 2013) ................................. 55, 57, 58

*McKay v. Ingleson,*
  558 F.3d 888 (9th Cir. 2009) ..............................................35

*Mestek v. LAC Courte Oreilles Community Health Center,*
  72 F.4th 255 (7th Cir. 2023)...................................... 59, 60, 61

*Michigan v. Bay Mills Indian Cmty.,*
  572 U.S. 782 (2014) ..............................................................8

v

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) ............................................................ 31

*Modoc Nation v. Bohl,*
No. 24-5135, 2025 WL 2814397 (10th Cir. Oct. 3, 2025)... 36, 37, 38, 64

*Morse v. N. Coast Opportunities, Inc.,*
118 F.3d 1338 (9th Cir. 1997) ........................................................ 53

*Mullenix v. Luna,*
577 U.S. 7 (2015) ............................................................... 7, 8, 42

*Murgia v. United States,*
No. 2:07-cv-101, 2010 WL 11628039 (D. Ariz. Apr. 28, 2010) ............ 53

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.,*
498 U.S. 505, 509 (1991) ................................................................. 8

*Paeste v. Gov't of Guam,*
798 F.3d 1228 (9th Cir. 2015) ........................................................ 64

*Pearson v. Callahan,*
555 U.S. 223 (2009) ......................................................................... 7

*Pink v. Modoc Indian Health Project, Inc.,*
157 F.3d 1185 (9th Cir. 1998) ........................................................ 44

*Pistor v. Garcia,*
791 F.3d 1104 (9th Cir. 2015) .......................................... 55, 56, 57, 58

*Portman v. Cnty. of Santa Clara,*
995 F.2d 898 (9th Cir. 1993) ..................................................... 47, 48

*Reichle v. Howards,*
566 U.S. 658 (2012) ................................................................. 8, 42

*Rendell-Baker v. Kohn,*
457 U.S. 830 (1982) ................................................................. 53, 54

*Republic of Philippines v. Pimental,*
553 U.S. 853 (2008) ....................................................................... 10

*Ricci v. Key Bancshares of Maine, Inc.,*
768 F.2d 456 (1st Cir. 1985) .......................................................... 27

*Romero v. Peterson,*
5 F.3d 547, 1993 WL 375746 (10th Cir. 1993) ............................... 36-37

*Romero v. Peterson,*
930 F.2d 1502 (10th Cir. 1991) ...................................................... 36

*S. Nev. Fire Prot. Inc. v. Clark Cnty.,*
No. 2:21-CV-1843, 2022 WL 19795807 (D. Nev. Dec. 19, 2022).....47-48

*Salt River Project Agric. Imp. & Power Dist. v. Lee,*
672 F.3d 1176 (9th Cir. 2012) ........................................................ 65

*Santa Clara Pueblo v. Martinez,*
    436 U.S. 49 (1978) ...................................................................... 8, 51-52

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993) ........................................................................... 39

*Shermoen v. United States,*
    982 F.2d 1312 (9th Cir. 1992) ..................................................... 65, 66

*Snyder v. Navajo Nation,*
    382 F.3d 892 (9th Cir. 2004) ........................................................... 49

*Stathis v. Marty Indian Sch. Bd. Inc.,*
    560 F. Supp. 3d 1283 (D.S.D. 2021) ............................................... 43

*Sw. Ctr. for Bio. Diversity v. Babbitt,*
    150 F.3d 1152, 1154 (9th Cir. 1998)............................................... 67

*Talton v. Mayes,*
    163 U.S. 376 (1896) ......................................................................... 52

*Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of,*
    *Okla.*, 498 U.S. 505 (1991) ................................................................ 8

*Taylor v. Ala. Intertribal Council Title IV J.T.P.A.,*
    261 F.3d 1032 (11th Cir. 2001) ....................................................... 44

*Trarms, Inc. v. Leapers, Inc.,*
    No. 16-14229, 2017 WL 1908787 (E.D. Mich. May 10, 2017)............. 50

*Tripp v. Dep't of Def.,*
    173 F. Supp. 2d 58 (D.D.C. 2001) ................................................... 49

*Turner v. Martire,*
    82 Cal. App. 4th 1042 (2000) ............................................................ 6

*United States v. Shuemake,*
    124 F.4th 1174 (9th Cir. 2024) ................................................... 42, 55

*United Steel Workers Loc. 12-369 v. United Steel Workers Int'l,*
    728 F.3d 1107 (9th Cir. 2013) ......................................................... 43

*Wardle v. Ute Indian Tribe,*
    623 F.2d 670 (10th Cir. 1980) ..................................................... 43, 44

*Westfall v. Erwin,*
    484 U.S. 292 (1988) ........................................................................... 6

*White v. Univ. of Cal.,*
    765 F.3d 1010 (9th Cir. 2014) ......................................................... 10

*Wilson v. Layne,*
    526 U.S. 603 (1999) ......................................................................... 49

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017) ..........................................................48-49, 50, 51

## **Statutes**

25 U.S.C. § 2804(f)...........................................................50

25 U.S.C. § 5307(b)...................................................45, 58

28 U.S.C. § 1291..............................................................4

42 U.S.C. § 1981.......................................................*passim*

42 U.S.C. § 1985(2)...................................................*passim*

42 U.S.C. § 1985(3)...................................................*passim*

42 U.S.C. § 2000e(b)......................................................43

MCL § 691.1407(5).........................................................33

42 U.S.C. § 1985(2) and (3)...............................................4

Pub. L. No. 93-638 (1975).........................................11, 45

Washoe Tribal Code § 33-20(2).................................17, 34

Washoe Tribal Code § 33-30-010..................................34

## **Rules**

Fed. R. of Civ. P. 19....................................................*passim*

## **Regulations**

*Indian Entities Recognized by and Eligible to Receive Services From the United States Bureau of Indian Affairs,*
89 Fed. Reg. 99,899 (Dec. 11, 2024)......................................11

## INTRODUCTION

Appellant is a disgruntled ex–police officer who previously worked for the Washoe Tribe of Nevada & California. Tribal Appellees are his former supervisors. Tribal Appellees terminated Appellant's employment on behalf of the Tribe. Appellant alleges that Tribal Appellees did so because of his reputation as a cop who reports other cops' misconduct. He brought claims seeking damages from Tribal Appellees in their individual capacities.

His claims are meritless. But that is not the issue here. Rather, as the district court recognized, Appellant's suit cannot proceed because it runs afoul of tribal immunity from suit. Specifically, it is barred by official immunity (absolute or, at minimum, qualified) and sovereign immunity (directly and, under Federal Rule of Civil Procedure 19, indirectly).

*First*, Appellant's suit runs afoul of absolute immunity. Nearly sixty years ago, this Court held in *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968), that absolute immunity conferred by a tribe barred a claim by a terminated tribal employee seeking to hold his former supervisor liable for an unfavorable employment evaluation. This case is the same. In fact,

this case is even easier than *Davis*. In *Davis*, tribal law did not directly answer whether the former supervisor possessed immunity from suit, so the Court had to resort to general immunity principles to conclude that absolute immunity applied. Here, by contrast, the Washoe Tribe has expressly granted absolute immunity to Tribal Appellees. Absolute immunity thus bars Appellant's claims, and the Court can resolve this case on this ground alone.

*Second*, in the alternative, qualified immunity bars Appellant's claims. Appellant suggested below that qualified immunity, rather than absolute immunity, is the official immunity that applies here. That is wrong—this is an absolute immunity case. But even if (counterfactually) qualified immunity applied, it would still mandate affirmance. Appellant's claims are premised on laws that either do not apply in the tribal context or whose application to the tribal context is at best murky. Appellant accordingly cannot show a violation of clearly established law sufficient to overcome qualified immunity's hurdle.

*Third*, sovereign immunity also bars Appellant's claims. As a general matter, official immunity rather than sovereign immunity is the immunity that applies to individual-capacity claims. But in some rare

individual-capacity cases, both immunities apply. The question is whether the sovereign is the real party in interest. A plaintiff's own characterization of his suit is not controlling—a court must look at the substance of the plaintiff's claims. Here, the Tribe is the real party in interest because Appellant seeks a judgment that would interfere with the Washoe Tribe's public administration and effectively run against the Tribe.

*Fourth* and finally, Appellant's claims run headlong into Rule 19— which is triggered here by the Tribe's immunity from suit. Appellant's claims implicate the Tribe's ability to control the operations of its police department. The Tribe is thus a required party. And because sovereign immunity prevents the Tribe's joinder, the district court properly exercised its discretion in dismissing under Rule 19.

For these reasons and those set forth below, the district court correctly dismissed Appellant's claims. This Court should affirm.

## JURISDICTIONAL STATEMENT

The district court lacked jurisdiction over Appellant's claims because they were barred by sovereign immunity. *Acres Bonusing, Inc. v. Marston ("Acres I")*, 17 F.4th 901, 908 (9th Cir. 2021). This Court has

jurisdiction pursuant to 28 U.S.C. § 1291 because it is an appeal from a final judgment of a district court and Appellant timely appealed. 3-ER-550.

## ISSUES PRESENTED

1. Whether the Washoe Tribe's grant of absolute immunity to Tribal Appellees bars Appellant's suit seeking to hold Tribal Appellees liable for acts within the scope of their official tribal duties.

2. Whether, alternatively, qualified immunity bars Appellant's claims because it is not clearly established:

   a. that 42 U.S.C. § 1981's prohibition on racial discrimination in contracting extends to tribal employment actions;

   b. that officers and employees who work for the same tribe can form a conspiracy for purposes of 42 U.S.C. § 1985(2) and (3);

   c. that Appellant had constitutional rights related to his tribal employment so as to trigger 42 U.S.C. § 1985(3); and

   d. that federal funding of tribal police services transforms tribal police officers into federal actors for purposes of *Bivens*.

4

3. Whether sovereign immunity also bars Appellant's claims because Appellant's claims would interfere with the Washoe Tribe's public administration and effectively run against the Tribe.

4. Whether the Washoe Tribe is a necessary party because Appellant's claims implicate the Tribe's ability to control the operations of its police department.

## STATEMENT OF THE CASE

For purposes of this appeal, Tribal Appellees accept the allegations in the First Amended Complaint ("Complaint") as true to the extent not contradicted by documents incorporated by reference into the Complaint or properly subject to judicial notice.

## I.    LEGAL BACKGROUND

Suits against tribal officers and employees can implicate two types of immunity: official immunity and sovereign immunity. They can also trigger the procedural mechanism that prevents plaintiffs from circumventing sovereign immunity: Federal Rule of Civil Procedure Rule 19. Both immunities, and Rule 19, are at issue here.

## A.    Official Immunity

Official immunity is a "form of personal immunity," *Lewis v. Clarke*, 581 U.S. 155, 164 n.2 (2017), that is "available … to government officials sued in their individual capacities," *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 965 (9th Cir. 2010). A threshold defense that compels dismissal when it applies, official immunity "rests on the view that the threat of liability will make [government] officials unduly timid in carrying out their official duties." *Westfall v. Erwin*, 484 U.S. 292, 295 (1988), *superseded by statute on other grounds as stated in Hernandez v. Mesa*, 589 U.S. 93, 110-11 (2020). By ensuring that "officials are freed of the costs of vexatious and often frivolous damages suits," official immunity "promote[s] effective government." *Id* at 295, 296.

The "policy rationales" for official immunity "support its application to tribal officials." *Acres Bonusing, Inc. v. Ramsey ("Acres II")*, No. 19-CV-5418-WHO, 2022 WL 17170856, at *15 (N.D. Cal. Nov. 22, 2022); *see also, e.g.*, *Turner v. Martire*, 82 Cal. App. 4th 1042, 1049 (2000), *as modified on denial of reh'g* (Aug. 14, 2000) ("[T]he extension of common law immunity to tribal officials is founded on the need to protect such officials from the detrimental effect that the prospect of liability would have on

6

their performance of their official duties."). This Circuit has accordingly recognized that "[t]ribal officials, like federal and state officials, can invoke personal immunity defenses." *Acres I*, 17 F.4th at 915; *see also Lewis*, 581 U.S. at 163 (explaining that a tribal employee "may be able to assert personal immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances" (emphasis omitted)).

Official immunity comes in two forms: "qualified [and] absolute." *Butler v. San Diego Dist. Atty's Off.*, 370 F.3d 956, 963 (9th Cir. 2004). "Absolute immunity is an extraordinary attribute." *Brooks v. Clark Cnty.*, 828 F.3d 910, 915 (9th Cir. 2016). "Those who act while clad in its armor cannot be held liable for damages under any circumstances, even if they violate clearly established federal rights, and even if they do so intentionally or maliciously." *Id.* at 915-16.

Qualified immunity is more limited, but it is still robust. Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The defense "gives government officials breathing room to

7

make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). To overcome qualified immunity, the alleged violation must be so clear that "every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (cleaned up) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Or "[p]ut simply," qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12 (quoting *Malley v. Briggs*, 465 U.S. 335, 341 (1986)).

## B.    Sovereign Immunity and Rule 19

In contrast to personal immunities like official immunity, sovereign immunity is the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). As "'separate sovereigns pre-existing the Constitution'" that "exercise 'inherent sovereign authority,'" Indian tribes are among the governments that possess sovereign immunity from suit. *Id.* (first quoting *Santa Clara Pueblo*, 436 U.S. at 56; then quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)). "[W]hen a defendant timely and successfully invokes …

8

tribal sovereign immunity," the court must dismiss, as it "lacks subject matter jurisdiction." *Acres I*, 17 F.4th at 908.

Before 2017, many courts analyzed individual-capacity suits against tribal government officials under the rubric of sovereign immunity. *See Acres II*, 2022 WL 17170856, at *17 (collecting cases). In *Lewis v. Clarke*, the Supreme Court clarified that individual-capacity suits against tribal officers and employees typically do not trigger sovereign immunity. *See* 581 U.S. at 161-64 (holding that tribal sovereign immunity did not bar an individual-capacity suit against a tribal limousine driver arising out of an off-reservation automobile accident). But the Supreme Court made clear that tribal officers and employees still enjoy sovereign immunity against purported individual-capacity claims when "the sovereign is the real party in interest." *Id.* at 161. To determine the real party in interest, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 162.

Sometimes, a plaintiff seeks to avoid tribal sovereign immunity by omitting a tribe as a formal party to a case that implicates the tribe's

interests. When that occurs, a court applies Federal Rule of Civil Procedure 19, which governs whether a case should proceed in the absence of a particular party. If an absent tribe is "necessary and indispensable," the case must be dismissed. *White v. Univ. of Cal.*, 765 F.3d 1010, 1029 (9th Cir. 2014); *see also, e.g.*, *Maverick Gaming LLC v. United States*, 123 F.4th 960, 983 (9th Cir. 2024), *cert. denied sub nom. RunItOneTime LLC v. United States*, No. 24-1161, 2025 WL 2823742 (U.S. Oct. 6, 2025).[1]

## II.   FACTUAL BACKGROUND

Appellant Michael Erwine is a former police officer who has worked for various law enforcement agencies. *See* 3-ER-443-45. In 2015 and 2016, he worked for the Sheriff's Office of Churchill County, Nevada. 3-ER-447. Appellant alleges that during that time he witnessed and reported "numerous problematic acts by fellow deputies and supervisors," but Appellant claims those reports were ignored. 3-ER-443-44. Appellant

---

[1] When Rule 19 was amended in 2007, the word "necessary" was replaced with the word "required" and the word "indispensable" was removed. These changes, however, were "stylistic only," and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Republic of Philippines v. Pimental*, 553 U.S. 853, 855-56 (2008). Courts thus often continue to use the terms "necessary" and "indispensable" when applying Rule 19, and this brief follows that practice.

also alleges that Churchill County unlawfully terminated him for raising such complaints and placed a memorandum in his personnel file that precluded him from obtaining employment with other law enforcement agencies. 3-ER-443-44, 450-56. Appellant later sued Churchill County and its sheriff for purportedly interfering with his ability to pursue the occupation of his choosing. 3-ER-456.

The Washoe Tribe of Nevada & California ("Washoe Tribe" or "Tribe") is a federally recognized Indian Tribe. *See Indian Entities Recognized by and Eligible to Receive Services From the United States Bureau of Indian Affairs*, 89 Fed. Reg. 99,899, 99,902 (Dec. 11, 2024). It operates a police department to protect its citizens and ensure public safety within its Indian country. *See* 2-ER-202. The Tribe receives funding for its police department from the United States via a periodically renewed Public Law 93-638 self-determination contract ("638 contract"). 2-ER-189-211, 482. The contract provides that "[t]he Indian Preference in training, employment and procurement and employment of Section 7(b) of Title I of P.L. 93-638, as amended, shall apply to Washoe in the performance of its responsibilities under this Compact." 2-ER-195.

In 2019, the Tribe hired Appellant to serve as a tribal police officer. 3-ER-456. Appellant remained in that position until 2022. *Id.* Appellees Zachary Westbrook, John Leonard, and Michel Hall ("Tribal Appellee Officers") also served as tribal police officers during this time. 3-ER-446. They were responsible for supervising Appellant. *See* 3-ER-462-65. Appellee Gene Burke served as the Tribe's general counsel and participated in some of the tribal employment decisions at issue. 3-ER-446, 465-67.

Appellant alleges that his tribal employment was terminated "after his employer became aware [of] the circumstances surrounding his termination from Churchill County." 3-ER-444. He further alleges that, while he was employed, there were three occasions where he and a female Native American officer jointly took action for which he was disciplined but the female Native American officer was not. 3-ER-474-75, 486-87. And he alleges that Tribal Appellees conspired to deter him from and penalize him for testifying in his Churchill County suit. 3-ER-480. Finally, Appellant asserts that Tribal Appellee officers drafted memoranda detailing the circumstances of his termination from the

Tribe and that those memoranda preclude him from becoming reemployed as a police officer for the remainder of his career. 3-ER-466.

## III.   PROCEDURAL BACKGROUND

Following his termination, Appellant sued Tribal Appellees, Churchill County (again), the Churchill County sheriff (also again), and the United States "for alleged violations of his rights under the federal and state Constitution, and Nevada state law, generally arising out of his tenure and termination as a police officer with first Churchill County and later the Washoe Tribe of Nevada and California." 1-ER-3. He requested monetary damages from Tribal Appellees in their individual capacities. 3-ER-446, 498. He did not sue the Tribe. After some initial motion practice, Appellant requested and received leave to amend his complaint. *See* 3-ER-556-60. The First Amended Complaint remained the operative complaint for the rest of the relevant proceedings in the district court. *See* 3-ER-560-68.

Appellant asserted eleven claims for relief. 3-ER-529-48. Four of those claims are the subject of this appeal. Appellant's First Claim alleges that Tribal Appellees violated 42 U.S.C. § 1981 by treating Appellant less favorably than similarly situated Native American

13

employees. 3-ER-473-76. Appellant's Fourth Claim alleges that Tribal Appellees conspired to deter Appellant from testifying in federal court and to injure Appellant on account of so testifying, in violation of 42 U.S.C. § 1985(2). 3-ER-479-80. Appellant's Fifth Claim alleges that Tribal Appellees conspired to deprive Appellant of his due process rights in his employment and reputation and to deprive him of equal protection of the law, in violation of 42 U.S.C. § 1985(3). 3-ER-480-82. And Appellant's Eighth Claim alleges that Tribal Appellee Officers violated Appellant's Fifth Amendment right to due process by discriminating against him on the basis of race. 3-ER-486-87. For three of the claims that are not the subject of this appeal, the United States substituted as defendant in place of Tribal Appellee Officers pursuant to the Federal Tort Claims Act ("FTCA"). SER-3.

Tribal Appellee Officers moved to dismiss the four claims at issue in this appeal. They argued (among other things) that Appellant's claims against them were barred by tribal sovereign immunity and that dismissal was required under Rule 19 for failure to join the Tribe to the suit. 3-ER-353. Appellee Burke joined the motion to dismiss via notice of joinder. 3-ER-562. Tribal Appellee Officers moved at the same time to

stay discovery. SER-7. Tribal Appellee Officers limited the scope of their arguments for purposes of the stay motion. They maintained that discovery should be stayed while the court resolved the threshold sovereign immunity issue. *Id.* They did not seek a stay based on their Rule 19 argument. *Id.*

The assigned magistrate judge denied the stay motion. 2-ER-284. He applied in-district case law requiring a preliminary showing of success on the merits to obtain a stay. ER-287-88. Based on a "preliminary peek" at Tribal Appellees' sovereign immunity argument, the magistrate judge determined it was not likely to succeed. 2-ER-289-95. At the same time, however, the magistrate judge recognized that Tribal Appellees "may have personal immunity defenses to which they mail avail themselves." 2-ER-295.

Following the magistrate judge's ruling, Tribal Appellee Officers requested leave to assert their official immunity from suit. 2-ER-264. The district court permitted them to file a renewed motion to dismiss. 3-ER 565-66. In their renewed motion, Tribal Appellee Officers asserted four main arguments. First, they maintained that dismissal was required because they possess absolute immunity from suit. 2-ER-167-72. Second,

they argued in the alternative that qualified immunity barred Appellant's claims because Appellant failed to show any violation of clearly established law. 2-ER-172-79. Third, they renewed their argument that sovereign immunity compels dismissal. 2-ER-180-82. Fourth, they reasserted that dismissal is required under Rule 19 for failure to join the Tribe. 2-ER-182-85. Appellee Burke again joined the motion to dismiss via notice of joinder. 3-ER-566.[2]

After briefing, the district court granted the renewed motion to dismiss.[3] It first held that official immunity barred Appellant's claims against Tribal Appellees. 1-ER-6-12. The district court observed that "it has long been established that the Washoe Tribe may, 'accord absolute privilege to its officers within the areas of tribal control.'" 1-ER-9 (quoting *Davis*, 398 F.2d at 84). Here, the Tribe had exercised that prerogative to "immunize[] tribal officers and employees from demands to recover

---

[2] Tribal Appellees reserved their right to assert other defenses not related to immunity. *E.g.*, 2-ER-163. Those issues are not before the Court in this appeal.

[3] In the same order, the district court denied Appellant's motion to reconsider its previous dismissal of Appellant's claims against the United States. 1-ER-5-6. That aspect of the district court's ruling is the subject of a separate appeal. *See Erwine v. United States*, No. 25-3134 (9th Cir. appeal docketed May 15, 2025).

16

damages arising from work they do for the Tribe." 1-ER-8 (citing Washoe Tribal Code § 33-20(2)). And Tribal Appellees' alleged conduct fell within the scope of that immunity. *See* 1-ER-9. The district court explained that "while some of the interactions described in the [Complaint] … sound unprofessional or salty, the gist of [Appellant's] allegations against Washoe Tribe [Appellees] … is that they fired him without proper cause." 1-ER-11. "These actions," the district court continued, "all fall within the scope of their official duties, which, as supervisory police officers and the Washoe Tribe's general counsel, logically include disciplining and firing employees." 1-ER-11-12. Thus, the district court concluded that absolute immunity barred Appellant's claims. 1-ER-12.

The district court also dismissed under Federal Rule of Civil Procedure 19 for failure to join the Tribe. 1-ER-12-16. It found that the Tribe is a required party to these proceedings under Rule 19(a) because they threaten to "impinge on the Washoe Tribe's very ability to govern itself." 1-ER-14. It also determined that the Tribe could not be joined due to its sovereign immunity from suit. 1-ER-15. The district court therefore exercised its discretion to dismiss the suit in the Tribe's absence. *Id.*

Appellant now appeals.

17

## SUMMARY OF ARGUMENT

**Issue 1:** Absolute immunity bars Appellant's claims. This Court's decision in *Davis v. Littell* compels that result. There, the Court held that absolute immunity barred a claim by a terminated tribal employee who sued his former supervisor over a negative performance evaluation. Examining relevant principles, the Court found that absolute immunity applied because the supervisor's evaluation encompassed public duties, official in character. This case is no different. Appellant's claims stem from Tribal Appellees' supervision, evaluation, and termination of Appellant's employment on the Tribe's behalf. Under *Davis*, these are precisely the duties that require the protection of absolute immunity.

Indeed, this case is easier than *Davis*. *Davis* instructed that the absolute immunity question turns on tribal law in the first instance. In *Davis*, tribal law did not expressly answer the immunity question, so *Davis* resorted to general immunity principles to find the answer. Here, by contrast, tribal law has expressly conferred absolute immunity on Tribal Appellees. Absolute immunity thus bars Appellant's claims.

*Davis* remains good law. Appellant maintains it conflicts with the Supreme Court's decision in *Lewis v. Clarke*. *Lewis*, however, was a

18

sovereign immunity decision, not an absolute immunity decision. The two immunities are distinct. And *Lewis* explicitly recognized that tribal officers and employees may raise personal immunity defenses—like absolute immunity—regardless of the limitations on sovereign immunity.

**Issue 2:** Alternatively, qualified immunity bars Appellant's claims. Appellant suggested below that qualified immunity applies instead of absolute immunity. That is wrong. But qualified immunity would compel dismissal regardless.

To overcome qualified immunity, Appellant must show a violation of clearly established law. He cannot do so. His racial discrimination claim under 42 U.S.C. § 1981 fails because Section 1981 does not extend to tribal employment decisions. His 42 U.S.C. § 1985(2) conspiracy claim for interfering with and retaliating for federal testimony fails because officers and employees of a tribe acting in their official capacities cannot form a conspiracy. His 42 U.S.C. § 1985(3) conspiracy claim for deprivation of constitutional rights fails for that same reason, and because Appellant lacked any constitutional rights related to his tribal employment. And his *Bivens* claim fails because Tribal Appellee Officers

were not acting under color of federal law. Although the federal government funded the Tribe's police department under a 638 contract, a 638 contract alone is not enough to transform tribal officers into federal actors for purposes of *Bivens*.

**Issue 3:** Sovereign immunity also bars Appellant's claims. Both the Supreme Court and this Court have instructed that official immunity rather than sovereign immunity is the immunity that typically applies in individual-capacity suits. But in cases where the sovereign is the real party in interest, sovereign immunity still applies alongside official immunity. A complaint's characterization of the real party in interest is not controlling. Rather, a court must independently identify the real party in interest. Sovereign immunity compels dismissal if the judgment sought would interfere with a tribe's public administration or effectively run against the tribe.

That is the case here. Appellant's claims would interfere with the Washoe Tribe's public administration because holding Tribal Appellees liable for the tribal functions at issue would attack the very core of the Washoe Tribe's sovereignty. Moreover, despite Appellant's characterization of his claims, the purported liability at issue belongs to

20

the Tribe because the alleged conduct underlying the Complaint is the Tribe's own actions—Tribal Appellees were merely the Tribe's conduit. Hence, sovereign immunity applies.

**Issue 4:** The district court properly exercised its discretion when it dismissed under Rule 19. The only issue Appellant has preserved on this score is whether the Washoe Tribe is a necessary party to Appellant's claims. The answer is yes, because Appellant's suit implicates the Tribe's sovereignty. To resolve Appellant's claims, the district court would have to evaluate the Washoe Tribe's employment policies at the Tribe's police department and determine whether they have been violated. And that detailed review of the Tribe's policies as applied to the facts of Appellant's termination would impinge on the Tribe's ability to govern itself. The Tribe was thus a necessary party, and the district court did not abuse its discretion in ordering dismissal.

## STANDARD OF REVIEW

On a motion to dismiss, the inquiry is generally "limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). The Court, however, "need not accept

as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Id.* Moreover, "[c]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998).

Issues of tribal sovereign immunity and personal immunity are reviewed de novo. *Acres I*, 17 F.4th at 907. A district court's dismissal of a case for failure to join a required party under Rule 19 is reviewed for abuse of discretion. *Maverick*, 123 F.4th at 971. Legal questions underlying that decision are reviewed de novo. *Id.*

## ARGUMENT

## I.   ABSOLUTE IMMUNITY BARS APPELLANT'S CLAIMS.

The district court correctly dismissed the claims against Tribal Appellees on the basis of absolute immunity. This Circuit has long recognized that tribes "enjoy[] sufficient independent status and control over [their] own laws and internal relationships to be able to accord absolute privilege to [their] officers within the areas of tribal control." *Davis*, 398 F.2d at 84. In fact, applying that principle, this Court in *Davis v. Littell* affirmed the dismissal of a case just like this one: a suit brought

against a former tribal employee for acts committed in the course of supervising a subordinate employee.

*Davis* compels affirmance here. Washoe Tribal law confirms that conclusion. So do cases from out of circuit. And Appellant's attempts to show otherwise are misplaced. Each of these points is addressed in turn.

## A. *Davis v. Littell* Controls.

### 1. Under **Davis**, *Tribal Officers And Employees Possess Absolute Immunity For Personnel Actions.*

The Court need look no further than *Davis* to resolve this case. In *Davis*, an ex-assistant sued his former boss—the general counsel of the Navajo Nation—for defamation. The assistant alleged that the general counsel had "reported to the Tribal Council his views as to the competency and integrity of" the assistant and that, "due to … [those statements] … and others," the assistant "was discharged from office and suffered loss of reputation." *Davis*, 398 F.2d at 84-85. By the time of the suit, the general counsel had left his post. *Id.* at 83. Nevertheless, he asserted absolute immunity, and the district court granted summary judgment on that basis. *Id.* at 83-84.

This Court affirmed. *Id.* Examining the purpose of absolute immunity, the Court explained that "[t]he need for absolute privilege is

23

in the elimination of the 'constant dread of retaliation' for injury committed in the course of duty and the allowance of 'unflinching discharge of [official] duties' free from the threat of suit and charge of malice." *Id.* at 85 (alteration in original) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). "The question" the case hung on, therefore, was whether the former general counsel's position "encompasse[d] public duties, official in character." *Id.* at 85. The Court found that it did. The alleged defamation "resulted from the manner in which appellee reported to the Tribal Council his views as to the competence and integrity of … a subordinate employee"—"precisely the duties which … require[] the protection of the privilege." *Id.* Accordingly, absolute immunity applied. *See id.*

In reaching that conclusion, *Davis* declined to examine the intent behind the general counsel's actions. The assistant claimed the general counsel had "not demonstrated that unselfish dedication to the public interest which should qualify [him] for immunity from suit as [a] public officer[]." *Id. Davis*, however, concluded that "the rule of privilege is not founded on the need of the individual officer, but on the public need for the performance of public duties untroubled by the fear that some jury

24

might find performance to have been maliciously inspired." *Id.* The general counsel's motivations thus did not matter. *See id.*

*Davis* also acknowledged that applying absolute immunity can sometimes lead to inequitable results. *See id.* But this consideration, too, did not tip the scales. While "[t]he rule [of absolute immunity] may indeed by subject to criticism," it would be "somewhat inconsistent for one jurisdiction to cherish the rule for itself while denying its benefits to a sovereign which does not possess the economic power to provide a just alternative." *Id.* Accordingly, the Court held that absolute immunity barred the assistant's suit.

The rule of *Davis* is clear. Absolute immunity bars suits against tribal officers and employees arising from tribal personnel actions.

### 2. Davis *Applies To These Facts.*

*Davis* compels dismissal here. Like the assistant in *Davis*, Appellant is a terminated tribal employee who seeks to sue his former supervisors. 3-ER-446. And like in *Davis*, Tribal Appellees' alleged conduct consisted of supervising, reporting on, and ultimately terminating a subordinate's tribal employment on behalf of the Tribe. 3-ER-444-45, 456-67, 475-76, 479-82, 486-87. "These are precisely the

duties which … requir[e] the protection of [absolute] privilege." *Davis*, 398 F.2d at 85. Absolute immunity thus bars Appellant's claims.

This conclusion is most obvious for Appellee Burke, who held the same position as the appellee in *Davis*: general counsel of a tribe. It follows for the Tribal Officer Appellees as well. *See* 1-ER-3 (determining that Tribal Appellees are "similarly situated to [each other] in all pertinent respects"). "[T]he *Davis* court itself said that the key question in determining whether immunity should extend to a particular tribal official's role was, 'whether it encompasses public duties, official in character.'" 1-ER-9 (cleaned up) (quoting *Davis*, 398 F.2d at 85). And this Court's subsequent cases have confirmed that "[i]t is the 'nature of the function performed, not the identity of the actor who performed it,' that determines whether an official is cloaked by absolute immunity." *Buckwalter v. Nev. Bd. of Med. Examiners*, 678 F.3d 737, 740 (9th Cir. 2012) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Here all Tribal Appellees engaged in the same fundamental conduct: supervising Appellant while he was a tribal employee. So all Tribal Appellees possess absolute immunity under *Davis*.

To be sure, Appellant alleges that Tribal Appellees were motivated by a desire to "retaliate[e] against him." Opening Br. at 4, Dkt. 9. But that, too, resembles the facts in *Davis*. *Supra* at 24-25. *Davis* held that an individual officer's motives are irrelevant; "the question" is simply whether the functions at issue are "public duties, official in character." 398 F.2d at 85. Other Circuits have reached the same conclusion. *See, e.g.*, *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 462 (1st Cir. 1985) ("[T]he malicious nature of the conduct is, for purposes of immunity analysis, irrelevant. The conduct need only be the *kind* of action which, if done for legitimate purposes, falls within the scope of the official's authority." (emphasis in original)).

The wisdom of this rule is especially apparent in this employment dispute. Personnel conflicts "often arouse intense feelings" and "may lead to retaliatory suits" by disciplined or terminated employees. *Acres v. Marston ("Acres III")*, 72 Cal. App. 5th 417, 447 (2021) (making these points about contract disputes). Tribal officials and employees charged with employment decisions "should not be inhibited in the faithful performance of [their] duties by the threat of harassing lawsuits against [them]." *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986). But

27

that is exactly what would happen here if suits like Appellant's could proceed.

The Tribe itself has underscored this point. As it explains in its amicus brief, absolute immunity is essential to its ability to "assure its officers and staff that they will not face personal lawsuits for performing their duties under tribal direction." Washoe Amicus Br. at 6, Dkt. 20. "Without such assurance, the Tribe will face significant challenges in attracting and retaining qualified law enforcement personnel, undermining both public safety and the Tribe's ability to govern its own affairs." *Id.*; *cf. Great W. Casinos, Inc. v. Morongo Band of Mission Indians,* 74 Cal. App. 4th 1407, 1424 (1999) (recognizing that without extension of immunity "to cover [tribal] general counsel's advice," "the tribe's interests" could be "jeopardize[d]" and "counsel's representation of the tribe in the future" could be "adversely influence[d]").

As the district court correctly recognized, "while some of the interactions described in the [Complaint] … sound unprofessional or salty, the gist of [Appellant's] allegations against [Tribal Appellees] is that they fired him without proper cause." *Id.* Such "actions all fall within

the scope of [Tribal Appellees'] official duties." *Id.* Absolute immunity therefore applies.

### 3.   Davis *Remains Good Law.*

Appellant does not dispute that *Davis* applies to these facts. *See* Opening Br. at 12-13 (making no effort to distinguish *Davis*). Instead, he maintains that the Supreme Court "overruled" *Davis* in *Lewis v. Clarke* and that this Court confirmed *Davis*'s death in *Acres Bonusing, Inc. v. Marston* ("*Acres I*"). *Id.* He misreads both cases.

Start with *Lewis*. *Lewis* was a sovereign immunity case, not an official immunity case. *See* 581 U.S. at 161. As *Lewis* itself emphasized, the two immunities are "distinct." *Id.* at 164 n.2. *Lewis* thus never purported to foreclose or limit official-immunity defenses. To the contrary, *Lewis* instructed that, regardless of the limitations on sovereign immunity, tribal officers and employees "may [still] be able to assert *personal* immunity defenses" against "individual-capacity action[s]." *Id.* at 163 (emphasis in original); *see also* 164 n.2 (declining to address tribal employee's official-immunity defense because it was "not properly before" the Court). And that is what Tribal Appellees do here.

Appellant likewise misunderstands *Acres I*. He says *Acres I* "found that the holding in *Davis* of extending tribal sovereign immunity to individual defendants because they were sued for conduct within the scope of their employment for the tribe '...would be at odds with *Lewis* and one we could not follow.'" Opening Br. at 13 (omission in original) (quoting *Acres I*, 17 F.4th at 914). But, again, *Davis* was an absolute immunity decision, not a sovereign immunity decision. The very portion of *Acres I* that Appellant cites emphasized the importance of that distinction. As Appellant notes, it instructed that tribal officers and employees do not possess *sovereign* immunity "merely because they [are] sued for conduct within the scope of their employment for the tribe." *Acres I*, 17 F.4th at 914. But it also recognized that dismissing such suits based on *official* immunity "would not on its own contravene *Lewis*." *Id.*

Indeed, the truth is that *Acres I* "indicated that *Davis* was *not* overruled by *Lewis*." 1-ER-10 (emphasis added). *Acres I* identified *Davis* as an absolute immunity decision. 17 F.4th at 913 n.4. It noted that "[w]hether tribal officials enjoy personal immunities from suit is a different question from whether tribal sovereign immunity applies." *Id.* at 913 n.4. And it confirmed that "[t]ribal officials, like federal and state

30

officials, can invoke personal immunity defenses" even when sovereign immunity does not apply. 17 F.4th at 914. In fact, *Acres I* held that several of the tribal officers and employees in that suit *were* entitled to absolute immunity, and it remanded for further inquiry into the official immunity defenses raised by the remaining officers and employees. *See id.* at 916-17. *Acres I* thus attests to *Davis*'s continued validity. And *Acres I* is not alone. As the district court observed, "courts in … recent cases continue to rely on *Davis* and treat it as good law." 1-ER-10 (collecting examples).

That is for good reason. This Court applies a "high standard" before departing from its precedent. *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019). A panel "may overrule the decision of a prior panel only where an 'intervening higher authority' is 'clearly irreconcilable' with the reasoning of that decision." *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141 (9th Cir. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). "It is not enough for there to be some tension between the intervening higher authority and the prior circuit precedent." *Id.* (cleaned up). "So long as th[is] court can apply [its]

prior circuit precedent without running afoul of the intervening authority it must do so." *Id.*

Appellant does not contend that this demanding standard is met. Nor could he. *Davis* remains good law, and it compels affirmance here.

## B. Washoe Tribal Law Confirms Tribal Appellees' Absolute Immunity.

Because *Davis* controls, the Court can end its analysis here. But if the Court delves further, the case for affirmance grows even stronger. That is apparent as soon as turning to the next part of the analysis: tribal law.

As discussed above, *Davis* held that tribal officers and employees possess absolute immunity for personnel actions. But that was not *Davis*'s first holding. Before reaching that conclusion, *Davis* first held that tribes possess "sufficient independent status and control over [their] own laws and internal relationships to be able to accord absolute privilege to [their] officers within the areas of tribal control." 398 F.2d at 84. In that instance, the Navajo Nation had not *expressly* "bestowed absolute privilege on its executive officers." *Id.* Instead, the Nation had, "[b]y its Code," indicated the immunity question should "be guided by appropriate federal or appropriate state law." *Id.* at 84-85. So *Davis*

32

proceeded to answer the immunity question on that basis. *See id.* But tribal law ultimately serves as the North Star. And when a tribe does expressly "bestow[] absolute privilege on its executive officers" "within the areas of tribal control," absolute immunity applies. *Id.* at 84; *see also Acres I*, 17 F.4th at 913 n.4 ("*Davis* involved the issue of whether the tribe had 'bestowed' on its officers the personal defense of absolute immunity." (quoting *Davis*, 398 F.2d at 84-85)).

Notably, this authority to extend absolute immunity to officers and employees is not unique. Non-tribal governments, too, may bestow absolute immunity on their officers and employees for acts taken within the scope of their duties. And in practice, non-tribal governments have done so, especially for high-ranking officials. *E.g.*, *Cunningham v. Horvath*, 860 A.2d 809, 2004 WL 2421222, at *1 (Del. Oct. 18, 2004) (table decision) (upholding dismissal of claims against police chief on absolute immunity grounds because Delaware confers absolute immunity on all "public … officers"); MCL § 691.1407(5) (extending absolute immunity in tort suits to the "highest appointive executive official of all levels of [Michigan] government"). Tribes may exercise the same prerogative.

33

The Washoe Tribe has exercised that prerogative here. As the district court recognized, "the facts here are stronger for [Tribal Appellees] than those in *Davis* because[] … []the Washoe Tribe's law explicitly provides them immunity from written demands for damages arising out of their official duties." 1-ER-10-11. To wit, Title 33 of the Washoe Tribe's Law & Order Code provides that "[t]he sovereign immunity of the Tribe shall include but not be limited to any lawsuit, action, *claim*, controversy or process, in any state, federal, or Tribal court, forum, or tribunal, unless such immunity is clearly, explicitly and unequivocally waived in accordance with this Title." 1-ER-7 (emphasis added) (quoting Washoe Tribal Code § 33-30-010, *available at* https://perma.cc/5EE6-8PFB). And it defines "claim" to mean "any written demand to recover damages from the Tribe or Tribal Entity, *or an officer or employee of the Tribe* or Tribal Entity, while engaged in work assigned or controlled by the Tribe or Tribal Entity." 1-ER-7-8 (emphasis added) (quoting Washoe Tribal Code § 33-20(2)). Tribal law thus "unequivocally immunizes tribal officers and employees from demands to recover damages arising from work they do for the Tribe." ER-8. Because

34

those are the claims that Appellant asserts, absolute immunity bars this suit. *See* 1-ER-8, 10-12.

For his part, Appellant has accepted this reading of Title 33. *See* Opening Br. at 8-9 (not challenging the district court's interpretation of tribal law). Granted, below he suggested that because Title 33 refers to "sovereign immunity" rather than "personal immunity," it does not confer absolute immunity from suit. ER-131. But he has not pressed that interpretation of Title 33 before this Court. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) ("Arguments 'not raised clearly and distinctly in the opening brief' are waived." (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009)). And the Tribe itself as *amicus curiae* has confirmed what the district court held: Title 33 "unequivocally establish[es] immunity in these circumstances." Washoe Amicus Br. at 5.

In short, the Washoe Tribe has granted absolute immunity to Tribal Appellees for individual-capacity claims like Appellant's arising out of Tribal Appellees' official tribal duties. Under *Davis*, that is enough to bar Appellant's claims.

35

### C. Out-of-Circuit Cases Also Support Application Of Absolute Immunity Here.

*Davis* is not alone. Cases from outside this Circuit confirm that absolute immunity bars claims like this one against high-level tribal officers and employees for acts taken with the scope of their duties.

Begin with a pair of cases from the Tenth Circuit: one that dismissed a suit based on tribal absolute immunity, *see Romero v. Peterson*, 930 F.2d 1502 (10th Cir. 1991), and one that found absolute immunity did not apply, *see Modoc Nation v. Bohl*, No. 24-5135, 2025 WL 2814397 (10th Cir. Oct. 3, 2025) (order and judgment).

In *Romero*, the Tenth Circuit addressed the immunity of tribal police officers who had allegedly beat a criminal suspect without cause. 930 F.2d at 1503-04. The Tenth Circuit determined that if the defendant tribal police officers in that case "were tribal actors," they would likely be "entitled to invoke the absolute immunity of the Indian tribe." *Id.* at 1505-06. It therefore remanded so the district court could determine the defendants' status. *Id.* at 1505-06. When the remand showed that the defendants were indeed tribal actors, the district court dismissed based on absolute immunity, and the Tenth Circuit affirmed. *See Romero v.*

36

*Peterson*, 5 F.3d 547, 1993 WL 375746, at *3 (10th Cir. 1993) (table decision).

The Tenth Circuit's decision in *Modoc* recently reaffirmed that absolute immunity is available in suits against tribal officers and employees. There, the Tenth Circuit considered an official immunity defense raised by the former Attorney General of the Modoc Nation of Oklahoma. *See* 2025 WL 2814397 at *1, *3. Following this Court's lead, *Modoc* recognized that "[t]ribal officials, like federal and state officials, can invoke personal immunity defenses." *Id.* at *3 (quoting *Acres I*, 17 F.4th at 915).

Granted, the Tenth Circuit in *Modoc* concluded that absolute immunity did not apply to the facts before it. But the contrast between *Modoc* and this case underscores why absolute immunity applies here. In *Modoc*, the Attorney General only claimed official immunity under state law. *See id.* at *1. Here, Tribal Appellees invoke the official immunity conferred by the Tribe and recognized by federal common law. In *Modoc*, the conduct underlying the complaint largely "precede[d]" the defendant's appointment as Attorney General. *Id.* at *4. Here, the alleged conduct at issue occurred while Tribal Appellees were Appellant's

37

supervisors. And in *Modoc*, the Attorney General's activities "were not within the scope of his authority as Attorney General" because they consisted of "allegedly start[ing] a sports betting operation and siphon[ing] money away from [a technology company] and the Tribe to market it." *Id.* Here, Appellant does not "plausibly allege[] conduct outside the scope of [Tribal Appellees'] official duties." 1-ER-11. Thus, the considerations that weighed against applying absolute immunity in *Modoc* strongly support its application in this case.

Recognition of the absolute immunity of tribal officials is also consistent with the immunity that, in similar circumstances, agents of foreign sovereigns receive—a comparison that the Supreme Court has found "instructive" in construing tribal immunity. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 759 (1998); *see C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 421 n.3 (2001). The court in *Doe 1 v. Buratai*, 318 F. Supp. 3d 218 (D.D.C. 2018), for example, accorded immunity to Nigerian officials in an action seeking damages based on the conduct of Nigeria's "police," deeming the action barred because "regardless whether the damages come from the defendants' own wallets or Nigeria's coffers," the suit sought—in effect—

38

to "enforce a rule of law against Nigeria." *Id.* at 233. Similarly, *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), recognized that immunity barred claims of "abuse of … power" by Saudi Government "police." *Id.* at 361. *Saudia Arabia* stressed that "however monstrous" abuse of police power "undoubtedly may be, a foreign state's exercise of the power of its police has long been understood … as peculiarly sovereign in nature," so immunity applied. *Id.*

These cases confirm what *Davis* long ago recognized: absolute immunity prohibits claims like this one premised on the official actions of a tribe's high-level officers and employees. Absolute immunity accordingly bars Appellant's claims here.

### D. Appellant's Counterarguments Are Wrong.

Appellant's attempts to avoid this conclusion come up short. He principally (and repeatedly) maintains that extension of absolute immunity to tribal officers and employees violates *Lewis*. *See* Opening Br. at 8-18. But he conflates absolute immunity and sovereign immunity. As discussed above, *Lewis* recognized that the two immunities are

distinct and that official immunity can apply even when sovereign immunity does not. *Supra* at 27-29.[4]

Appellant also tries to limit absolute immunity to five specific situations that he says are not present here. *See* Opening Br. at 9. Yet absolute immunity is not so cabined. *Davis* itself rejects that claim, as it applied absolute immunity to these precise circumstances. So do the Tenth Circuit's decision in *Romero* and the aforementioned cases about the immunity of foreign government actors, which do not fit in Appellant's arbitrary categories. *See supra* at 36-39. Other examples abound. *E.g.*, *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (discussing federal statutory grant of "absolute immunity to [U.S. Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment").

Finally, Appellant maintains that his allegations extend beyond the scope of Tribal Appellees' official duties. Opening Br. at 9-10, 15-16, 18. The Complaint, though, does not bear that out. Tribal Appellees' alleged actions consist of investigating a subordinate employee's misconduct,

---

[4] Appellant also presumes that sovereign immunity does not apply here. In fact, this is one of the rare individual-capacity suits where tribal sovereign immunity does still apply after *Lewis*. *Infra* at 55-64.

taking disciplinary action against that employee, determining his work schedule, evaluating his performance, placing him on administrative leave, and terminating his employment on the Tribe's behalf. *See* 3-ER-460-66. As the district court recognized, these actions fall within "the scope of [Tribal Appellees'] official duties." 1-ER-11. And the Tribe itself has now confirmed that the "the actions described [in the Complaint] were taken in the performance of the defendants' official duties," "remain tethered to the disciplinary process and termination decision made by the Tribe," and "[a]s such, fall within the scope of work assigned or controlled by the Tribe." Washoe Amicus Br. at 6. Because Appellant seeks to hold Tribal Appellees personally liable for fulfilling their official duties, absolute immunity applies.

## II. ALTERNATIVELY, QUALIFIED IMMUNITY BARS APPELLANT'S CLAIMS.

Below, Appellant suggested that Tribal Appellees possess qualified immunity from suit rather than absolute immunity. *See* 2-ER-130 (maintaining that "qualified immunity is the norm for executive officials"). That is wrong for the reasons just discussed. But even if (counterfactually) qualified immunity applied, it would still bar Appellant's claims. Tribal Appellees raised this alternative argument

41

below, and it provides a separate basis on which this Court can affirm. *See United States v. Shuemake*, 124 F.4th 1174, 1177 (9th Cir. 2024) ("This court can affirm on any basis supported by the record." (quotation marks omitted)).

As noted above, to overcome qualified immunity, the alleged violation must be so clear be that "every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quotation mark omitted) (quoting *Reichle*, 566 U.S. at 664). Appellant's suit fails this test. His First, Fourth, Fifth, and Eighth Claims are discussed in turn.

## A.  Appellant's First Claim (Section 1981)

Appellant's First Claim asserts that Tribal Appellees violated 42 U.S.C. § 1981 ("Section 1981"), which prohibits racial discrimination in the maintenance and enforcement of private contracts. *See* 3-ER-473-76. This claim fails to overcome qualified immunity for a simple reason: Tribes in general—and the Washoe Tribe in particular—are exempt from prohibitions on racial discrimination in employment.

The starting place for this analysis is Title VII of the Civil Rights Act of 1964. Title VII, similar to Section 1981, prohibits employers from

discriminating against employees on the basis of their race. Title VII, however, has carveouts. Among them: "Title VII specifically exempts Indian tribes from complying with its prohibition against employment discrimination." *Stathis v. Marty Indian Sch. Bd. Inc.*, 560 F. Supp. 3d 1283, 1300 (D.S.D. 2021); *see* 42 U.S.C. § 2000e(b).

This exemption carries over into Section 1981. "In the employment law context, § 1981 is closely related to Title VII…." *Stathis*, 560 F. Supp. 3d at 1300. Indeed, "the same legal principles that apply to a Title VII claim apply to a claim of race discrimination under 42 U.S.C. § 1981." *United Steel Workers Loc. 12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1118 (9th Cir. 2013). Given this relationship between Title VII and Section 1981, courts have recognized that Title VII's tribal exemption applies to Section 1981 as well. *E.g.*, *Wardle v. Ute Indian Tribe*, 623 F.2d 670, 673 (10th Cir. 1980) (determining that Section 1981 does not provide a cause of action against a tribe for employment discrimination); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 584 n.3 (8th Cir. 1998) (same). That is because "Title VII's specific exemption of Indian tribes control[s] over the more general language in § 1981 and other civil rights statutes." *Stathis*, 560 F. Supp. 3d at 1301. As the Eleventh Circuit put

it, "it would be wholly illogical to allow plaintiffs to circumvent the Title VII bar against race discrimination claims based on a tribe's Indian employment preference programs simply by allowing a plaintiff to style his claim as [a] § 1981 suit." *Taylor v. Ala. Intertribal Council Title IV J.T.P.A.*, 261 F.3d 1032, 1035 (11th Cir. 2001) (per curiam).

Because Indian tribes are "exempt[] … from compliance with the prohibition against discriminatory [employment actions]," *Wardle*, 623 F.2d at 673, it follows that individual tribal employees like Tribal Appellees are exempt too. Any other rule would eviscerate Title VII's tribal exemption. After all, tribes may only act through their agents. If those agents faced personal liability for considering Native American status in employment-related decisions, they could not follow lawful tribal directives to that effect, and tribes would be unable to "control their own enterprises." *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998) (concluding that Title VII's tribal exemption encompassed a nonprofit organization incorporated by two Indian tribes because that reading of the statute served "the purpose of the tribal exemption").

44

The general tribal exemption in Title VII is enough to trigger qualified immunity. But here there is even more, specific to the Washoe Tribe. Namely, the 638 contract between the United States and the Tribe that funded the Tribe's police department *required* the Tribe and its agents to prefer Native Americans in employment. It provided that "[t]he Indian Preference in training, employment and procurement and employment of Section 7(b) of Title I of P.L. 93-638 [("Section 7(b)")], as amended, shall apply to Washoe in the performance of its responsibilities under this Compact." 2-ER-195.[5] And that Section 7(b), in turn, obligated those operating under the contract, "to the greatest extent feasible," to give "preferences and opportunities for training and employment in connection with the administration of [the contract] … to Indians." 25 U.S.C. § 5307(b). Because Congress obligated the Tribe and its agents— including Tribal Appellees—to prefer Native Americans in employment, it clearly intended to exempt them from Section 1981's conflicting prohibition.

---

[5] The Tribe's self-determination contract may be "take[n] into account" because its contents are alleged in the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see* ER-482, 484 (making allegations about "the terms of the [Tribe's] Contract [with] the United States").

45

Responding to these arguments, Appellant maintained below that they conflict with *Evans v. McKay*, 869 F.2d 1341 (9th Cir. 1989), which rejected a motion to dismiss a Section 1981 claim brought against tribal officials and agents. *See id.* at 1344-45; 2-ER-137. The Section 1981 claim in *Evans*, however, was based on discrimination *outside* the employment context. *See* 869 F.2d at 1344-45. *Evans* casts no doubt on the conclusion that tribal officers and employees are exempt from *employment* discrimination claims.

For these reasons, even taking Appellant's allegations as true, Tribal Appellees did not violate Section 1981. At minimum, Tribal Appellees did not violate any clearly established right under Section 1981, and thus qualified immunity bars Appellant's First Claim.

## B. Appellant's Fourth Claim (Section 1985(2))

Appellant's Fourth Claim alleges that Tribal Appellees conspired to deter Appellant from testifying in federal court and to injure Appellant on account of testifying, in violation of 42 U.S.C. § 1985(2). 3-ER-479-80. This claim falls short because Tribal Appellees all worked for the Tribe. For that reason, the intracorporate conspiracy doctrine applies.

The intracorporate conspiracy doctrine refers to a commonsense principle: "Because a corporate entity is a singular legal entity, agents and officers acting on behalf of that corporate entity cannot form a conspiracy with each other or with the entity itself." *S. Nev. Fire Prot. Inc. v. Clark Cnty.*, No. 2:21-CV-1843, 2022 WL 19795807, at *2 (D. Nev. Dec. 19, 2022). "[I]n the context of federal conspiracy claims," this Circuit "has expressly reserved the question 'whether individual members of a single government entity can form a "conspiracy" within the meaning of section 1985.'" *Armstrong v. Reynolds*, 22 F.4th 1058, 1085 n.8 (9th Cir. 2022) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993)). "[D]istrict courts in this circuit," however, "have applied the doctrine with equal force to [federal conspiracy] claims brought against employees of a single government entity when those employees act in their official capacities." *S. Nev. Fire Prot.*, 2022 WL 19795807, at *2 (applying the doctrine in the Section 1983 context). Some circuits have done so as well. *E.g.*, *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).

The intracorporate conspiracy doctrine defeats Appellant's Section 1985(2) claim here. Appellant's claim "is nominally brought against

47

[Tribal Appellees] in their individual capacities." *S. Nev. Fire Prot.*, 2022 WL 19795807, at *3 (quotation mark omitted). "But [Appellant] fails to allege that [Tribal Appellees] ever acted outside their official capacities" as officers and employees of the Tribe. *Id.* Rather, Appellant "simply posit[s] that the individual defendants did their jobs … —albeit incorrectly and maliciously." *Id.* The intracorporate conspiracy doctrine thus applies.

At the very least, Tribal Appellees did not violate a *clearly established* right. Again, this Court "has expressly reserved the question 'whether individual members of a single government entity can form a "conspiracy" within the meaning of section 1985.'" *Armstrong*, 22 F.4th at 1085 n.8 (quoting *Portman*, 995 F.2d at 910). And "[o]ther circuits … are split" on this issue. *Portman*, 995 F.2d at 910. The Supreme Court has made clear that in these circumstances, qualified immunity applies. *See Ziglar v. Abbasi*, 582 U.S. 120, 153-55 (2017) (applying qualified immunity to Section 1985(3) claim due to the circuit split on the intracorporate conspiracy doctrine). As it explained in *Ziglar v. Abbasi*, "the fact that the courts are divided as to whether or not a … conspiracy can arise from official discussions between or among agents of the same

48

entity demonstrates that the law on this point is not well established." *Id.* at 154. "[I]t would be 'unfair' to subject officers to damages liability when even 'judges … disagree.'" *Id.* (omission in original) (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)); *see also, e.g.*, *Tripp v. Dep't of Def.*, 173 F. Supp. 2d 58, 61-62 (D.D.C. 2001) (finding qualified immunity applied to Section 1985(2) claim due to the circuit split). Appellant's Fourth Claim must accordingly be dismissed on qualified immunity grounds.

Maintaining otherwise, Appellant asserted below that because Tribal Appellee Officers qualify as federal employees for purposes of the FTCA (as demonstrated by the United States's substitution in their place for three claims that are not the subject of this appeal), they were not tribal agents under the intracorporate conspiracy doctrine. 2-ER-138. That is incorrect. This Court has rejected the argument that the United States's decision "to assume liability under the FTCA for tribal officers' torts" "means [tribal officers] are employees of the [United States] for all purposes." *Snyder v. Navajo Nation*, 382 F.3d 892, 897 (9th Cir. 2004). Just the opposite. Except for those purposes that Congress has expressly identified (which do not include the intracorporate conspiracy doctrine),

49

a tribal officer operating under a 638 contract is "not otherwise a Federal employee." 25 U.S.C. § 2804(f).

Appellant also maintained below that the intracorporate conspiracy doctrine does not apply because Tribal Appellees acted "for personal advantage rather than on behalf of their employer." 2-ER-138-40. That argument, however, merely stumbles into another split of authority, and thus again triggers the rule that when "the courts are divided … the law … is not well established." *Ziglar*, 582 U.S. at 154. Specifically, "courts are split on the application of the intracorporate rule or *on the breadth of any exceptions to it.*" *Hirata v. S. Nevada Health Dist.*, No. 2:13-CV-2302-LDG-VCF, 2014 WL 4798612, at *6 (D. Nev. Sept. 26, 2014) (emphasis added). While some cases recognize "an exception … when individuals have an 'independent personal stake,' in the conspiracy," *id.*, other courts have rejected that exception. *E.g.*, *Jackman v. 20th Jud. Cir. Ct. Admin.*, No. 2:19-cv-828, 2020 WL 6321921, at *3 & n.7 (M.D. Fla. Oct. 28, 2020) (collecting such cases); *Trarms, Inc. v. Leapers, Inc.*, No. 16-14229, 2017 WL 1908787, at *9 (E.D. Mich. May 10, 2017) ("[T]he Sixth Circuit has explicitly declined to adopt the independent personal stake exception."). The existence of "a *possible*

50

exception to the intracorporate conspiracy doctrine … where … employees act for their own personal purposes," *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) (emphasis added), therefore, does not show clearly established law. Qualified immunity applies.

### C. Appellant's Fifth Claim (Section 1985(3))

Appellant's Fifth Claim is similar to his fourth. Appellant avers that Tribal Appellees conspired to deprive him of his purported constitutional due process rights in his employment and reputation and to deprive him of equal protection of the law guaranteed by the Constitution, in violation of 42 U.S.C. § 1985(3). 3-ER-480-82. This claim fails twice over.

First, it fails for the same reason as Appellant's Fourth Claim: the intracorporate conspiracy doctrine forecloses Appellant's assertion of a conspiracy. In fact, this case falls squarely within the holding of *Ziglar*, which also concerned a Section 1985(3) claim. *See* 582 U.S. at 153-55. That alone demands dismissal of this claim.

Second, this claim fails because Appellant had no constitutional rights related to his tribal employment. The Supreme Court has long held that tribes, "[a]s separate sovereigns pre-existing the Constitution," are

"unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo*, 436 U.S. at 56 (citing *Talton v. Mayes*, 163 U.S. 376 (1896)). For both these reasons, Appellant's Fourth Claim does not overcome qualified immunity.

### D.   Appellant's Eighth Claim (*Bivens*)

Finally, Appellant's Eighth Claim is brought under *Bivens*, which permits damages suits against federal officials who violate the Constitution. Appellant maintains that Tribal Appellee Officers violated his Fifth Amendment right to due process by discriminating against him on the basis of race. 3-ER-486-87. This claim falters because Tribal Appellee Officers were not federal actors.

A *Bivens* claim against tribal employees "requires a showing that the tribal [employees] acted under color of federal authority." *Bressi v. Ford*, 575 F.3d 891, 898 (9th Cir. 2009). Tribal employees act under color of federal authority only when there "exist[s] some interdependence between the federal government and the Tribal … Department" where the tribal employee works. *Id*. This is known as the "'symbiotic relationship' test." *Id*.

Appellant here asserts that Tribal Appellee Officers "acted under color of Federal Law." 3-ER-486. But that assertion is premised on only one thing: that the Tribe's law enforcement program is funded by a 638 contract. *See* 3-ER-484. That fails to satisfy the symbiotic relationship test.

The leading case to address how the symbiotic relationship test applies to tribal 638 contracts is *Boney v. Valline*, 597 F. Supp. 2d 1167 (D. Nev. 2009). *See, e.g.*, *Murgia v. United States*, No. 2:07-cv-101, 2010 WL 11628039, at *4-5 (D. Ariz. Apr. 28, 2010) (following *Boney*'s analysis). As *Boney* explains, 638 contracts—like the 638 contract at issue here, *see* 2-ER-95-117, 189-211—establish only that a "Tribe receive[s] funding for its law enforcement activities," and that "the Department of Interior or 'DOI' … require[s] that the Tribe comply with certain recordkeeping and certification requirements." 597 F. Supp. 2d at 1174-75. Relevant precedent "ma[kes] clear … that a combination of these two factors is not sufficient to impute federal government action to the conduct of a … non-federal actor." *Id.* at 1175 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), and *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338 (9th Cir. 1997)). Indeed, tribal law enforcement is not "a

53

function that [is] 'traditionally the exclusive prerogative' of the [federal] government," *id.* (quoting *Rendell Baker*, 457 U.S. at 842); "DOI [does not] profit[] from [a] Tribe's provision of law enforcement on the Reservation," *id.* at 1176; and "by no means d[oes] the federal government exercise plenary control over the Tribe's law enforcement activities," *id.* Thus, a 638 contract by itself "does not qualify [a defendant] as a federal actor for liability under *Bivens.*" *Id.* at 1177.

This conclusion is "buttressed" by the Supreme Court's instruction "to 'respond[] cautiously to suggestions that *Bivens* remedies be extended into new contexts.'" *Id.* at 1181 (alteration in original) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68-69 (2001)). The modern Supreme Court "consistently has declined to extend *Bivens* liability 'to new contexts or new categories of defendants.'" *Id.* at 1182 (quoting *Malesko*, 534 U.S. at 68). And this caution has particular force in the tribal context. "[A]llowing a *Bivens* action against a tribal [employee] solely on the basis of … an Indian tribe having a 638 contract with the [Bureau of Indian Affairs] implicates the tribe's inherent sovereignty, which constitutes a special factor militating against extending *Bivens* to this new context." *Id.* at 1183.

54

Appellant lacks a *Bivens* cause of action against Tribal Appellee Officers, and it certainly was not clearly established that Tribal Appellee Officers functioned as federal actors subject to the limitations of the U.S. Constitution. Qualified immunity bars Appellant's Eighth Claim.

## III. SOVEREIGN IMMUNITY ALSO PRECLUDES APPELLANT'S SUIT.

In addition to possessing official immunity, Tribal Appellees also possess sovereign immunity from suit. Because official immunity applies, the Court need not reach this issue. But Tribal Appellees also raised this defense below, and it provides another basis on which the Court can affirm. *See Shuemake*, 124 F.4th at 1177.

As noted above, "the general rule [is] that individual officers are liable when sued in their individual capacities," so sovereign immunity does not apply. *Pistor v. Garcia*, 791 F.3d 1104, 1113 (9th Cir. 2015) (quoting *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1089 (9th Cir. 2013)). Tribal officers and employees, however, continue to enjoy sovereign immunity against purported individual-capacity claims when "the sovereign is the real party in interest." *Lewis*, 581 U.S. at 161. To determine the real party in interest, "courts may not simply rely on the characterization of the parties in the complaint, but rather must

55

determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 162.

Applying this principle, this Court has recognized three categories of supposed "individual-capacity" suits against tribal officials that are barred by sovereign immunity. First, sovereign immunity applies if "the judgment sought would expend itself on the public treasury or domain." *Acres I*, 17 F.4th at 911. Second, sovereign immunity applies if the judgment sought would "interfere with the public administration." *Id.* Third, sovereign immunity applies "if the effect of the judgment would be to restrain the sovereign from acting, or to compel it to act." *Id.*

The first two of these categories are at issue in this case. Tribal Appellees discuss them in reverse order, and then address the suggestion, made below by the magistrate judge, that sovereign immunity is not available here under *Lewis* and *Acres I*.

## A. Sovereign Immunity Applies Because Appellant's Claims Would Interfere With The Tribe's Internal Governance.

Appellant's claims are barred by sovereign immunity because they "interfere with [a] tribe's internal governance." *Pistor*, 791 F.3d at 1113. This Court has not had many occasions to address individual-capacity cases that fall into this category. But *Hardin v. White Mountain Apache*

56

*Tribe* is illustrative. 779 F.2d 476 (9th Cir. 1985); *see Pistor*, 791 F.3d at 1113 (citing *Hardin* as an example of this type of case). In *Hardin*, a plaintiff sued White Mountain Apache tribal council members for voting to exclude him from the tribe's reservation. *See* 779 F.2d at 478. The plaintiff targeted the council members in their individual capacities and sought money damages. *Id.* Nevertheless, the Court determined that sovereign immunity barred the suit. *Id.* at 479-80. And though the reasoning in *Hardin* itself was sparse, subsequent cases have elaborated on its holding. As the Court explained in *Pistor v. Garcia*, although Hardin was nominally a suit against tribal officials in their individual capacities, "'*Hardin* was in reality an official capacity suit,' barred by sovereign immunity, because the alternative, to 'hold the defendants liable for their legislative functions, would have attacked the very core of tribal sovereignty.'" *Pistor*, 791 F.3d at 1113 (cleaned up) (quoting *Maxwell*, 708 F.3d at 1089).

This case is on all fours with *Hardin*. Appellant seeks to hold Tribal Appellees liable for tribal employment decisions central to the operation of the Tribe's police department. *See supra* at 40-41. The Tribe charged Tribal Appellees with supervising Appellant, and Tribal Appellees'

57

actions were, functionally, those of the Tribe. *See id.* The relevant actions, moreover, were core tribal self-determination functions that concern how the Tribe organizes its government, polices its lands, and protects its citizens. *See id.* Just as in *Hardin*, to "hold [Tribal Appellees] liable for [these tribal] functions, would … attack[] the very core of tribal sovereignty." *Pistor*, 791 F.3d at 1113 (cleaned up) (quoting *Maxwell*, 708 F.3d at 1089).

Indeed, Appellant's racial-discrimination claims provide an especially clear example of how Appellant's suit would impede the Washoe Tribe's ability to govern itself. As noted above, the Tribe has adopted a policy—required by federal statute and the Tribe's 638 contract—to give "preferences and opportunities for training and employment in connection with the administration of [the Tribe's 638 contract] … to Indians." 25 U.S.C. § 5307(b). If Washoe tribal employees could be held personally liable for implementing that policy, they would "be inhibited in the faithful performance of [their] duties by the threat of harassing lawsuits against [them]." *Barrett*, 798 F.2d at 572 (making this point in the absolute immunity context). A judgment against Tribal Appellees, therefore, would functionally prevent the Tribe from

preferring Native Americans in employment. Because Appellant's claims threaten to impede Washoe tribal governance in these ways, sovereign immunity applies.

## B. Sovereign Immunity Applies Because The Requested Relief Would Effectively Run Against The Tribe.

This case also falls under the first category of supposed individual-capacity suits that trigger sovereign immunity: suits where "the judgment sought would expend itself on the public treasury or domain." *Acres I*, 17 F.4th at 911. The Seventh Circuit's decision in *Mestek v. LAC Courte Oreilles Community Health Center*, 72 F.4th 255 (7th Cir. 2023), demonstrates why. The facts there were strikingly similar to the allegations here. The plaintiff worked for a tribal health clinic where she claimed to have "uncover[ed] billing irregularities." *Id.* at 257. After she reported her findings, her supervisors terminated her employment, and she maintained they did so "because she blew the whistle on billing fraud." *Id.* She then sued the clinic and her former supervisors, and the relief she sought included monetary damages from her former tribal supervisors in their "personal … capacities." *Id.*

The district court dismissed on sovereign immunity grounds, and the Seventh Circuit affirmed. The Seventh Circuit determined that

"despite the formal allegations in [the plaintiff's] complaint, her claims implicated only these defendants' official capacities." *Id.* at 261. Critically, that was so even though the plaintiff asked for "damages" directly and personally from her former supervisors for "blacklisting and retaliating against her." *Id.* at 262; *see also* Amended Compl. at 32, 35, *Mestek v. Lac Courte Oreilles Health Ctr.*, No. 3:21-cv-00541 (W.D. Wisc. Jan. 3, 2022), Dkt. No. 19 (seeking "special and compensatory damages for non-economic harm including but not necessarily limited to emotional distress, pain, and suffering" from the former supervisors under Wisconsin common law for "interference with [plaintiff's] at-will employment contract"). Despite that characterization, the Seventh Circuit concluded that "the relief [the plaintiff] requested would effectively run against the Tribe." *Mestek*, 72 F.4th at 261. Sovereign immunity thus barred the supposed individual-capacity claims against the supervisors.

This case is no different. Though Appellant stylizes his relief as seeking damages from Tribal Appellees in their individual capacities, the alleged liability at issue would belong to the Tribe because Tribal

Appellees' actions were the Tribe's, not their own. That was the case in *Mestek*, and it is true here too. *See id.* at 261-62.

To be sure, the plaintiff in *Mestek* sought broader relief than Appellant does here. The *Mestek* plaintiff also sought relief from her former supervisors in their official capacities, as well as relief from the former employer itself. *Id.* at 257. But that does not distinguish *Mestek* from this case. Again, some of the relief sought in *Mestek* was directed solely against the former supervisors in their personal capacities, and the Seventh Circuit held that sovereign immunity barred that aspect of the plaintiff's claims as much as any other. *See id.* at 261-62.

Nor does it matter, as Appellant argued below, that Tribal Appellees were allegedly "not carrying out legitimate tribal functions but … instead pursuing personal vendettas." 2-ER-144. There were similar allegations in *Mestek*, but sovereign immunity still applied. *See* 72 F.4th at 257 (discussing the *Mestek* plaintiff's retaliation claims). Indeed, and as discussed above, personnel disputes like the one underlying this suit and the one in *Mestek* often arouse intense feelings and give rise to retaliatory suits involving personal-vendetta allegations. *Supra* at 27-28. If such allegations were enough to evade sovereign immunity, plaintiffs

would always be able to circumvent the doctrine. As *Mestek* demonstrates, sovereign immunity is not so easily avoided.

## C. *Lewis* and *Acres I* Are Not To The Contrary.

Below, the magistrate judge suggested sovereign immunity does not bar Appellant's claims. It took a "preliminary peak" at Tribal Appellees' sovereign immunity defense and believed it would likely fail under *Lewis* and *Acres I*. 2-ER-290; *see also supra* at 15 (discussing the magistrate judge's ruling). The magistrate judge, however, was mistaken.

Starting with *Lewis*, the magistrate judge read the Supreme Court's decision as essentially establishing a bright-line rule forbidding the application of sovereign immunity in individual-capacity suits seeking personal damages. *See* 2-ER-289-95. In truth, *Lewis* is more cabined. The Supreme Court there merely recognized that individual-capacity suits against tribal employees *generally* (not *always*) fall outside sovereign immunity. Even before *Lewis*, this Court had already "forecast" that outcome. *Acres I*, 17 F.4th at 909. And post-*Lewis*, this Court continues to recognize that sovereign immunity bars individual-capacity suits when the judgment sought would interfere with a tribe's public

administration or effectively run against a tribe—the circumstances here. *See id.* at 911.

*Acres I* also does not require a ruling against Tribal Appellees. The magistrate judge read *Acres I* as essentially eliminating the rule that sovereign immunity bars individual-capacity claims that interfere with tribal self-governance. *See* 2-ER-294-95. But in fact, *Acres I* expressly recognized such cases as a category where sovereign immunity applies. 17 F.4th at 911.

Granted, *Acres I* instructed that "[t]he tribal sovereign immunity inquiry … does not revolve around whether issues pertaining to tribal governance would be touched on in the litigation." *Id*. Yet that and similar statements must be understood in their factual context. In *Acres I*, the defendants—which included *outside* law firms and lawyers—allegedly conspired to unlawfully use a tribal court to force a non-Indian gaming company to return a $250,000 deposit for an "iPad based gaming platform." *Id*. at 905-07 (quotation mark omitted). Because the case concerned a commercial dispute with an off-reservation actor over an entertainment product, the judgment sought did not threaten to "interfere with the Tribe's administration of its own affairs." *Id*. at 918

(Feinerman, J., concurring in part and concurring in the judgment in part). But where, as here, the individual-capacity claims go to the very core of tribal self-governance, sovereign immunity still applies.[6]

To the extent *Acres I* could be construed as adopting a broader rule that does foreclose sovereign immunity here, the Court should reject that reading. It would conflict with *Hardin*, and *Acres I*, as a "three-judge panel" decision, could not have "overrule[d] [that] binding precedent." *Chavez v. Robinson*, 12 F.4th 978, 991 (9th Cir. 2021). Indeed, if *Acres I* cannot be harmonized with *Hardin*, this Court may not "simply pick one case to follow." *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1237 (9th Cir. 2015) (brackets omitted). In that event, the Court is "required to call this case en banc." *Id.*

That path, though, can be avoided. Most important to this dispute, both *Lewis* and *Acres I* recognized tribal officials and employees' right to invoke personal immunity from suit, regardless of whether they possess

---

[6] The Tenth Circuit's *Modoc* decision is similarly distinguishable. *See supra* at 37-38 (discussing *Modoc*'s official immunity analysis). The Tenth Circuit there found that the Modoc Nation's former attorney general was the real party in interest (and thus sovereign immunity did not apply) because the suit was directed at his attempt, largely preceding his time in office, to usurp the tribe's resources and personnel to run his own commercial business. *See Modoc*, 2025 WL 2814397, at *3.

64

sovereign immunity. *See Lewis*, 581 U.S. at 163; *Acres I*, 17 F.4th at 914-17. As discussed above, Tribal Appellees possess official immunity. So ultimately, this Court need not grapple with the sovereign immunity analysis. But if the Court does reach this issue, it should also affirm on this ground.

## IV. THE DISTRICT COURT PROPERLY DISMISSED FOR FAILURE TO JOIN THE TRIBE.

The district court correctly dismissed Appellant's claims against Tribal Appellees for yet another reason: the Tribe is a necessary and indispensable party that cannot be joined to this suit.

Rule 19 prescribes a three-step process to determine whether a court must dismiss an action for failure to join a necessary and indispensable party. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, Rule 19 asks whether the absent party is "necessary (i.e., required to be joined if feasible) under Rule 19(a)." *Salt River Project Agric. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). This step is satisfied when "the absent party has a 'legally protected interest' in the subject of the suit." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). Second, the court assesses "whether joinder of [the absent] party is feasible." *Klamath Irrigation Dist. v. U.S.*

*Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022). Joinder of an Indian tribe is not feasible because tribes possess sovereign immunity. *Id.* at 947. Third, if joinder is not feasible, the court determines whether the party is "indispensable." *Shermoen*, 982 F.2d at 1317.

Here, Appellant contests only the first step of the inquiry: whether the Tribe is a required party. *See* Opening Br. at 18-24. For the reasons discussed below, the tribe is required, and the district court therefore properly exercised its discretion in dismissing under Rule 19.

## A.     The Tribe Is A Required Party.

The Washoe Tribe "has a 'legally protected interest' in the subject of th[is] suit" for purposes of Rule 19(a), rendering it a necessary party. *Shermoen*, 982 F.2d at 1317-18. "There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)," as the inquiry is "practical and fact-specific." *Maverick*, 123 F.4th at 972 (cleaned up) (first quoting *Bakia v. Los Angeles Cnty.*, 687 F.2d 299, 301 (9th Cir. 1982) (per curiam); then quoting *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008)). This Court, however, has laid down key guideposts. A "financial stake" is not enough. *Id.* (quoting *Diné Citizens Against*

*Ruining Our Env't v. BIA*, 932 F.3d 843, 852 (9th Cir. 2019)). But when a tribe's "sovereignty would be implicated" in a suit, the tribe is required. *Diné Citizens*, 932 F.3d at 855 (quoting *Sw. Ctr. for Bio. Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998)).

The Washoe Tribe's sovereignty is implicated here. Appellant's claims and alleged damages arise out of his employment with the Tribe and the subsequent termination of that employment. *Supra* at 40-41. He seeks to hold Tribal Appellees liable for alleged acts they took as tribal officials and employees while directing the operations of the tribal police department and responding to complaints about Appellant's behavior as a tribal police officer. *Id.*; 3-ER-459-65. The Complaint even ropes in the Tribe's highest decision-maker: Appellant alleges that the Tribal Chairman said he would "look into" Appellant's termination but never did so. 3-ER-467.

These allegations put the Tribe's sovereignty directly at issue. As the district court explained, "[a]ccepting [Appellant's] view that he should not have been disciplined following the various incidents he was involved in and not fired by the Washoe Tribe (including his apparent allegation that the Tribal Chairman, who he did not name as a defendant,

should have intervened on his behalf to prevent his firing) would require the Court to evaluate the Washoe Tribe's employment policies at its police department and determine whether or not they have been violated." 1-ER-14. That "detailed review of the Washoe Tribe's policies as applied to the facts of [Appellant's] termination … would impinge on the Washoe Tribe's ability to govern itself." *Id.*

Indeed, the Complaint itself—in a moment of candor—acknowledges that Appellant's claims are targeted at the Tribe's conduct. The Complaint alleges that Appellant "found himself terminated and unemployed after *his employer*"—*i.e.*, the Tribe—"became aware [sic] the circumstances surrounding his termination from Churchill County." 3-ER-444. As this admission underscores, the actions at the heart of Appellant's suit are really the Tribe's. *Cf. Maverick*, 123 F.4th at 965 (determining that Washington tribes were required parties when a complaint sought "relief that would invalidate [their] gaming compacts").

This case is thus like *Dawavendewa v. Salt River Project Agricultural Improvement & Power District*, 276 F.3d 1150 (9th Cir. 2002). There, this Court held that the Navajo Nation was a required party in a challenge to a Nation lease that required a non-tribal power

plant to adopt a Navajo hiring preference policy. *Id.* at 1156-57. Although the plaintiff had sued only the power plant, the Court found that the challenge to the hiring preference policy threatened "the Nation's ability to secure employment opportunities and income for the reservation." *Id.* at 1157. Moreover, the effect of any judgment would be to "[u]ndermin[e] the Nation's ability to negotiate contracts," and thereby "undermine[] the Nation's ability to govern the reservation effectively and efficiently." *Id.* at 1157. Hence, the Nation was a necessary party.

Appellant's claims here would likewise interfere with tribal employment and reservation governance. The Tribe has a sovereign interest in controlling the operations of its police department charged with ensuring public safety on its reservation. But Appellant's claims "would intrude upon the Tribe's sovereign prerogative to regulate its internal governance." Washoe Amicus Br. at 7. The Tribe is thus a required party to this suit. *See also Diné Citizens*, 932 F.3d at 848 (deeming tribe a required party to a suit about coal mining on tribal lands because the suit implicated the tribe's "sovereign interest in controlling its own resources").

## B. Appellant's Counterarguments Miss The Mark.

Appellant raises a smattering of points in response, but as at the district court, he "fails to really engage with … [the] pertinent arguments." 1-ER-13. And his reasoning fails on its own terms regardless.

Appellant principally maintains that the Tribe's sovereignty is not implicated because he only seeks monetary relief from Tribal Appellees in their individual capacities. *See generally* Opening Br. at 18-24. The Rule 19 test, however, is pragmatic. "By definition, parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are so situated *as a practical matter* as to impair … their … ability to protect their interests." *Peabody*, 400 F.3d at 783 (emphasis added). Appellant's suit has such practical impacts on the Tribe's sovereignty. For instance, a monetary judgment against Tribal Appellees would affect Washoe tribal governance by altering how future tribal officers and employees fulfill their supervisory responsibilities. The Tribe is thus required.

Appellant also says that the district court's ruling contravenes *Lewis*. Opening Br. at 19-20, 22-23. But he again overreads that case.

70

*Lewis* concerned a discrete question about whether and when tribal officers and employees themselves may invoke tribal sovereign immunity. It said nothing about the distinct question of whether and when a tribe is a necessary party to a case brought against its officers and employees.

Nor, in any event, would Rule 19 require dismissal in a case like *Lewis*. That case concerned a casino limousine driver's off-reservation automobile accident; it presented no concerns for tribal governance. *See* 581 U.S. at 159-60. Here, by contrast, the actions underlying the Complaint—management and personnel decisions within the Tribe's police department—implicate the Tribe's core sovereign interests.

The Tribe is a required party, and the district court did not abuse its discretion when it dismissed Appellant's claims under Rule 19.

## CONCLUSION

The Court should affirm the decision below.

Dated: October 17, 2025       Respectfully submitted,

*/s/Leonard R. Powell*

Sydney Tarzwell            Leonard R. Powell
NATIVE AMERICAN       Morgan E. Saunders
RIGHTS FUND            NATIVE AMERICAN
745 W. 4th Avenue, Suite 502   RIGHTS FUND
Anchorage, AK 99501       950 F Street NW, Suite 1050
(907) 276-0680           Washington, DC 20004
                             (202) 785-4166
                             powell@narf.org

*Counsel for Appellees*

72

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 17, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Leonard R. Powell*
Leonard R. Powell

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-3136

I am the attorney or self-represented party.

**This brief contains** 13,644 **words,** including 13,644 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Leonard R. Powell    **Date** 10/17/25

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*