No. 25-3136

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

MICHAEL ERWINE,

*Plaintiff-Appellant,*

V.

ZACHARY WESTBROOK, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Nevada
No. 3:24-cv-00054

Hon. Judge Miranda Du

APPELLANT'S REPLY BRIEF

Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail:
luke@lukelandrewbusbylltd.com
*Attorney for Appellant Michael Erwine*

## DISCLOSURE STATEMENT

Appellant Michael Erwine is an individual and not a nongovernmental corporate entity; thus, no Disclosure Statement is required under FRAP 26.1(a).

Date: December 27, 2025

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail:
luke@lukelandrewbusbylltd.com
*Attorney for Appellant Michael Erwine*

# TABLE OF CONTENTS

I.   INTRODUCTION …………………………………...……….....…..…… 1

II.   ARGUMENT …………………………………………..………… 2

    A. Appellees' Reliance on Absolute Immunity Is Misplaced, as Davis is Inapplicable and its Scope was Clarified by Recent 9th Circuit Case Law………………………………………..…..……... 2

       i.   Davis Does Not Control Under the Facts in this Case and Has Been Clarified by Subsequent Authority ……...……3

       ii.   Conferral of Absolute Immunity Would Undermine Lewis ……………………………………..…………………….7

       iii.   Appellees' Counterarguments Ignore Controlling Precedent …………………………………………...7

    B. Qualified Immunity Does Not Bar Erwine's Claims ……...…10

       i.   Section 1981 Claim …………………………...……...11

       ii.   Erwine's § 1985(2) and § 1985(3) Claims state a plausible basis for relief on clearly established law ……..……….15

       iii.   Bivens Claim ………………………………………….. 23

    C. Sovereign Immunity Does Not Preclude This Suite Against the Individual Defendants ……………………………………….. 24

       i.   Appellant's Claims Do Not Interfere with Tribal Governance ……………………………...……...... 25

       ii.   The Requested Relief Does Not Run Against the Tribe . 25

    D. The District Court Erred in Dismissing for Failure to Join the Tribe Under Rule 19 ...………………………………………….27

*Reply Brief*

E. Erwine's Claim for Intentional Interference with Contractual Relations claim against Defendant Burke should proceed because blocking Erwine's grievance was not part of his job…………………………………...……………...………30

III.   CONCLUSION …………………………………………...……33

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Acres Bonusing, Inc. v. Marston,*
 17 F.4th 901 (9th Cir. 2021) ……..… 1, 2, 4, 6, 7, 8, 12, 25, 26, 27, 28

*Acres Bonusing, Inc. v. Ramsey,*
 2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) ..………...…….…. 4

*Aholelei v. Dep't of Pub. Safety,*
 488 F.3d 1144, 1147 (9th Cir. 2007) ……………………………….. 31

*Aleman v. Chugach Support Servs., Inc.,*
 485 F.3d 206 (4th Cir. 2007) ……………………………………….. 12

*Allen v. Gold Country Casino,*
 464 F.3d 1044  (9th Cir. 2006) ………………………………………11

*Armstrong v. Reynolds,*
 22 F.4th 1058 (9th Cir. 2022) ………..……………………..….. 18, 19

*Ashcroft v. al-Kidd,*
 563 U.S. 731 (9th Cir. 2011) ……………………………...……... 11

*Bakia v. County of Los Angeles,*
 687 F.2d 299 (9th Cir. 1982) ………………………………….....… 29

*Barron v. Alaska Native Tribal Health Consortium,*
 373 F. Supp. 3d 1232 (D. Alaska 2019) …………………………… 12

*Bartsas Realty, Inc. v. Nash*,
 402 P.2d 650 (Nev. 1965) …………………………………………….. 30

*Blanck v. Hager,*
 360 F. Supp. 2d 1137 (D. Nev. 2005) ………..………………… 30, 32

*Reply Brief*

*Bogan v. Scott-Harris,*
523 U.S. 44, 118 S. Ct. 966 (1998) …………………………..…... 2

*Briscoe v. LaHue,*
460 U.S. 325, 103 S. Ct. 1108 (1983) ……………….…...…...……… 3

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993) ………………………………….……….. 4

*Buckwalter v. Nev. Bd. of Med. Examiners,*
678 F.3d 737 (9th Cir. 2012) ……………………………...…….. 4

*Collins v. Union Fed. Sav. & Loan Ass'n,*
99 Nev. 284, 662 P.2d 610 (1983) …………………..……….... 18

*Confederate Tribes of the Chehalis Indian Reservation v. Lujan,*
928, F.2d 1496 (9th Cir. 1991) ………………………...…………… 29

*Davis v. Littell,*
398 F.2d 83 (9th Cir. 1968) ………………...……. 1, 2, 3, 4, 5, 6, 10

*Davis v. Passman,*
442 U.S. 228 (1979) …………………………….……………… 23

*Dine Citizens Against Ruining Our Env't v. BIA,*
932 F.3d 843 (9th Cir. 2019) …………………….…...……... 28, 29

*Dutchover v. Moapa Band of Paiute Indians,*
No. 2:19-cv-01905-KJD-BNW, 2021 U.S. Dist. LEXIS 84181 (D. Nev. May 3, 2021) …………..……………...……………… 14

*Egbert v. Boule,*
596 U.S. 482, 142 S. Ct. 1793 (2022) ……………………..… 24

*Evans v. McKay,*
869 F.2d 1341 (9th Cir. 1989) …………………………...……….. 11

*Goldey v. Fields,*
606 U.S. 942, 145 S. Ct. 2613 (2025) ………………..……………. 24

*Great Western Casinos Inc. v. Morongo Band of Mission Indians,*
74 Cal. App. 4th 1407, 88 Cal. Rptr. 2d 828 (Ct. App. 1999) …....…... 6

*Greger v. Barnhart,*
464 F.3d 968, 973 (9th Cir. 2006) …………………………..…… 31

*Griffin v. Breckenridge,*
403 U.S. 88, 91 S. Ct. 1790 (1971) …………..………………...... 20

*Hardin v. White Mountain Apache Tribe,*
779 F.2d 476 (9th Cir. 1985) …………………...…………… 26, 27

*Head v. Wilkie,*
936 F.3d 1007 (9th Cir. 2019) ………………………..………… 19, 20

*Hernandez v. City of San Jose,*
897, F.3d 1125 (9th Cir. 2018) …………………………..………… 11

*Imbler v. Pachman,*
424 U.S. 409, 96 S. Ct. 984 (1976) …………………..………….... 2

*Jamul Action Comm. v. Simermeyer,*
974 F.3d 984 (9th Cir 2020) …………………………..……… 7, 29

*Lewis v. Clarke,*
581, U.S. 155 (2017) ……………. 1, 4, 6, 7, 10, 12, 25, 26, 27, 28, 30

*Lowe v. Monrovia,*
775 F.2d 998 (9th Cir. 1985) …………………………...…………... 14

*Makah Indian Tribe v. Verity,*
910 F.2d 555 (9th Cir. 1990) ……………………………………….. 29

*Reply Brief*

*Maverick Gaming LLC v. United States,*
    123 F.4th 960 (9th Cir. 2024) ……………………………..…….….. 26

*Maxwell v. City of San Diego,*
    708 F.3d 1075 (9th Cir. 2013) ……………………………….…..… 11

*Mendez v. Cty. of L.A.,*
    897 F.3d 1067, 1083 (9th Cir. 2018) ………………………….…. 32

*Modoc Nation v. Bohl,*
    No. 24-5135, 2025 LX 447161 (10th Cir. Oct. 3, 2025) …………..... 9

*Nixon v. Fitzgerald,*
    457 U.S. 731, 102 S. Ct. 2690 (1982) ……………………..………... 3

*Pink v. Modoc Indian Health Project, Inc.,*
    157 F.3d 1185, 1188 (9th Cir. 1998) …………………………….… 13

*Sanchez v. City of Santa Ana,*
    936, F.2d 1027 (9th Cir. 1990) …………………………….…...…… 12

*Snyder v. Navajo Nation,*
    382 F.3d 892 (9th Cir. 2004) ……………………………………… 22

*Stump v. Sparkman,*
    435 U.S. 349, 98 S. Ct. 1099 (1978) ……………………………..… 2

*Taylor v. Ala. Intertribal Council Title IV J.T.P.A.,*
    261 F.3d 1032, 1035 (11th Cir. 2001) ……………….……………... 13

*Thomspon v. Mahrer,*
    110 F.3d 716 (9th Cir. 1977) …………………………………...….. 10

*Williams v. Alhambra Sch. Dist. No 68,*
    234 F. Supp. 3d 971 (D. Ariz. 2017) …………………………….... 12

*Reply Brief*

*Yashenko v. Harrah's NC Casino Co., LLC,*
446 F.3d 541 (4th Cir. 2006) …………………………………...…... 12

*Ziglar v. Abbasi,*
582, U.S. 120 (2017) …………………………………………...…. 21, 22

## <u>Statutes</u>

42 U.S.C. § 1981 …………………………………………... 11, 12, 13, 14

42 U.S.C. § 1985 ………………….…………………..… 15, 19, 20, 21, 22

## <u>Rules</u>

Fed. R. Civ. Pro 19 ……………………….…….…..…. 1, 10, 25, 27, 29, 30

# I. INTRODUCTION

Appellees' are advocating for a sweeping reading of *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968) (hereinafter "*Davis*")*,* that *Davis* permitted Indian tribes to confer absolute immunity to all tribal employees for all tribal employee matters. The ruling in *Davis* does not extend beyond the context of absolute immunity for a tribe's general counsel by nature of his position and specific functions performed - no different than traditional notions of absolute prosecutorial immunity provided in any non-tribal case.

Squarely controlling precedent under *Lewis v. Clarke*, 581 U.S. 155 (2017) (*Lewis*) and *Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 908 (9th Cir. 2021) (*Acres I)*, teaches that tribal employees sued in their individual capacities are not shielded by sovereign or absolute immunity and a tribe is not a required party in such cases under Rule 19. The reading of *Davis* advocated by the Appellees would result in an irreconcilable conflict with *Lewis* and *Acres I. Appellees'* Answering Brief (AB), is largely an exercise in circumlocution around this central issue.

Qualified immunity is inapplicable in this case because the grounds for Erwine's claims are either clearly established under existing law, or they constitute a tort, not subject to qualified immunity.

## II. ARGUMENT

### A. Appellees' Reliance on Absolute Immunity Is Misplaced, as *Davis* is Inapplicable and its Scope was Clarified by Recent 9th Circuit Case Law.

Appellees assert absolute immunity under *Davis* and Washoe tribal law (AB 21-38), but this distracts from the question presented in *Davis* and in *Acres I* clarifying absolute immunity and how it applies to tribal employees sued in their individual capacity. While the court in *Davis* did uphold the application of absolute immunity for the general counsel of an Indian tribe performing tasks within the scope of his duties, it did not confer the tribe's inherent sovereign immunity to all its employees under a blanket cloak of absolute immunity. *Id.* 398 F.2d at 85. The *Davis* court, in effect, clarified that employees of tribes can avail themselves to the personal immunity defense of absolute immunity only if applicable to their function. *Id.* Absolute immunity is limited to five distinct circumstances: prosecutors performing prosecutorial tasks, *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976); judges performing judicial tasks, *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099 (1978); legislators performing legislative tasks, *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S. Ct. 966 (1998); police officers when

testifying as witnesses, *Briscoe v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108 (1983); and the President for actions within the outer perimeter of official duties, *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S. Ct. 2690 (1982). *Davis* did not extend absolute immunity beyond these categories, and it was clear error for the district court in this case to rule that, "Washoe Tribe Defendants (and Burke) are entitled to absolute immunity from Erwine's claims so long as his claims against them, appropriately construed, arise out their performance of their official duties" (Vol. 1 ER-10).

### i. Davis Does Not Control Under the Facts in this Case and Has Been Clarified by Subsequent Authority

Appellees read *Davis* in a sweeping manner, arguing that it grants absolute immunity for all "personnel actions" by tribal officers (AB 22). *Davis* involved a tribe's assistant general counsel defamation claim against his former supervisor, the tribe's general counsel, for statements in an internal report—conduct directly tied to quasi-judicial functions. 398 F.2d at 84-85. Appellant alleges racial discrimination, conspiracy to intimidate witnesses, and due process violations in employment decisions (Vol. 3 ER-422), not internal attorney-client communications from Defendant Burke or other prosecutorial or judicial functions that could implicate absolute

immunity under *Davis*.   Moreover, *Davis* predates *Acres I* and *Lewis*, by decades.  *Lewis* clarified that tribal employees are subject to suit in their individual capacity for torts and civil rights claims. *Lewis*, 581 U.S. at 162-63 (rejecting sovereign immunity for tribal employees).

Appellees' claim that *Davis* remains good law (AB 28) ignores subsequent cases that undermine any holding that might apply to the facts presented here. This Court has already applied *Lewis* to limit tribal employee immunity. See *Acres I*, at 17 F.4th at 908 (9th Cir. 2021).

Appellees also misread *Acres Bonusing, Inc. v. Ramsey*, 2022 WL 17170856 (N.D. Cal. Nov. 22, 2022) (*Acres II*), which involved tribal council actions in gaming contracts, which necessarily implicated direct tribal actions —not employment discrimination and related causes of action raised in this case (AB 6, 9). *Acres II* applied qualified, not absolute immunity, in granting a motion to dismiss that case. *Id.* at *66 (N.D. Cal. Nov. 22, 2022).

If the Court applies the functional test argument (AB 26, citing *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Buckwalter v. Nev. Bd. of Med. Examiners*, 678 F.3d 737 (9th Cir. 2012)), the conclusion that absolute immunity applies does not follow from the premises: the alleged acts

described in Erwine's Amended Complaint (discriminatory termination, witness intimidation) (Vol. 3 ER-422) are administrative or investigative, not prosecutorial or judicial - as there are no criminal proceedings at issue in this case. The "function" of the Defendants' actions at issue in this case is not and cannot be subject to absolute immunity, as routine administrative employee supervision does not fit into any of the five absolute immunity categories described above.

To construe *Davis* to provide blanket coverage for all employees of a tribe regarding employment matters under the cloak of absolute immunity is a misreading of the decision. In *Davis,* the issue was as follows:

> The question presented by this appeal is whether appellee, by virtue of his position as general counsel for the Navajo Tribe, was entitled to assert absolute privilege as to defamatory statements made by him within the scope of his official duties.

*Davis*, 398 F.2d at 83.

The *Davis* Court further held that: "The question, then, is not how the position is filled or the security of its tenure but whether it encompasses public duties, official in character." *Id.* at 85. Contrary to the Appelles argument, *Davis* did not grant absolute immunity to every employee of a tribe acting within the scope of their official duties nor extend it further than

supported by existing law at the time of its decision.

The *Acres I* court has already explained how the holding in *Davis* and *Great Western Casinos Inc. v. Morongo Band of Mission Indians*, 74 Cal. App. 4th 1407, 88 Cal. Rptr. 2d 828 (Ct. App. 1999) (involving a tribal council's termination of a casino management agreement, not individual actions by tribal officials) differs significantly because the question of "Whether tribal officials enjoy personal immunities from suit is a different question from whether tribal sovereign immunity applies. See *Lewis*, 137 S. Ct. at 1291." *Acres I*, 17 F.4th at 913 n.4.  *Acres I* found that extending tribal sovereign immunity to individual defendants merely because they were sued for conduct within the scope of their employment for an Indian tribe would be at odds with *Lewis*. *Acres I*, 17 F.4th at 914.

### ii. Conferral of Absolute Immunity Would Undermine Lewis

Appellees argue Washoe Tribal Code Title 33 confers absolute immunity (AB 26, 31).  But title 33 confers immunity only for certain torts in tribal court, not federal claims against individual capacity defendants. The specific language and title of the code on which the Appellees' rely on to support their argument is "Title 33 - Washoe Sovereign Immunity Code" (Vol. 2 ER-219). Title 33 only confers, and can only confer, sovereign

immunity on the tribe directly. Allowing employees of a tribe to fall under the protective cloak of sovereign immunity, by relabeling the term absolute immunity when sued in their individual capacity, was expressly rejected by *Lewis,* 137 S. Ct. at 1290-91.

### iii. Appellees' Counterarguments Ignore Controlling Precedent

Appellees dismiss Erwine's arguments because they argue he conflates absolute immunity with tribal sovereign immunity (AB 38). However, the basis of Erwine's appeal is clearly that the district court erred by doing just that, i.e. transmogrifying sovereign immunity into absolute immunity. *Lewis'* core holding was that there is no immunity for individual-capacity damages suits where the cause of action seeks damages against individual defendants and not a tribe. 581 U.S. at 162.

The decision in *Acres I* dealt with these very same issues, and the *Acres I* Court came to the opposite conclusion from what the Appellees' are asking from this court. *Acres I* straightforwardly held that tribal sovereign immunity does not blanketly shield all employees of an Indian tribe from liability when sued for damages in their individual capacity and that the "critical question" is whether the suit is truly against the sovereign. *Id.* at 17 F.4th at 908 quoting *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994

(9th Cir. 2020).

*Acres I* dealt with both sovereign immunity and absolute immunity holding that an individual defendant may be able to assert personal immunity defenses. *Id*. at 17 F.4th at 915. The court in *Acres I* found that a chief judge, his law clerks and the tribal court clerk were covered under the cloak of absolute judicial immunity. *Id* at 17 F.4th at 916. The Court declined to extend absolute immunity to individuals not shielded under the other recognized absolute immunity categories: "Having concluded that tribal sovereign immunity does not bar this suit and that on this record only certain defendants enjoy absolute personal immunity, we remand this case to the district court." *Acres I*, 17 F.4th at 917. The court in *Acres I* found the opposite of what Appellees' are asking of this court; to extend absolute immunity to all defendants regardless of their positions or duties performed. There is no reasonable dispute that Appellees Westbrook, Leonard, and Hall are all former law enforcement officers of the Tribe and do not fall under any existing category of absolute immunity supported by current case law (Vol. 3 ER-446-447). Defendant Burke, as his position of former General Counsel with the tribe is the only party who can make a colorable absolute immunity argument. However, as alleged in Erwine's First Amended

Complaint, the actions of Burke about which Erwine complains were not

prosecutorial acts, and were outside of the scope of his duties as General

Counsel for the Washoe Tribe. *See* ER Vol. 3 at 467, where Erwine

describes his meeting with the tribal chairman where he stated that Burk's

duties did not typically include employment grievance matter unless

litigation was threatened:

> On June 9, 2022 Erwine was finally able to secure a meeting with
> Smokey and at the onset of the meeting Smokey informed Erwine that
> he knew nothing about Erwine's termination nor that he ever
> attempted to file a grievance. Erwine provided Smokey a written copy
> of his grievance as well as the letter of denial from Burke. Erwine was
> informed during the meeting that it is unusual for Burk to be involved
> in the process outside of a direct threat of legal action.

(Vol. 3 ER-467).

In the 10th Circuit's recent opinion in *Modoc Nation v. Bohl* No.

24-5135, 2025 LX 447161 (10th Cir. Oct. 3, 2025), the 10th Circuit affirmed

the district court's denial of tribal sovereign immunity to Blake Follis, the

former Attorney General of the Modoc Nation, who was sued in his

individual capacity on state-law counterclaims arising from his investigation

of alleged wrongdoing; the court held that Follis—not the tribe—was the

real party in interest because the remedies sought (damages from Follis

personally) would not control or adversely affect the tribe's interests,

aligning with *Lewis* that tribal employees are not shielded by sovereign immunity in individual-capacity suits. The court also rejected Follis's claim to official immunity under Oklahoma law, finding he failed to produce evidence showing all alleged actions were within the scope of his official duties or performed in good faith, emphasizing that such immunity requires factual support. Similar to Follis, Appellee Burke cannot avail himself of absolute immunity under *Davis* for employment-related decisions that are administrative or investigative rather than prosecutorial or judicial in function and outside the scope of his official duties as general counsel.

## B. Qualified Immunity Does Not Bar Erwine's Claims

Appellees alternatively claim qualified immunity from suit (AB 41-56), the district court's order does not address this issue as it dismissed Erwine's claims on absolute immunity, sovereign immunity, and Rule 19 grounds. See ECF No. 123 at 4-15. This Court should decline to extend qualified immunity as an alternative basis to affirm. In so far as this court should elect to consider Appellees' qualified immunity argument in the first instance it should do so under a *de novo* standard (*Thomspon v. Mahrer,* 110 F.3d 716, 721 (9th Cir. 1977)), and determine "(1) whether the alleged misconduct violated a [constitutional] right and (2) whether the right was

clearly established at the time of the alleged misconduct." *Maxwell v. City of San Diego,* 708 F.3d 1075, 1082 (9th Cir. 2013)(citation omitted). The court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Hernandez v. City of San Jose,* 897 F.3d 1125, 1132 (9th Cir 2018). A case directly on point is not required to show a right is clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 739 (9th Cir. 2011).

### i. Section 1981 Claim

Appellees argue that there is no clearly established right against racial discrimination in tribal employment (AB 42-46), but it is clearly established that 42 U.S.C. § 1981 applies to racial discrimination against tribal employees. It is well established that employees of tribes can be liable for racial discrimination under 42 U.S.C. § 1981. See *Evans v. McKay*, 869 F.2d 1341 (9th Cir. 1989) and *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006).

Qualified immunity is not available as a defense for government actors facing claims of intentional racial discrimination under 42 U.S.C. §1981 because of the clearly established constitutional prohibition against

invidious racial discrimination. See *Williams v. Alhambra Sch. Dist. No. 68,* 234 F. Supp. 3d 971, 979 (D. Ariz. 2017) and *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990), holding that the right to be free from racial discrimination is clearly established for purposes of qualified immunity.

Defendants also make the novel argument that 42 U.S.C. §1981 cannot apply in the tribal context, even for individual capacity claims, due to Title VII's tribal exemption (AB 42-43). This argument misreads the distinction between tribal sovereign immunity and individual liability for intentional discrimination under the Civil Rights Act and the anti-workplace discrimination provisions of Title VII, which are available against the employer directly.

While tribes themselves are exempt from Title VII (See *Barron v. Alaska Native Tribal Health Consortium*, 373 F. Supp. 3d 1232, 1241 (D. Alaska 2019 and *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 552 (4th Cir. 2006), officials sued in their individual capacity, as is the case here, have no immunity for intentional racial discrimination claims against employees under the holdings in *Lewis* and *Acres I*, as the relief sought by Erwine does not operate against a tribe. See also *Aleman v. Chugach*

*Support Servs., Inc.*, 485 F.3d 206 (4th Cir. 2007) recognizing the difference between Title VII claims against a tribe and claims under 42 U.S.C. §1981: "...the exemption for Alaska Native Corporations from suit under Title VII does not immunize the defendants from suit under the separate and independent cause of action established by Section 1981." *Id.* 208.

The cases cited by Appellees' do not support dismissal of Erwine's individual capacity racial discrimination claim under 42 U.S.C. §1981. Appellees' reliance on *Taylor v. Ala. Intertribal Council Title IV J.T.P.A.,* 261 F.3d 1032, 1035 (11th Cir. 2001) (per curiam) is misplaced as the §1981 claim was plead as an official capacity claim. Erwine clearly plead his §1981 claim against Defendants in their individual capacity. (ER Vol. 3 at 446) Appellees' reliance on *Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185, 1188 (9th Cir. 1998) is also misplaced as no claim under 42 U.S.C. § 1981 was even plead in *Pink*. Instead the plaintiff in *Pink* attempted to assert individual liability under Title VII, which Erwine did not do.

Erwine's Amended Complaint details a clear pattern where Erwine, who is white, was disciplined and then terminated by the Officer Appellants while Native American Officer Christensen faced no consequences for

identical conduct. On February 5, 2021, both Erwine and Officer

Christensen, determined there was insufficient probable cause to arrest a

driver for DUI after successful completion of field sobriety tests, yet only

Erwine received disciplinary action and was forced to repeat a three month

long training program for his failure to arrest an innocent subject. (Vol. 3

ER-459-460). This discriminatory pattern continued throughout Erwine's

employment, with joint decisions consistently resulting in discipline only

Erwine and not similarly situated Native American officers (Vo. 3

ER-474-475).

Appellants also argue that 42 U.S.C. § 1981 claims should be barred

because under the 638 contract Tribes are required to give preference to

Native Americans in training, employment and procurement. (AB at 45). It

does not follow from the fact that tribes may give preference in an

employment decision that their individual employees may later actively

discriminate against non Native American employees, post contract

formation, in violation of 42 U.S.C. § 1981, as disparate treatment claims

under 42 U.S.C. § 1981 have long been recognized. *Lowe v. Monrovia,* 775

F.2d 998, 1010 (9th Cir. 1985) and are routinely recognized by district

courts. See *Dutchover v. Moapa Band of Paiute Indians*, No.

2:19-cv-01905-KJD-BNW, 2021 U.S. Dist. LEXIS 84181, at *9 (D. Nev. May 3, 2021).

### ii. Erwine's § 1985(2) and § 1985(3) Claims state a plausible basis for relief on clearly established law

Appellees contend there was no cognizable conspiracy to deter testimony because the intracorporate conspiracy doctrine bars Erwine's claim (AB 46). Erwine brought two claims under 42 U.S.C. § 1985. The Fourth Claim for Relief (Vol. 3 ER-479), alleges a violation of 42 U.S.C. § 1985(2) against Westbrook, Leonard, Hall, and Burke for conspiracy to interfere with civil rights through obstruction of justice. Specifically, Erwine alleges that the Appellees conspired to deter Erwine from attending court and testifying in his lawsuit against Churchill County (Vol. 3 ER-480). After becoming aware of Erwine's need to attend trial, and as a consequence aware of the lawsuit itself, the Appellee officers ordered him to be reinvestigated and ultimately terminated for incidents that he had already been cleared of by another supervisor (Vol. 3 ER-480).

Erwine's Fifth Claim for Relief, alleges a violation of 42 U.S.C. § 1985(3) against the Appellees Westbrook, Leonard, Hall, and Burke for conspiracy to deprive Erwine of his rights and privileges guaranteed under

the constitution (Vol. 3 ER-480). This claim centers on allegations of

discriminatory treatment, specifically noting that "Erwine as a white male

was treated vastly different than that of Native American female police

officer, Officer Christensen" (Vol. 3 ER-480). Erwine alleges that Appellees

conspired to deprive Erwine of both procedural and substantive due process

rights regarding his continued employment and reputation. (Vol. 3 ER-481).

Erwine details how the Appellees engaged in conduct motivated by racial

or class-based discriminatory animus, resulting in injury and deprivation of

Erwine's federally protected rights (Vol. 3 ER-481-482). Westbrook,

Leonard, Hall and Burk conspired to retaliate against Erwine after learning

of his whistleblower lawsuit against fellow law enforcement agency

Churchill County. Specifically, upon discovering his pending litigation,

they manufactured pretextual reasons to discipline him by reinvestigating

incidents for which another supervisor had already cleared him (Vol. 3

ER-464). The Appellees then denied him the grievance procedures

guaranteed under tribal policy, with Burke improperly preventing Erwine

from filing a grievance or responding to allegations (Vol. 3 ER-466). This

culminated in Erwine's termination based on false allegations, conducted

without following the Tribe's required procedures and relying on previously

unfounded disciplinary actions that had been removed from his file (Vol. 3 ER-465).

Contrary to the claim in the Appelles' Brief (AB at 48), the Officer Appellees and Burke were not all agents of the same entity, which is a prerequisite for applying the intercorporate conspiracy doctrine. This distinction is clearly evidenced in the United States' Notice of Substitution of Parties (SER-3), which certified that "at the time of the incidents alleged in the First Amended Complaint, Westbrook, Hall, and Leonard were acting in the scope of federal employment or office for purposes of allegations or claims in Erwine's First Amended Complaint that give rise to the applicability of the Federal Tort Claims Act provisions."  This certification omits Burke, who was employed exclusively by the Tribe, while Westbrook, Hall, and Leonard were acting as agents of the federal government in enforcing the federal contract that governed both their and Erwine's employment.

Even if the Court were to find that the Officer Appellees and Burke were all agents of the same corporation, the intercorporate conspiracy doctrine defense would still fail. This Court follows the Nevada Supreme Court's standard on civil conspiracies for cases arising in Nevada. In

*Armstrong v. Reynolds*, 22 F.4th 1058, 1085 (9th Cir. 2022), this Court held: "Under that doctrine, '[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage,'" citing the Nevada Supreme Court in *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 662 P.2d 610 (1983). This precedent is significant because Erwine has alleged facts demonstrating that the Appellees acted for personal motives rather than on behalf of the tribe. The personal animus of both Westbrook and Leonard was evident. During a department meeting, Westbrook stated: "I hired you after nobody else would" and "You owe me." (Vol. 3 ER-459). At the conclusion of this meeting, Leonard told Erwine "If we don't want you here you won't be," and "We will find a way to fire you" (Vol. 3 ER-459). Westbrook's hostility toward Erwine was further demonstrated when he openly expressed his disdain to other department members about Erwine "dragging" him through the grievance procedure process when Erwine challenged grounds for discipline (Vol. 3 ER-460). The intercorporate conspiracy doctrine does not bar Erwine's claims because this doctrine doesn't apply when agents act out

of personal animus and against the interests of their employer. *Armstrong v. Reynolds*, 22 F.4th 1058, 1085 (9th Cir. 2022).

The pattern of personal animus against Erwine is plainly alleged:

> Sergeant Ryan told Erwine that there were some complaints of misconduct and policy violations made against him regarding the February 20 and 21, 2022 incidents. Sergeant Ryan went over the police report and body camera footage of the incidents with Erwine and asked him questions about the body camera footage and his report. At the conclusion of the meeting Sergeant Ryan told Erwine that he did not find any grounds to substantiate the allegations of misconduct or policy violations.

(Vol. 3 ER- 464)

Westbrook was unsatisfied with this finding and ordered a different supervisor, Sergeant Hall, to reinvestigate Erwine and arrive at a different conclusion resulting in Erwine's termination (Vol. 3 ER-464). This was in response to Erwine requesting leave to testify in his whistleblower suit. Further, the Appellees contravened tribal policy and deliberately concealed what was happening to Erwine from the tribal chairman (Vol. 3 ER-467).

Erwine's claims under both provisions of 42 U.S.C. § 1985 rest on clearly established and longstanding law. This Court in *Head v. Wilkie*, 936 F.3d 1007 (9th Cir. 2019) affirmed a cause of action under 42 U.S.C. § 1985(2) for conspiracy to deter or harm an individual required to testify in

federal court proceedings. Erwine's case directly parallels *Head v. Wilkie*, where this Court definitively confirmed that intimidation or retaliation against witnesses in federal court proceedings constitutes the gist of the wrong at which the statute is directed, and interference with employment constitutes cognizable injury. 936 F.3d at 1013. Given this clear precedent, no reasonable official could have believed that conspiring to retaliate against Erwine was constitutionally permissible. The clear parallels between the employment retaliation in *Head* and the alleged retaliation against Erwine placed the question beyond debate at the time of the challenged conduct undermining any claim to qualified immunity.

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790 (1971), the Supreme Court confirmed a cause of action under 42 U.S.C. § 1985(3) against persons who conspire to deprive another of their civil rights, as occurred with Mr. Erwine. The *Griffin* Court unequivocally held that § 1985(3) reaches private conspiracies aimed at invidiously discriminatory deprivation of the equal enjoyment of rights secured to all by law. 403 U.S. at 102. "[A]ll indicators -- text, companion provisions, and legislative history -- point unwaveringly to § 1985 (3)'s coverage of private conspiracies." *Id.* at 101. Under *Griffin'*s clear framework, Erwine's

allegations state a viable § 1985(3) claim that any reasonable official would have understood violated clearly established law.

In *Ziglar v. Abbasi*, 582 U.S. 120, 153-55 (2017), cited by Appellees at AB 48, in a conditions of confinement case, the Supreme Court applied qualified immunity to the Section 1985(3) claims because reasonable officials would not have known that internal policy discussions and consultations among officials in the same department could violate the law. Specifically, the Court found there was no clearly established law on whether agreements between officers within a single federal department could constitute a conspiracy, making it sufficiently uncertain whether Section 1985(3) applied to such discussions and actions. *Id.* Given both the context of internal departmental discussions and the legal uncertainty around Section 1985(3)'s application, the *Ziglar* Court concluded reasonable officers could not have known with certainty in that case that such policy-related agreements were forbidden by the statute. *Id.* at 153.

Erwine's claims are fundamentally distinct from those in *Ziglar*, as they allege specific acts of retaliation and discrimination that served individual interests rather than corporate objectives - i.e. contempt for Erwine for crossing the thin blue line. Erwine's complaint details instances

where the Officer Defendants and Burke acted contrary to tribal policy, demonstrating clear personal motives. Westbrook and Leonard's statements and actions exemplify conduct driven by individual animus rather than official corporate purposes. The Appellants' deliberate concealment of their actions from tribal leadership described above further demonstrates that they were acting for personal advantage rather than in their official capacities on behalf of the tribe. Unlike *Ziglar*, which involved high-level departmental policy decisions, Erwine alleges targeted conspiracies to obstruct his court testimony under § 1985(2) and discriminate against him based on race and gender under § 1985(3) (Vol. 3 ER-480). Where *Ziglar* centered on whether policy discussions could constitute a conspiracy, Erwine's claims allege classic conspiratorial conduct targeting an individual's clearly established constitutional rights to seek redress in Federal Court for violation of his constitutional rights.

Appellees' reliance on *Snyder v. Navajo Nation*, 382 F.3d 892, 897 (9th Cir. 2004) to support the argument that the Officer Appellants and Burke, as general counsel, were all employed by the same entity, is misplaced (AB 49). *Snyder* involved former tribal police officers' claims under the Fair Labor Standards Act (FLSA). The *Snyder* court held,

unsurprisingly, that allowing FLSA claims to proceed against a tribe would interfere with tribal self governance. 382 F.3d at 895. Here, there are no claims against the tribe and as described above the Appellees were acting contrary to the Tribe's own policies and procedures.

### iii. Bivens Claim

Appellees argue no Bivens extension is permitted because the tribal Appellee officers were not federal actors (AB 52-53), but Erwine's claim falls squarely within the exciting grounds permitted by *Bivens* - and no extension of existing law is sought. Appellee's argument overlooks the explicit federal role for Tribal officers created by the Public Law 93-638 contract (Vol. 2 at 189). The contract here explicitly designated Appellants as federal officials for liability purposes (Vol. 2 at 194 and Vol. 3 ER-446). The First Amended Complaint alleges Appellants utilized this federal authority to discriminate against Erwine based on race while acting under color of federal law (Vol. 3 ER-474).

While the Supreme Court has curtailed the expansion of new *Bivens* remedies in recent years, it has consistently upheld *Bivens* claims in the context of discrimination under the Fifth Amendment, as alleged by Erwine, as established in *Davis v. Passman*, 442 U.S. 228 (1979). See

*Egbert v. Boule*, 596 U.S. 482, 502, 142 S. Ct. 1793, 1809 (2022) and

*Goldey v. Fields*, 606 U.S. 942, 145 S. Ct. 2613 (2025) (disfavoring

recognizing new implied causes of action under *Bivens*). In *Passman*, the

Court specifically recognized a Bivens remedy for employment

discrimination based on sex in violation of the Fifth Amendment's due

process clause. This precedent remains valid and directly relevant to

discrimination claims like Erwine's, where federal officials are alleged to

have engaged in unconstitutional discrimination on the basis of sex and

race. The fact that courts have become more restrictive in recognizing new

types of *Bivens* claims in other contexts does not undermine the continued

validity of *Bivens* remedies for constitutional discrimination claims against

federal officials - particularly where, as here, the claim falls squarely within

the established *Passman* framework for construing *Bivens* based

discrimination claims.  In other words, this case does not present a new

Bivens context, nor is the case different, in a meaningful way, than the same

claim recognized in *Passman.* See *Goldey*, 606 U.S. at 944, describing the

analysis to be conducted as to whether a *Bivens* claim may proceed.

**C. Sovereign Immunity Does Not Preclude This Suit Against the Individual Defendants**

Appellees invoke sovereign immunity to seek affirmance of the district court's dismissal under Rule 19 for failure to add the Washoe Tribe as a party to the case (AB 67), but *Lewis* plainly holds that rule inapplicable to individual-capacity damage driven suits seeking damages against individuals and not tribes. 581 U.S. at 162-63.

### i. Appellant's Claims Do Not Interfere with Tribal Governance

Appellees claim that the relief Erwine seeks would constitute interference with "internal governance" of the Tribe (AB 71) if granted, but Erwine's claims in this case are against the named individuals in their individual capacity, not the tribe.

As made clear in *Acres I*, an "internal governance" analysis is a slippery slope that would lead to a bar of all claims against tribal employees:

> Such an analysis would likely prove difficult because any suit against a tribal employee for conduct in the course of her official duties almost inevitably has some valence to tribal governance. And if that were the test, we would seemingly end up applying tribal sovereign immunity whenever a tribal employee was acting within the scope of her employment—which is precisely what the Supreme Court in *Lewis* said not to do. *See* 137 S. Ct. at 1288.

*Acres I* at 912 citing *Lewis*.

### ii. The Requested Relief Does Not Run Against the Tribe

Appellees argue relief "would effectively run against the Tribe" (AB

61), but the appropriate analysis as described in *Acres I* and *Lewis* is based on from whom damages are sought, in this case the individual Appellants and not the Tribe. *Lewis*, 581 U.S. at 157; *Maverick Gaming LLC v. United States*, 123 F.4th 960, 970 (9th Cir. 2024).

Appellant's claim that relief in this case would interfere with the Tribe's internal governance; citing to the Tribes Amicus Br. at 6, Dkt 20, that "Without such assurance, the Tribe will face significant challenges in attracting and retaining qualified law enforcement personnel, undermining both public safety and the Tribe's ability to govern its own affairs." While it stands to reason that an employer could be less attractive to potential applicants due to the claim that an employee of that entity could be held personally liable for actions they take against fellow employees, this claim is equally concerning to potential employees, in that if subjected to unlawful conduct by fellow employees, like Mr. Erwine was, the wrongdoer could be shielded of all responsibility and consequences.

The Appellees cite *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476 (9th Cir. 1985), claiming that Erwine's case is "on all fours with Hardin." (AB 59). However, the Appellee's analysis of the *Hardin* case, issued in 1985, does not meaningfully grapple with the sea change in tribal

law brought about by the *Lewis* decision and this Court's decision in *Acres I,* nor does it recognize that the opinion in *Hardin* was based upon upholding a tribe's internal governance code (*Hardin*, 779 F.2d at 478). *Hardin* dealt with what was clearly an official tribal action, i.e. a tribal council members' vote to bar a person from a reservation, not employment related claims, such as Erwine's. *Hardin* involved the sovereign authority to regulate an individual's ability to remain on or enter its reservation lands under its internal governance code and resolutions. It would be a stretch for this Court to conclude, based on *Hardin,* that all employment-related claims involving tribes are subject to sovereign or absolute immunity. Further, the Appellees actions described in Erwine's First Amended Complaint directly conflict with tribal policy, by denying Erwine from availing himself of the tribe's grievance procedure (Vol. 3 ER 466-467)

**D. The District Court Erred in Dismissing for Failure to Join the Tribe Under Rule 19**

Appellees argue this case was properly dismissed for failure to join the Tribe as an indispensable party under Rule 19 (AB 67). Under Rule 19, dismissal is required only if: (1) the absent party is necessary, (2) joinder is not feasible, and (3) equity and good conscience require dismissal

considering the enumerated factors. *Diné Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 851 (9th Cir. 2019).

The Tribe is not a necessary party because complete relief can be accorded through damages against Appellants personally for their actions. Erwine's First Amended Complaint alleges that the Appellants acted contrary to tribal procedures by denying proper grievance rights (Vol. 3 ER 466-467), concealing facts from tribal leadership that may have preserved Erwine's job (Vol. 3 ER 467), and making false statements in personnel records (Vol. 3 ER 465 -466). Unlike in *Diné Citizens*, this case does not impact the Tribe's control over its resources or governance. The First Amended Complaint specifically challenges individual misconduct that violated both state and federal law under the *Lewis* and *Acres I* framework.

Moreover, the claims do not implicate tribal sovereignty as they challenge individual wrongdoing, not tribal policy. The First Amended Complaint alleges Appellants acted outside tribal authority by retaliating against Erwine for being a whistleblower, manufacturing false charges, and denying him proper procedures (Vol. 3 ER 464 - 465). This conduct violated rather than implemented tribal policy. When Erwine spoke to the tribal chairman, he was not aware of the circumstances of Erwine's termination or

Erwine's attempts to file grievances, demonstrating these actions were taken by Appellants personally rather than as legitimate tribal functions. (Vol. 3 ER 467).

"There is no precise formula for determining whether a particular non-party is necessary to an action. See *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982). 'The determination is heavily influenced by the facts and circumstances of each case.'" *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). "To come within the bounds of Rule 19(a)(1)(B)(i), the interest of the absent party must be a legally protected interest and not merely some stake in the outcome of the litigation." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). The interest "must be 'more than a financial stake.'" *Dine Citizens,* 932 F.3d at 852 (9th Cir. 2019) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Any judgment favoring Erwine would not affect the Tribe's bank account, sovereignty, or its ability to govern itself and its members. A favorable judgment for Erwine would only obligate the Defendants to pay damages awarded to him.

Requiring joinder of tribe as an indispensable party in individual capacity actions would effectively nullify the Supreme Court's holding in

*Lewis*. If Rule 19 required joining tribes whenever their employees are sued individually in employment law matters, defendants could circumvent *Lewis* simply by arguing the tribe is an indispensable party - and then seeking dismissal because the tribe cannot be joined due to sovereign immunity. The Court's careful distinction between individual and official capacity suits described in *Lewis* would be erased if defendants could simply reframe every employment law related individual capacity claim as requiring tribal joinder, which is clearly a result repudiated by the reasoning in *Lewis*.

### E. Erwine's Claim for Intentional Interference with Contractual Relations claim against Defendant Burke should proceed because blocking Erwine's grievance was not part of his job

The Answering Brief argues that Erwine's Intentional Interference with Contractual Relations claim against Defendant Burke[1], plead as the Thirteenth Claim in Erwine's First Amended Complaint (Vol. 3 ER 497), fails because Burke was the Tribe's agent, and that a party cannot, as a matter of law, interfere with their own contract, citing *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005) (citing *Bartsas Realty, Inc. v. Nash*,

---

[1] Erwine's 13th claim was dismissed as to Appellees Westbrook, Hall and Leonard, individually, by stipulation when the United States was Substituted as a party under the FTCA (See SER 3) but not Burke. See Amended Minute Order in Chambers at ECF #91 at Vol. 3 ER 563.

402 P.2d 650, 651 (Nev. 1965)), aff'd, 220 F. App'x 697 (9th Cir. 2007). (AB at 54).

Although Burke filed a notice of joinder to the Motion to Dismiss (ER Vol. 3 at 313) filed by the other Appellees, Burke did not raise the argument below that he cannot be sued for Intentional Interference with Contractual Relations, and as such, it is waived: "As a general rule, we do not consider an issue raised for the first time on appeal, although we have the discretion to do otherwise." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) citing *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

Burke is being sued in his individual capacity (ER Vol. 3 at 446) and Burke's conduct was an effort to prevent Erwine from availing himself of the Tribe's grievance process to challenge the grounds for his termination: See ER Vol. 3 at 497: "Burk[e] interfered with and concealed Erwine's attempt to grieve his termination as outlined in the Washoe Tribe human resources policy manual." Further, Erwine alleges he was told by the Tribal Chairman that it was unusual for Burke to be involved in the Tribe's internal grievance process. (ER Vol. 3 at 467). The grievance process would have allowed Erwine to challenge the grounds for his termination before the Tribe's human resources review board, as described in Erwine's First

Amended Complaint at ER Vol. 3 at 467.

In sum, an issue of fact exists as to whether Burke was acting within the scope of his authority when he prevented Erwine's grievance from being heard in accordance with Tribal rules, which is a predicate to application of the holding in *Blanck v. Hager*: "...agents acting within the scope of their employment, i.e. the principal's interest, do not constitute intervening third parties.." 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005). Preventing Erwine from availing himself of the Tribe's grievance process was not in the Tribe's interests. Burke insisted that Erwine communicate directly with Burke (ER Vol. 3 at 465), instead of the Tribe's human resources department per the Tribe's grievance procedure (ER Vol. 3 at 349).

Finally, Burke cannot avail himself of qualified immunity for an individual capacity Nevada tort claim by arguing that Erwine's claim is actually a federal claim (AB at 56). Qualified immunity shields government officials under federal law only. "We decline to apply a doctrine that has evolved in the narrow and unique context of §1983 claims in a way that would undermine state law that expressly departs from the federal standard concerning qualified immunity." *Mendez v. Cty. of L.A.*, 897 F.3d 1067, 1083 (9th Cir. 2018).

### III. CONCLUSION

The district court's dismissal should be reversed, and the case

remanded.

Date: December 27, 2025

<div style="margin-left: 40%;">

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail:
luke@lukelandrewbusbylltd.com
*Attorney for Appellant Michael Erwine*

</div>

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Certificate of Compliance for Briefs**

**9th Cir. Case Number: 25-3136**

This brief contains **6957** words, including words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail:
luke@lukelandrewbusbylltd.com
*Attorney for Appellant Michael Erwine*

Date: December 27, 2025

## CERTIFICATE OF SERVICE

I certify that on December 27, 2025, this brief was served

electronically through the Appellate Electronic Filing System.

By: <u>/s/ Luke Busby, Esq.</u>
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail:
luke@lukelandrewbusbylltd.com
*Attorney for Appellant Michael Erwine*