No. 25-3136

_____

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

_____

**MICHAEL ERWINE,**

*Plaintiff-Appellant,*

V.

**ZACHARY WESTBROOK, et al.,**

*Defendants-Appellees.*

**On Appeal from the United States District Court for the District of Nevada**
**No. 3:24-cv-00054**

**Hon. Judge Miranda Du**

**APPELLANT'S SUPPLEMENTAL BRIEF**

Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail: lukebusby@pm.me
*Attorney for Appellant Michael Erwine*

## DISCLOSURE STATEMENT

Appellant Michael Erwine is an individual and not a nongovernmental corporate entity; thus, no Disclosure Statement is required under FRAP 26.1(a).

Date: February 25, 2026

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail: lukebusby@pm.me
*Attorney for Appellant Michael Erwine*

## TABLE OF CONTENTS

I. INTRODUCTION …………………………...………...………. 1

II. STATE LAW IMMUNITIES V. FEDERAL IMMUNITIES ……..... 1

III. ARGUMENT ……………………………………………….…. 4

    A. Davis Has No Precedential or Persuasive Force as to the Federal Claims Because Federal Law, Not State Law, Governs the Immunity Analysis for Erwine's Federal Civil Rights and Constitutional Claims …………………………………………… 5

    B. Lewis and Acres Bonusing Foreclose Any Reading of Davis That Would Extend Absolute Immunity to All Tribal Employees Sued in Their Individual Capacities ……………………...…… 7

    C. Burke's State-Law Claim Fails the Nevada Functional Test for Absolute Immunity …………………………………………..... 9

IV. CONCLUSION ……………………………...……………....… 11

*Supplemental Brief*

# TABLE OF AUTHORITIES

## Cases

*Acres Bonusing, Inc. v. Marston,*
 17 F.4th 901 (9th Cir. 2021) ………………………………………… 6, 7, 8

*Ashcroft v. Iqbal,*
 556 U.S. 662, 678 (2009) ………………………………………….. 11

*Bivens v. Six Unknown Named Agents*,
 403 U.S. 388 (1971) …………………………………………………..... 5

*Butz v. Economou,*
 438 U.S. 478, 513, 98 S. Ct. 2894, 2914 (1978) ………………….. 3, 5

*Davis v. Littell,*
 398 F.2d 83 (9th Cir. 1968) ………………………….… 1, 2, 5, 6, 7, 9, 11

*Erie Railroad Co. v. Tompkins*,
 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ………….…… 2, 9

*Imbler v. Pachman,*
 424 U.S. 409, 96 S. Ct. 984 (1976) ……………………………........… 3

*Lewis v. Clarke,*
 581, U.S. 155 (2017) …………………………………….....…… 7, 8, 9

*Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*,
 484 F.3d 1098, 1100 (9th Cir. 2007) ………………………….... 3, 9

*State v. Second Judicial Dist. Court,*
 118 Nev. 609, 615, 55 P.3d 420, 424 (2002) ……………………. 3, 9

*Witzman v. Gross*,
 148 F.3d 988, 990 (8th Cir. 1998) …………………...……………… 2

**<u>Statutes</u>**

42 U.S.C. § 1981 ……………………………………………………………... 5

42 U.S.C. § 1985 ………………..……………………….……………..… 5

*Supplemental Brief*

# I. INTRODUCTION

On February 9, 2026, the Court directed the parties to file supplemental briefs on the following question: Whether *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968), lacks precedential or persuasive force on the applicability of absolute immunity to the Washoe Tribal employees in this case. In short, the answer to the Court's question is that *Davis* has no precedential or persuasive applicability to this case.

## II. STATE LAW IMMUNITIES V. FEDERAL IMMUNITIES

In *Davis*, this Court held that the general counsel of the Navajo Tribe was entitled to absolute immunity under Arizona law for allegedly defamatory statements made within the scope of his official duties. *Id.* at 83. The decision was grounded in the principle that absolute immunity is necessary to ensure the discharge of judicial and executive duties without fear of retaliation or litigation. The question presented in *Davis* was limited: "whether appellee, by virtue of his position as general counsel for the Navajo Tribe, was entitled to assert absolute privilege as to defamatory statements made by him within the scope of his official duties." *Id.* at 83. The Court answered that question in the affirmative, but its holding was rooted in the specific nature of the claim—an Arizona state common-law

*Supplemental Brief - 1*

defamation action—and the specific function of the defendant—a tribal general counsel whose statements the court concluded were "directly tied to quasi-judicial functions." *Id.* at 84–85. The *Davis* court recognized an Arizona law absolute immunity defense was available to a particular official performing a particular function—no different in kind from the absolute immunity traditionally afforded to prosecutors, judges, legislators, testifying police officers, and the President.

The *Erie* doctrine generally requires federal courts to apply state substantive law and federal procedural law when adjudicating state law claims under diversity jurisdiction. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). However, when a case is based on federal question jurisdiction and supplemental jurisdiction, as this one is (ER Vol. 3 at 445), the application of the *Erie* doctrine is more nuanced.

This Court has held that the *Erie* doctrine applies to state law claims even when they are brought in federal court. The basis of a federal court's jurisdiction over a state law claim is irrelevant for *Erie* purposes.

> However, the basis of a federal court's jurisdiction over a state law claim is irrelevant for *Erie* purposes. "Where state law supplies the rule of decision, it is the duty of federal courts to ascertain and apply that law." *Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) (internal quotation marks omitted). Thus, *Erie*

principles apply equally when federal courts exercise jurisdiction under § 1441(c). *Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*, 484 F.3d 1098, 1100 (9th Cir. 2007).

Nevada law, like federal law, grants absolute immunity to individuals and entities performing functions integral to the judicial process, with the scope of immunity determined by the nature of the function performed and the public policy considerations underlying the doctrine. In *State v. Second Judicial Dist. Court*, 118 Nev. 609, 615, 55 P.3d 420, 424 (2002), the Nevada Supreme Court held that judicial and quasi-judicial immunity applies to prosecutors per *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 995 (1976), also protects participants in the judicial process. Citing *Butz v. Economou*, 438 U.S. 478, 513, 98 S. Ct. 2894, 2914 (1978), the Nevada Supreme Court held that the functional approach should be considered in whether to grant absolute immunity: (1) whether the official performs functions traditionally afforded absolute immunity; (2) whether personal liability would unduly interfere with the official's duties; and (3) whether existing procedural safeguards adequately protect against unconstitutional conduct. *State v. Second Judicial Dist. Court*, 55 P.3d at

425. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 425.

### III. ARGUMENT

The core ruling of the District Court being challenged in this case is as follows:

> And while it is true that the Washoe Tribe uses the phrasing "Sovereign Immunity" instead of "Absolute Immunity" in describing the immunity it bestowed on Washoe Tribe Defendants and Burke through Title 33, it unequivocally immunizes tribal officers and employees from demands to recover damages arising from work they do for the Tribe in the pertinent section. See Title 33, § 33-20(2). This provision immunizes Washoe Tribe Defendants and Burke from Erwine's claims so long as his allegations reflect that they were performing their official duties.

ER Vol. 1 at 8.

The District Court erred because it effectively converted the Tribe's sovereign immunity code into a grant of blanket absolute personal immunity to individual defendants, as explained below, an outcome that controlling Supreme Court and Ninth Circuit authority forbids.

///

///

///

### A. *Davis* Has No Precedential or Persuasive Force as to the Federal Claims Because Federal Law, Not State Law, Governs the Immunity Analysis for Erwine's Federal Civil Rights and Constitutional Claims

*Davis* analyzed absolute immunity under Arizona common law as applied to an Arizona state-law defamation claim. 398 F.2d at 83–85. The immunity recognized in *Davis* was a state-law based "absolute privilege"—a substantive defense arising under state tort law to protect communications made within quasi-judicial proceedings. This is a fundamentally different inquiry from the federal absolute immunity analysis applicable to Erwine's claims arising under 42 U.S.C. §§ 1981, 1985(2), 1985(3), and the Fifth Amendment under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

For Erwine's federal claims, the immunity analysis is governed exclusively by federal law. Under federal law, absolute immunity is a narrow, function-based defense available only where the official's duties are functionally comparable to those historically afforded absolute immunity. *Butz v. Economou*, 438 U.S. 478, 513, 98 S. Ct. 2894, 2914 (1978). The conduct alleged against Westbrook, Leonard, and Hall— discriminatory discipline, retaliation for refusing to make arrests without probable cause,

conspiracy to terminate Erwine for seeking to testify in a prior lawsuit (Vol. 3 ER-442, 459–460, 464–465, 480–483)—is administrative in nature. It is not prosecutorial, judicial, legislative, or testimonial. No criminal proceedings are at issue. Routine supervisory employment decisions do not fall within any recognized category of absolute immunity under federal law.

This Court confirmed as much in *Acres Bonusing, Inc. v. Marston*, 17 F.4th 901 (9th Cir. 2021), where it granted absolute immunity only to those defendants performing judicial or quasi-judicial functions—the chief judge, law clerks, and tribal court clerk—while declining to extend absolute immunity to other tribal officials whose conduct did not fall within a recognized absolute immunity category, reinforcing that this defense is not available to all tribal employees simply by virtue of their employment. 17 F.4th at 915–17.

*Davis* provides no authority for extending absolute immunity under federal law to tribal law enforcement officers performing personnel functions. Thus, the federal claims in this case must be analyzed under federal immunity standards, where *Davis* has no precedential force.

///

///

***B. Lewis and Acres Bonusing Foreclose Any Reading of Davis That Would Extend Absolute Immunity to All Tribal Employees Sued in Their Individual Capacities***

*Davis* cannot be read to support the sweeping proposition that all tribal employees enjoy absolute immunity for all actions within the scope of their employment under a tribe's sovereign immunity code. Subsequent controlling authority foreclosed that reading.

In *Lewis v. Clarke*, 581 U.S. 155 (2017), the Supreme Court held that tribal sovereign immunity does not extend to suits against tribal employees in their individual capacities where the judgment will not operate against the tribe. 581 U.S. at 159, 163–65. The Court emphasized that "[t]here is no reason to depart from these general rules in the context of tribal sovereign immunity," and warned against extending immunity to individual-capacity suits "beyond what common-law sovereign immunity principles would recognize for either state or federal employees." *Id.* at 164. The Court further held that indemnification provisions cannot "as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Id.* at 164–65.

This Court in *Acres Bonusing* directly addressed *Davis*, explaining

that it involved "the personal defense of absolute immunity, which is a different question than whether tribal sovereign immunity applies." 17 F.4th at 913 n.4. The Court further found that extending tribal sovereign immunity to individual defendants merely "because they were sued for conduct within the scope of their employment for the tribe . . . would be at odds with *Lewis* and one we could not follow." *Id.* at 914.

The district court in this case did precisely what *Acres Bonusing* warned against. It held that "Washoe Tribe Defendants (and Burke) are entitled to absolute immunity from Erwine's claims so long as his claims against them, appropriately construed, arise out of their performance of their official duties" (Vol. 1 ER-10). This holding—granting blanket absolute immunity to all defendants—is indistinguishable from extending sovereign immunity to individual-capacity suits, which *Lewis* forbids and *Acres Bonusing* rejected.

As the *Acres Bonusing* court observed, "any suit against a tribal employee for conduct in the course of her official duties almost inevitably has some valence to tribal governance. And if that were the test, we would seemingly end up applying tribal sovereign immunity whenever a tribal employee was acting within the scope of her employment—which is

*Supplemental Brief - 8*

precisely what the Supreme Court in *Lewis* said not to do." 17 F.4th at 912.

### C. Burke's State-Law Claim Fails the Nevada Functional Test for Absolute Immunity

As to the sole state-law claim—Intentional Interference with Contractual Relations against Defendant Burke—*Davis* is equally unavailing. Under *Erie*, Nevada substantive law governs the immunity analysis for this state-law tort claim. *Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*, 484 F.3d 1098, 1100 (9th Cir. 2007).

Under Nevada's functional approach set forth in *State v. Second Judicial Dist. Court,* 55 P.3d at 425, Burke bears the burden of demonstrating that absolute immunity is justified for the function in question. He cannot meet that burden. First, Burke's alleged conduct—obstructing Erwine's access to the Tribe's grievance process—does not involve a judicial or prosecutorial function traditionally afforded absolute immunity. (Vol. 3 ER-466-467). Burke was not acting in a prosecutorial, judicial, legislative, or testimonial capacity - he was interfering with an administrative employment grievance—a function that bears no resemblance to the quasi-judicial duties of the tribal general counsel in *Davis*, who made statements in an internal report tied to

quasi-judicial functions. 398 F.2d at 84–85. Erwine alleges the Tribal Chairman confirmed that "it is unusual for Burk to be involved in the process outside of a direct threat of legal action" (Vol. 3 ER-467), meaning Burke's involvement in the grievance process was not even a recognized function of his position as general counsel with the tribe.

Second, the threat of personal liability for obstructing an employee's grievance rights does not unduly interfere with the legitimate duties of a tribal general counsel. The grievance process existed under tribal policy for the protection of employees (Vol. 3 ER-349). Shielding Burke from liability for subverting that process does not advance any judicial or prosecutorial function; rather, it would insulate conduct that contravened the tribal policies Burke was employed to uphold.

Third, the procedural safeguards that ordinarily exist within the tribal system—specifically, the grievance process that would have allowed Erwine to challenge his termination before the Tribe's human resources review board with final review by the Tribal Chairman—were the very mechanisms Burke obstructed (Vol. 3 ER-465–467, 497). Burke insisted that Erwine communicate solely with him rather than through the Tribe's human resources department as required by tribal procedure (Vol. 3 ER-465, 349).

He concealed Erwine's termination and grievance attempts from the Tribal Chairman, who was unaware of either (Vol. 3 ER-467, 497). When the procedural safeguards designed to protect against wrongful termination are themselves the target of the defendant's actions, it would be incongruous to grant that defendant absolute immunity from liability. The absence of functioning procedural safeguards—caused by Burke's own alleged conduct—weighs decisively against immunity under the third factor.

At the motion to dismiss stage, well-pleaded allegations must be accepted as true (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) and they establish that Burke was acting outside the scope of his authority and not performing a quasi-judicial function, defeating any claim to absolute immunity under either Nevada law or *Davis*.

## IV. CONCLUSION

*Davis* provides no precedential or persuasive value because Erwine's federal claims are governed by federal immunity standards under which law enforcement supervisors making routine personnel decisions fall outside every recognized category of absolute immunity, and similarly, his state-law claim against Burke is governed by Nevada's functional test, which Burke cannot satisfy because he acted outside the scope of his duties to obstruct the

very procedural safeguards designed to protect employees like Erwine.

Date: February 25, 2026

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail: lukebusby@pm.me
*Attorney for Appellant Michael Erwine*

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

### Certificate of Compliance for Briefs

### 9th Cir. Case Number: 25-3136

This brief contains **2333** words, including words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail: lukebusby@pm.me
*Attorney for Appellant Michael Erwine*

Date: February 25, 2026

## CERTIFICATE OF SERVICE

I certify that on Date: February 25, 2026, this brief was served electronically through the Appellate Electronic Filing System.

By: <u>/s/ Luke Busby, Esq.</u>
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
Telephone: 775-453-0112
E-mail: lukebusby@pm.me
*Attorney for Appellant Michael Erwine*