**No. 25-3136**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

MICHAEL ERWINE,

*Plaintiff – Appellant*,

v.

ZACHARY WESTBROOK, *et al.*,

*Defendants – Appellees*.

On Appeal from the United States District Court
for the District of Nevada
Case No. 3:24-cv-00045-MMD-CSD
Hon. Miranda M. Du

---

# APPELLEES' PETITION FOR REHEARING EN BANC

---

Sydney Tarzwell
NATIVE AMERICAN
RIGHTS FUND
420 L Street, Suite 310
Anchorage, AK 99501
(907) 276-0680

Leonard R. Powell
Morgan E. Saunders
NATIVE AMERICAN
RIGHTS FUND
950 F Street NW, Suite 1050
Washington, DC 20004
(202) 785-4166
powell@narf.org

*Counsel for Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................ii

INTRODUCTION AND RULE 40(b) STATEMENT ................................ 1

STATEMENT OF THE CASE ............................................................... 2

A. Legal Background ........................................................................ 2

B. Factual Background ...................................................................... 4

C. The District Court's Decision ......................................................... 5

D. The Panel's Decision ...................................................................... 5

REASONS FOR GRANTING REHEARING EN BANC .......................... 6

I. The Panel's Absolute Immunity Holding Nullifies *Davis*, Conflicts With *Lewis*, And Splits With Tenth Circuit Precedent. ..................... 6

II. The Panel's Rule 19 Holding Collapses The Required-Party Inquiry Into Sovereign Immunity And Conflicts With Both *Lewis* And This Court's Precedent.............................................................................. 12

III. This Case Is Exceptionally Important. ............................................ 19

CONCLUSION ..................................................................................... 21

## TABLE OF AUTHORITIES

### Cases

*Acres Bonusing, Inc. v. Marston*,
17 F.4th 901 (9th Cir. 2021) .......... 3, 7, 9, 10
*Alden v. Maine*,
527 U.S. 706 (1999) .......... 15
*Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*,
928 F.2d 1496 (9th Cir. 1991) .......... 17
*Davis v. Littell*,
398 F.2d 83 (9th Cir. 1968) .......... *passim*
*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) .......... 13, 17
*Diver v. Peterson*,
524 N.W.2d 288 (Minn. Ct. App. 1994) .......... 9
*EEOC v. Peabody W. Coal Co.*,
400 F.3d 774 (9th Cir. 2005) .......... 15, 18
*Great W. Casinos, Inc. v. Morongo Band of Mission Indians*,
74 Cal. App. 4th 1407 (1999) .......... 9
*Jamul Action Comm. v. Simermeyer*,
974 F.3d 984 (9th Cir. 2020) .......... 3
*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*,
346 F.3d 1190 (9th Cir. 2003) .......... 12
*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,
523 U.S. 751 (1998) .......... 8
*Lewis v. Clarke*,
581 U.S. 155 (2017) .......... *passim*
*Makah Indian Tribe v. Verity*,
910 F.2d 555 (9th Cir. 1990) .......... 15
*Michigan v. Bay Mills Indian Cmty.*,
572 U.S. 782 (2014) .......... 19
*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .......... 20
*N. Metro Harness Initiative LLC v. Beattie*,
No. 24-CV-1369, 2025 WL 776118 (D. Minn. Mar. 11, 2025) .......... 13
*N. Metro Harness Initiative LLC v. Beattie*,
No. 24-CV-1369, 2025 WL 2374408 (D. Minn. Aug. 15, 2025) .......... 14

*Romero v. Peterson*,
5 F.3d 547, 1993 WL 375746 (10th Cir. 1993) ........ 11, 12
*Romero v. Peterson*,
930 F.2d 1502 (10th Cir. 1991) ........ 11, 12
*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978) ........ 2
*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) ........ 13, 17, 18
*Stock W. Corp. v. Taylor*,
942 F.2d 655 (9th Cir. 1991) ........ 9

**Statutes**

28 U.S.C. § 1391(b) ........ 20
42 U.S.C. § 1981 ........ 4
42 U.S.C. § 1985(2) and (3) ........ 4

**Rule**

Fed. R. Civ. P. 19(a)(1)(B)(i) ........ 3

## INTRODUCTION AND RULE 40(b) STATEMENT

For nearly 60 years, this Court has held that an Indian tribe may "accord absolute privilege to [its] officers within the areas of tribal control." *Davis v. Littell*, 398 F.2d 83, 84 (9th Cir. 1968). Here, the Washoe Tribe did exactly that. Via its tribal code, it extended absolute immunity to Appellees—former officers and employees of the Tribe—against claims like Appellant's that seek to hold tribal officials liable for performing internal tribal governance functions. Under *Davis*, that should have ended this case.

The panel held instead that a tribe's conferral of absolute immunity cannot reach federal claims and does not reach state claims "by its own force." Op. 29. That overrules *Davis* in all but name. It rests on a reading of *Lewis v. Clarke*, 581 U.S. 155 (2017), that *Lewis* itself disclaims. And it splits from the Tenth Circuit, which the panel did not cite. Any one of those departures warrants rehearing. Together, they demand it.

The panel also stripped away the protection that tribes possess under Federal Rule of Civil Procedure 19. Appellant's own complaint alleges that the Tribe fired him, and his suit would decide, without the Tribe, whether that decision was lawful. The panel nonetheless held that

the Tribe has no protected interest in this suit because Appellant seeks damages only from individuals. That substitutes the sovereign-immunity test for Rule 19's practical inquiry, doubles down on the misreading of *Lewis*, and conflicts with this Court's precedent protecting a tribe's authority to govern.

By Appellees' count, this Circuit is home to roughly 420 of the 575 federally recognized tribes. The stakes for those 420 tribes are immediate and sweeping. Each now has no say over the immunity its officials have against state and federal suits that intrude on areas of tribal control, and no protection when a plaintiff litigates the tribe's governance decisions by suing those officials for money. Rehearing en banc should be granted.

## STATEMENT OF THE CASE

### A. Legal Background

*Sovereign immunity*. Indian tribes possess "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). In *Lewis*, the Supreme Court held that a tribe's sovereign immunity generally does not bar individual-capacity damages suits against tribal employees. 581 U.S. at 163-65. The Court, however, distinguished sovereign immunity from the

"personal immunity defenses" an individual officer "may be able to assert." *Id.* at 163.

*Absolute immunity.* One of the personal defenses *Lewis* left open is absolute immunity. Nearly 60 years ago, this Court held in *Davis v. Littell* that a tribe may "accord absolute privilege to [its] officers within the areas of tribal control." 398 F.2d at 84. *Davis* applied that rule to bar a state-law defamation suit against the Navajo Nation's general counsel arising from a tribal personnel dispute. *Id.* at 84-86. After *Lewis*, this Court underscored that "[w]hether tribal officials enjoy personal immunities from suit is a different question from whether tribal sovereign immunity applies." *Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 913 n.4 (9th Cir. 2021).

*Rule 19.* Under Federal Rule of Civil Procedure 19, an absent party must be joined to a suit if it claims a legally protected interest that the litigation may, "as a practical matter[,] impair or impede." Fed. R. Civ. P. 19(a)(1)(B)(i). When the absent party is a tribe that cannot be joined because of sovereign immunity, Rule 19 "almost always favors dismissal." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 998 (9th Cir. 2020).

**B. Factual Background**

Appellant was a police officer employed by the Washoe Tribe. On March 4, 2022, the Tribe terminated his employment. Op. 5. At a meeting that day with the Chief of Police, the Deputy Chief, a sergeant, and the Tribe's General Counsel, the Chief informed Appellant of the decision and said that the Tribal Chairman had signed off on it. Op. 5-6; 3-ER-465.

Appellant sued those four officials (Appellees) in their individual capacities for damages. His claims are race discrimination under 42 U.S.C. § 1981, conspiracy under 42 U.S.C. § 1985(2) and (3), a *Bivens* claim against the three police officials, and a Nevada claim for intentional interference with contractual relations against the General Counsel. Op. 6. Appellant's complaint repeatedly alleges that "[t]he Washoe Tribe" made the decision he challenges. *E.g.*, 3-ER-485. The Tribe, as amicus, confirmed that Appellees' challenged acts "were taken in the performance of [their] official duties" and "fall within the scope of work assigned or controlled by the Tribe." Washoe Amicus Br. 6. The panel agreed: "That much is true." Op. 18.

**C. The District Court's Decision**

The district court dismissed. It determined that the Tribe, via Title 33 of its tribal code, "bestowed absolute immunity on [Appellees]" for "disciplining and ultimately firing" Appellant, which was conduct "within the scope of their official duties." Op. 7, 19. And it held that, under *Davis*, the Tribe's conferral of absolute immunity compelled dismissal. Alternatively, it held that the Tribe is a required party under Rule 19 because the suit implicates the Tribe's "sovereign interest in setting and enforcing its own employment policies," and that the Tribe cannot be joined because of its sovereign immunity. Op. 7.

**D. The Panel's Decision**

In his initial briefing before the panel, Appellant argued that *Lewis* had superseded *Davis*, that *Davis* reached only quasi-judicial functions, and that Appellees acted outside their duties. Opening Br. 9-10, 13-14; Reply Br. 2-9. He did not suggest that *Davis* rested on comity or state law. After initial briefing concluded, the panel sua sponte ordered supplemental briefing on whether *Davis* "lacks precedential or persuasive force on the applicability of absolute immunity" in this case. Order, ECF No. 43.1 (Feb. 9, 2026).

The panel reversed the district court. Discounting *Davis* as a mere prediction about Arizona law, the panel held that a tribe's conferral of immunity applies only if it is "consistent with the law under which the cause of action arises," Op. 19-20, a conclusion it found "reinforced" by *Lewis*. Op. 23. The panel also held that the Tribe is not a required party. Because Appellant seeks damages only from individuals, it reasoned, "a money judgment does not implicate the Tribe's interest in self-governance." Op. 33.

## REASONS FOR GRANTING REHEARING EN BANC

### I. The Panel's Absolute Immunity Holding Nullifies *Davis*, Conflicts With *Lewis*, And Splits With Tenth Circuit Precedent.

1. *Davis* should have resolved this suit. Under *Davis*, tribes "enjoy[] sufficient independent status and control over [their] own laws and internal relationships to be able to accord absolute privilege to [their] officers within the areas of tribal control." 398 F.2d at 84. The Washoe Tribe here did exactly that. It extended absolute immunity to Appellees for tribal personnel decisions—the same kind of conduct at issue in *Davis* itself. *See id.* at 83-84. That should have ended this suit.

The panel nonetheless gave Title 33 no effect—and its reasoning leaves *Davis* none either. A tribe's conferral of immunity, the panel held, cannot reach federal claims, Op. 23, and does not reach state claims "by its own force," Op. 29. Those holdings cover every claim that can be brought against a tribal officer in any federal or state court. Between them, they overrule *Davis* in all but name.

Indeed, confirming *Davis*'s death, a tribe's conferral of immunity now does no independent work against intrusive state and federal claims. By default, a tribal official already receives whatever immunity the law governing the claim would give any other official. *See Acres Bonusing*, 17 F.4th at 915-16 (recognizing that tribal judges enjoy "the same absolute judicial immunity that shields state and federal court judges"). And under the panel's rule, that is the *only* time a tribal employee can assert official immunity. Any tribally derived immunity beyond that is, by the panel's logic, overridden as not "consistent with the law under which the cause of action arises." Op. 19-20. A tribe that enacts a law like Title 33 thus ends up in the same place as a tribe that does not. And *Davis* does nothing at all.

2. The panel called this declining to "extend" *Davis*. Op. 19. It characterized *Davis* as simply a "prediction" that Arizona courts would honor the Navajo Nation's conferral of immunity. Op. 20-21. But comity was the last step of *Davis*'s analysis, not its foundation. *Davis* first asked whether a tribe has the sovereign authority to confer absolute immunity on its officers—a federal question that *Davis* answered with federal principles of tribal sovereignty. 398 F.2d at 84. Only then did *Davis* predict that Arizona would honor the immunity, which spared it from deciding what would happen if a state refused. *Id.* at 85-86. The Supreme Court has since answered that question: tribal immunity "is a matter of federal law and is not subject to diminution by the States." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998). Yet the panel here, by treating *Davis*'s final step as the whole decision, freed itself to hold that a tribe's conferral of immunity has no force of its own. In the process, it left *Davis* an empty husk.

It also upended the settled understanding of *Davis* that stood for nearly 60 years. *See* 1-ER-10 (collecting cases where courts have "rel[ied] on *Davis* and treat[ed] it as good law"). Appellees are aware of no prior court that read *Davis* as a mere comity decision. On the contrary, courts

outside Arizona, where a prediction of Arizona law would carry no weight, have applied *Davis* to claims under their own law and federal law. *See Diver v. Peterson*, 524 N.W.2d 288, 291-92 (Minn. Ct. App. 1994); *Great W. Casinos, Inc. v. Morongo Band of Mission Indians*, 74 Cal. App. 4th 1407, 1424 (1999). This Court, too, has described *Davis* as addressing whether a tribe had "bestowed" the personal defense of absolute immunity. *Acres Bonusing*, 17 F.4th at 913 n.4; *see also Stock W. Corp. v. Taylor*, 942 F.2d 655, 664 (9th Cir. 1991) (looking to *Davis* to answer tribal official immunity question), *rev'd on reh'g on other grounds*, 964 F.2d 912 (9th Cir. 1992) (en banc). That consensus reveals the panel's decision for what it is: not a refusal to extend *Davis*, but an overruling of it.

3. That overruling conflicts with *Lewis*. *Lewis* resolved a single question: whether a tribe's sovereign immunity bars an individual-capacity suit against a tribal employee. 581 U.S. at 158. *Lewis* held that it does not, because the tribe is not the real party in interest. *Id.* at 161-64. But the Supreme Court distinguished the "personal immunity defenses" an officer "may be able to assert." *Id.* at 163. This Court has

thus read *Lewis* as allowing tribal officials to assert personal immunity. *Acres Bonusing*, 17 F.4th at 913 n.4.

The panel here, however, treated *Lewis* as a reason to *deny* effect to the Tribe's conferral of personal immunity. It reasoned that, because a tribe's sovereign immunity does not reach individual-capacity suits, a tribe may not "effect indirectly through tribal law ... what the Court has instructed its sovereign immunity does not afford." Op. 23. That turns *Lewis* on its head. The whole point of personal immunity is to shield officers from liability that sovereign immunity leaves open. Yet the panel erased that line, and it turned *Lewis*'s express reservation of personal immunities into a rejection of the very defense that *Lewis* preserved and that *Davis* long recognized.

4. In nullifying *Davis*, the panel also created a circuit split. The panel claimed that "the parties have identified no case[] … in which a federal court of appeals concluded" that an Indian tribe may confer absolute immunity "in an individual-capacity action arising under federal law." Op. 20. In fact, Appellees pointed to just such a decision from the Tenth Circuit: *Romero v. Peterson*. *See* Answering Br. 35.

*Romero* was an individual-capacity *Bivens* suit against two police officers who possessed both federal and tribal police authority. *Romero v. Peterson*, 930 F.2d 1502, 1503-04 (10th Cir. 1991). The Tenth Circuit concluded that the officers lacked absolute immunity if they were acting under color of federal law when they engaged in the alleged conduct. *Id.* at 1505. But it held that if they were tribal rather than federal actors, they had a substantial argument that they were "entitled to invoke the absolute immunity of the Indian tribe." *Id.* After a remand confirmed the relevant facts, the Tenth Circuit affirmed that "[a]t the time of the alleged incident, the defendants were acting solely as tribal actors" and therefore "entitled to absolute immunity." *Romero v. Peterson*, 5 F.3d 547, 1993 WL 375746, at *3 (10th Cir. 1993) (table decision) (cleaned up).

*Romero* thus squarely presented the question the panel said no court of appeals had answered. The plaintiff asserted an individual-capacity *Bivens* claim, the defendants were tribal police officers, and the defense was absolute immunity derived from the tribe. And the Tenth Circuit expressly rejected the premise of the panel's decision: that a tribal officer's immunity from federal claims is limited to the immunity federal

common law would give any other officer performing the same function. *See* 930 F.2d at 1505; 1993 WL 375746, at *3.

The panel did not distinguish *Romero*. It did not cite it at all. But now, tribal officers in the Tenth Circuit may invoke tribally conferred absolute immunity against federal damages claims, while those in this Circuit may not. This Court does not generate circuit splits without a compelling reason. *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). Yet the panel created one without acknowledging it. That alone demands en banc review.

## II. The Panel's Rule 19 Holding Collapses The Required-Party Inquiry Into Sovereign Immunity And Conflicts With Both *Lewis* And This Court's Precedent.

1. Dismissal was also required because the Tribe is a necessary party that cannot be joined under Rule 19. Appellant's own complaint says who fired him: the Tribe. Appellant alleges that he "found himself terminated and unemployed after his employer [(*i.e.*, the Tribe)] became aware [of] the circumstances surrounding his termination from Churchill County." 3-ER-444. He alleges that "[t]he Washoe Tribe" prepared the "termination paperwork that it used as justification to terminate" him. 3-ER-483. And he alleges that "[t]he Washoe Tribe wrongfully and in bad

faith breached [his employment] contract and terminated" him. 3-ER-485. The Tribe, for its part, has confirmed that each act at issue was "taken in the performance of [Appellees'] official duties." Op. 18. And the panel agreed: "The Tribe terminated [Appellant's] employment." Op. 5.

Because the Tribe made the decision Appellant challenges, the Tribe has legally protected interests in this litigation three times over. *First*, the suit would adjudicate the lawfulness of the Tribe's own governmental act. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (concluding the Navajo Nation was a required party to a suit that would "impair its sovereign capacity … to govern the Navajo reservation"). Appellant's claims rest on the premise that his termination was unlawful. *See* 3-ER-473-76, 479-82, 486-87. They thus would obligate a federal court to "find that the Tribe[] acted unlawfully," and to do so without the Tribe present. *See N. Metro Harness Initiative LLC v. Beattie*, No. 24-CV-1369, 2025 WL 776118, at *6 (D. Minn. Mar. 11, 2025) (dismissing for failure to join tribes in such circumstances), *appeal docketed*, No. 25-2857 (8th Cir. Sep. 22, 2025). *Second*, the suit would obligate a federal court to construe and apply the Tribe's own rules. *See Shermoen v. United States*, 982 F.2d 1312, 1317

(9th Cir. 1992) (explaining that a tribe must be joined when its legal duties would be "judicially determined without consent"). As the district court explained, Appellant's claims "would require the Court to evaluate the Washoe Tribe's employment policies at its police department and determine whether or not they have been violated." 1-ER-14. *Third*, a judgment against Appellees would impede the Tribe's ability to govern through its officials. As a district court recognized just last year in an individual-capacity suit against tribal casino employees, "imposing enormous financial liability on the individuals who operate [tribal] casinos—indeed, even the *threat* of such liability—is likely to severely hamper those Tribes' ability to operate their casinos." *N. Metro Harness Initiative LLC v. Beattie*, No. 24-CV-1369, 2025 WL 2374408, at *3 (D. Minn. Aug. 15, 2025). The same is true of the Tribe's ability to run its police department, as the Tribe itself told the panel here. Washoe Amicus Br. 6. Each of these interests made the Tribe a necessary party to this suit.

2. The panel avoided that result only by substituting the sovereign-immunity test for the Rule 19 one. It held that in suits seeking damages solely from tribal officials, "a money judgment does not implicate the

Tribe's interest in self-governance." Op. 33. It thus answered the Rule 19 question with *Lewis*'s sovereign-immunity test, looking solely at the remedy.

But sovereign immunity and Rule 19 address fundamentally different concerns. Sovereign immunity spares a sovereign "the indignity of subjecting [it] to the coercive process of judicial tribunals at the instance of private parties." *Alden v. Maine*, 527 U.S. 706, 749 (1999). It turns on the formal inquiry of who "may be legally bound by the court's adverse judgment." *Lewis*, 581 U.S. at 165. Rule 19, on the other hand, protects a sovereign that has *not* been haled into court, and it asks a functional question rather than a formal one. "By definition, parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are so situated as a practical matter as to impair … their … ability to protect their interests." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 783 (9th Cir. 2005) (cleaned up). The inquiry is "a practical one and fact specific," and it "is designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

By swapping the tests, the panel's decision produces the very "rigid application" Rule 19 is designed to avoid. Under the panel's approach, a tribe is never a required party to "this type of suit"—one "seek[ing] relief against tribal employees only in their personal capacities"—no matter what the suit is about. Op. 33. Rule 19 exists precisely because a judgment may impair the interests of those against whom it does not run. Yet if the panel's decision stands, the identity of the judgment debtor alone will determine whether a tribe has any interest in the litigation, and that categorical rule will displace Rule 19's functional inquiry in every damages action against tribal officials in this Circuit. Only en banc review can restore Rule 19 its independent purpose.

3. En banc review is also needed because the panel's decision conflicts with both *Lewis* and this Court's precedent. *Lewis* expressly left open whether tribal officials can raise defenses other than sovereign immunity. *Supra* Part I.3. Yet the panel treated *Lewis* as the last word on every question about a tribe's stake in a suit against its officers. It used *Lewis* first to deny the Tribe's conferral of absolute immunity any effect, Op. 23, 29, and then to deny that the Tribe has any protected interest at all, Op. 33. That closed the door *Lewis* deliberately left open.

The panel's rule conflicts just as directly with this Court's cases. This Court has long held that a tribe's authority to govern is a legally protected interest under Rule 19, even when the tribe will not be bound by the judgment. In *Dawavendewa*, a job applicant challenged a Navajo hiring preference that the Navajo Nation's lease required a power district to follow. 276 F.3d at 1153. The applicant's "complaint asserted no causes of action against the Nation or tribal officials." *Id.* at 1154. This Court nonetheless deemed the Nation a required party because the suit implicated its "multiple economic and sovereign interests," including its "sovereign capacity ... to govern the Navajo reservation." *Id.* at 1157. In *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, the plaintiffs sued federal officials, not the Quinault Nation, but sought "a complete rejection of the Quinault Nation's current status as the exclusive governing authority of the reservation." 928 F.2d 1496, 1498 (9th Cir. 1991). The Nation, this Court held, "undoubtedly ha[d] a legal interest in the litigation." *Id.* And in *Shermoen*, this Court concluded tribes were required parties to a challenge to the statute partitioning their reservation, recognizing their "right not to have [their] legal duties

judicially determined without consent." 982 F.2d at 1317 (quotation marks omitted).

The panel purported to distinguish this Court's precedent as involving suits that would "vacate, invalidate, or otherwise alter [tribal] property interests." Op. 31 (quotation marks omitted). It described *Dawavendewa* as a case about the Nation's "contractual interests." Op. 32. But it did not mention *Dawavendewa*'s sovereign-governance holding, and it completely omitted *Chehalis* and *Shermoen*. The panel also claimed this case is different because Appellant has not sought "an injunction that would overrule the Tribe's termination decision." Op. 32. But in *Dawavendewa*, *Chehalis*, and *Shermoen* alike, the tribe was a required party even though the judgment would bind only others. That is true, by definition, of every party Rule 19 protects. *See Peabody*, 400 F.3d at 783. Those decisions asked what the suit would adjudicate, and they protected tribes' governing authority and legal duties, not merely their assets.

This Court's precedent looks to what a suit will do to a tribe's sovereign interests. The panel's rule considers only whom the plaintiff has sued for money. Rehearing is needed to secure and maintain

uniformity of this Court's decisions and to restore the approach its precedent required.

## III. This Case Is Exceptionally Important.

This Circuit is home to nearly 75% of all federally recognized tribes. Every one governs through officers and employees, and the panel's decision will set the terms on which those officials may be sued in state and federal court for performing tribal governance functions. Their immunity is now defined by federal common law for federal claims and by the law of whichever of nine States supplies a state claim. The one sovereign with no say is the tribe whose internal affairs are at stake.

The practical consequences will be felt at once. Tribes have built their governments around *Davis* for nearly six decades. But under the panel's decision, tribal officials like police chiefs, housing and health directors, and general counsel carrying out tribal directives will be exposed to personal damages suits governed by rules the tribe had no hand in making. Many tribes lack the resources to indemnify their officials. *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 813 (2014) (Sotomayor, J., concurring). The Washoe Tribe told the panel what follows: without the assurance Title 33 provides, tribes "will face

significant challenges in attracting and retaining qualified law enforcement personnel, undermining both public safety and [a] Tribe's ability to govern its own affairs." Washoe Amicus Br. 6.

The split with the Tenth Circuit compounds the problem. Several tribes straddle the line between the Tenth Circuit and this one, including the Navajo Nation, the Pueblo of Zuni, and the Confederated Tribes of the Goshute Reservation. For these tribes, the same official making the same decision under the same tribal law may invoke absolute immunity against federal claims in New Mexico or Utah, but not in Arizona or Nevada. A plaintiff can often lay venue on either side—especially in cases against a tribe's highest officials whose decisions are implemented reservation wide. *See* 28 U.S.C. § 1391(b). So the plaintiff, not the tribe, will decide which rule governs. An immunity whose availability turns on the plaintiff's choice of forum provides little of the protection immunity exists to provide. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The panel's Rule 19 holding makes matters worse still. Under the panel's rule, a plaintiff can litigate the meaning of a tribe's laws and the propriety of its governmental actions in state or federal court without the tribe present, simply by suing its officers for damages. Together with the

immunity holdings, the decision leaves a tribe with no way to protect its governance interests when its officials are sued in state or federal court for governmental acts. Its law cannot confer personal immunity, its sovereign immunity is not implicated, and it is not a required party. *Lewis* decided only the second of those three questions. The panel extended it to all three.

These issues will recur, and they will recur here more than anywhere. The en banc Court should resolve them before the panel's decision becomes the governing rule for the vast majority of tribes in this country.

## CONCLUSION

The Court should grant rehearing en banc.

Dated: October 26, 2026

Respectfully submitted,

*s/ Leonard R. Powell*

Leonard R. Powell
Morgan E. Saunders
NATIVE AMERICAN
RIGHTS FUND
950 F Street NW, Suite 1050
Washington, DC 20004
(202) 785-4166
powell@narf.org

Sydney Tarzwell
NATIVE AMERICAN
RIGHTS FUND
420 L Street, Suite 310
Anchorage, AK 99501
(907) 276-0680

*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on October 26, 2026. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/ Leonard R. Powell*
Leonard R. Powell

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

*Instructions for this form: https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 25-3136

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,137 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Leonard R. Powell **Date** 10/26/26
*(use "s/[typed name]" to sign electronically-filed documents)*

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MICHAEL ERWINE,

*Plaintiff - Appellant*,

v.

ZACHARY WESTBROOK; JOHN LEONARD; MICHEL HALL; GENE M. BURKE,

*Defendants - Appellees*,

and

UNITED STATES OF AMERICA, COUNTY OF CHURCHILL, BENJAMIN TROTTER,

*Defendants*.

No. 25-3136

D.C. No. 3:24-cv-00045-MMD-CSD

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted March 11, 2026
Las Vegas, Nevada

Filed September 11, 2026

Before: Mark J. Bennett and Gabriel P. Sanchez, Circuit Judges, and John W. Holcomb, District Judge.*

Opinion by Judge Bennett

## SUMMARY**


### Tribal Immunity / Required Party

The panel reversed the district court's dismissal of an action brought by Michael Erwine, a former police officer for the Washoe Tribe of Nevada and California, alleging federal civil rights claims and a Nevada tort claim against several of his superior officers and the Tribe's general counsel after Erwine was terminated from his position.

The district court concluded that the individual officers were entitled to absolute personal immunity, and, alternatively, that the Tribe was a required party under Fed. R. Civ. P. 19 which could not be joined in the action on account of its sovereign immunity.

The panel held that tribal sovereign immunity did not bar this suit. Erwine does not seek money damages from the tribal treasury, but rather from the tribal defendants


* The Honorable John W. Holcomb, United States District Judge for the Central District of California, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

personally. Because any judgment will not operate against the Tribe, the Tribe was not the real party in interest, and sovereign immunity did not shield the Tribal Officers from Erwine's claims.

The panel further held that the individual officers did not enjoy absolute immunity. A functional approach governs when a tribal employee raises absolute immunity as a defense in an individual-capacity action arising under federal law. The Tribal Officers failed to meet their burden of showing absolute immunity was justified for the function in question, and the district court erred in dismissing Erwine's federal claims on absolute immunity grounds. Turning to Erwine's Nevada tort claim for intentional interference with contractual relations against the Tribe's general counsel, the panel concluded that a tribe's conferral of immunity did not, by its own force, entitle an officer to absolute immunity in an individual-capacity suit arising under Nevada state law.

The panel also held that the Tribe was not a required party under Rule 19. Rule 19 sets forth a three-step inquiry, and the parties only dispute the first step of the inquiry: whether the Tribe is a required party. The panel held that because the Tribe did not have a legally protected interest in the outcome of the litigation that might be impaired in its absence, the district court erred in determining that the Tribe was a required party under Rule 19. Having determined that the Tribe was not a required party, the panel did not proceed to the remaining steps of the Rule 19 inquiry.

The panel left the Tribal Officers' qualified immunity defenses for the district court to consider in the first instance on remand.

## COUNSEL

Luke A. Busby (argued), Luke Andrew Busby Ltd., Reno, Nevada, for Plaintiff-Appellant.

Leonard R. Powell (argued) and Morgan E. Saunders, Native American Rights Fund, Washington, D.C.; Sydney A. Tarzwell, Native American Rights Fund, Anchorage, Alaska; Katherine F. Parks, Thorndal Armstrong PC, Reno, Nevada; Defendants-Appellees.

Joseph D. Nady, General Counsel, Washoe Tribe of Nevada and California, Gardnerville, Nevada, for Amicus Curiae The Washoe Tribe of Nevada and California.

---

## OPINION

BENNETT, Circuit Judge:

Michael Erwine served as a police officer for the Washoe Tribe of Nevada and California (the "Tribe"). After the Tribe terminated Erwine from that position, he sued several of his superior officers and the Tribe's general counsel, bringing federal civil rights claims and a Nevada tort claim. Erwine did not sue the Tribe.

The district court granted the defendants' motion to dismiss, concluding that the individual officers are entitled to absolute personal immunity and, alternatively, that the Tribe is a required party under Federal Rule of Civil Procedure 19 which cannot be joined in the action on account of its sovereign immunity. The district court declined to address the officers' contentions that tribal

sovereign immunity and qualified immunity also compelled dismissal.

All four grounds for affirmance are before us. We reject three and leave one for the district court to consider. We conclude that tribal sovereign immunity does not bar this suit, that the individual officers do not enjoy absolute immunity, and that the Tribe is not a required party under Rule 19. We leave the qualified immunity defenses for the district court to consider in the first instance. Thus, we reverse and remand.

**I**

Because this appeal arises from a motion to dismiss, we recite the facts as set forth in the plaintiff's complaint. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020). The Tribe is a federally recognized Indian tribe. *See Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs*, 89 Fed. Reg. 99899, 99902 (Dec. 11, 2024). Under the Indian Self-Determination and Education Assistance Act of 1975, 25 U.S.C. § 5301 *et seq.*, the Tribe receives funding for its police department from the federal government via a self-determination contract with the United States. Through its Law and Order Code, the Tribe extends immunity to its officers and employees against "claim[s]" seeking "to recover damages from . . . [them], while engaged in work assigned or controlled by the Tribe." Washoe Tribe of Nevada and California Law & Order Code §§ 33-20(2), 33-30-010 (2014).

Erwine began working as a police officer for the Tribe on October 18, 2019. The Tribe terminated his employment on March 4, 2022. That day, Erwine met with Chief of Police Zachary Westbrook, Deputy Chief of Police John

Leonard, Sergeant Michel Hall, and the Tribe's general counsel Gene Burke. Westbrook informed Erwine of the decision and said that the Tribal Chairman had signed off on it.

Erwine then filed an action in federal court, suing, as relevant here, Chief Westbrook, Deputy Chief Leonard, Sergeant Hall, and Burke (the "Tribal Officers"). Erwine seeks money damages from those defendants in their individual capacities, bringing claims for race discrimination under 42 U.S.C. § 1981, conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2), and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). Erwine alleges that the Tribal Officers treated him, a white employee, less favorably than similarly situated Native American employees, subjected him to a racially hostile work environment, conspired to deter him from testifying in court in connection with a lawsuit against his former employer, and conspired to deprive him of his due process rights in his employment and reputation.

Erwine also brings a *Bivens* claim for discrimination under *Davis v. Passman*, 442 U.S. 228 (1979), against Chief Westbrook, Deputy Chief Leonard, and Sergeant Hall (but not against Burke). Finally, Erwine brings a Nevada tort claim for intentional interference with contractual relations against Burke. Erwine did not sue the Tribe.

The Tribal Officers moved to dismiss, asserting absolute immunity, qualified immunity, tribal sovereign immunity, and failure to join the Tribe as a Rule 19 required party. The district court dismissed the claims against the Tribal Officers. It concluded that absolute immunity bars Erwine's claims and, alternatively, that the Tribe is a required party under Rule 19 but cannot be joined because of tribal

sovereign immunity. The district court did not address the Tribal Officers' arguments as to sovereign immunity or qualified immunity.

As to absolute immunity, the district court reasoned that the Tribe, through its Code, has "immunize[d] tribal officers and employees from demands to recover damages arising from work they do for the Tribe." Because the Tribal Officers' alleged misconduct "all fall[s] within the scope of their official duties," the district court determined that absolute immunity compelled dismissal.

As to Rule 19, the district court found that the Tribe is a required party because the proceedings implicate the Tribe's "sovereign interest in setting and enforcing its own employment policies." In the district court's view, evaluating Erwine's claims would require a federal court to undertake a "detailed review of the Washoe Tribe's policies as applied to the facts of Erwine's termination," which "would impinge on the Washoe Tribe's ability to govern itself." Based on its ruling that the Tribe cannot be joined because of tribal sovereign immunity, the district court exercised its discretion to dismiss the claims against the Tribal Officers. *See Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022).

The district court then granted, and the clerk entered, judgment for the Tribal Officers pursuant to Rule 54(b). Erwine now appeals.

## II

Suits against tribal officials and employees can implicate two types of immunity defenses: sovereign immunity and personal immunity. The Tribal Officers contend that each shields them from Erwine's claims.

### A

"Indian tribes," the Supreme Court has explained, "exercise inherent sovereign authority over their members and territories." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991). "[U]nless and 'until Congress acts, the tribes retain' their historic sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978), *superseded by statute on other grounds as recognized in United States v. Lara*, 541 U.S. 193, 207 (2004)). Among the retained aspects of tribal sovereignty is "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n*, 498 U.S. at 509.

"[W]hen a defendant timely and successfully invokes tribal sovereign immunity, we lack subject matter jurisdiction." *Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 908 (9th Cir. 2021). And "[b]ecause we may not issue a 'judgment on the merits' and assume our 'substantive law-declaring power' before first confirming we have jurisdiction, we address tribal sovereign immunity at the outset," *id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 433 (2007)), even though the district court declined to do so.

### B

To evaluate an assertion of tribal sovereign immunity, we apply the framework clarified by the Supreme Court in *Lewis v. Clarke*, 581 U.S. 155 (2017). That case arose when a tribal employee, in the course and scope of his tribal

employment, rear-ended another vehicle while driving casino patrons home from a tribal casino. *See id.* at 159–60. The owners of the other vehicle brought a negligence claim against the tribal employee in his individual capacity. *See id.* at 157, 160. Invoking tribal sovereign immunity, the employee moved to dismiss for lack of subject matter jurisdiction. *See id.* at 160. The Supreme Court held that tribal sovereign immunity did not bar the negligence claim. *See id.* at 167–68.

"The protection offered by tribal sovereign immunity," the Court explained, "is no broader than the protection offered by state or federal sovereign immunity." *Id.* at 164. In those contexts, courts "look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Id.* at 161–62. To assess whether the sovereign is the real party in interest, a court must determine "whether the remedy sought is truly against the sovereign." *Id.* at 162. And the answer to that question rests on "[t]he distinction between individual- and official-capacity suits." *Id.*

"In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation." *Id.* (citations omitted). "Because the relief requested effectively runs against the sovereign, the sovereign is the real party in interest, and sovereign immunity may be an available defense." *Acres Bonusing*, 17 F.4th at 909.

But in suits against officials in their personal capacities, the plaintiff "seek[s] to impose *individual* liability upon a

government officer for actions taken under color of . . . law." *Lewis*, 581 U.S. at 162 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "'[O]fficers sued in their personal capacity come to court as individuals,' and the real party in interest is the individual, not the sovereign." *Id.* at 162–63 (alteration in original) (quoting *Hafer*, 502 U.S. at 27). Thus, "sovereign immunity 'does not erect a barrier against suits to impose individual and personal liability.'" *Id.* at 163 (quoting *Hafer*, 502 U.S. at 30–31).

Against this backdrop, the Supreme Court concluded that "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated." *Id.* at 158. "That an employee was acting within the scope of his employment at the time the tort was committed," the Court underscored, "is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *Id.*

Applying those principles to the case before it—a negligence action arising from a tort committed by a tribal employee acting within the scope of his employment—*Lewis* observed that the suit sought to recover for the employee's "personal actions." *Id.* at 163. Because the plaintiff did not sue the employee in his official capacity and "the judgment w[ould] not operate against the [t]ribe," the Supreme Court determined that the tribe was not the real party in interest. *See id.* at 163–64. Sovereign immunity thus did not bar the suit. *See id.*

Our decision in *Acres Bonusing* followed *Lewis*. The plaintiffs sought damages against tribal employees, including a tribal court judge, his law clerks, and the clerk of the tribal court, in their individual capacities. *See Acres*

*Bonusing*, 17 F.4th at 905. In asserting sovereign immunity, the tribal employees tried to distinguish *Lewis* by arguing that the Court's holding extended only to "garden variety torts with no relationship to tribal governance and administration." *Id.* at 911. The allegedly tortious conduct in *Acres Bonusing*, by contrast, occurred in tribal court. *See id.* Because "tribal courts are part of [a] [t]ribe's inherently sovereign functions," the tribal employees urged that "adjudicating th[e] dispute would require the court to interfere with the tribe's internal governance." *Id.* So, the tribal employees argued, the tribe was indeed the real party in interest, and the suit implicated its sovereign immunity. *Id.*

We rejected that view. "[T]he tribal sovereign immunity analysis," we explained, does not "turn on a freestanding assessment of whether the suit related to tribal governance in some way." *Id.* "[N]either *Lewis* nor our prior cases evaluated the degree to which the suits could involve consideration of issues that relate to tribal governance or administration." *Id.* at 912. Indeed, "[s]uch an analysis would likely prove difficult because any suit against a tribal employee for conduct in the course of her official duties almost inevitably has some valence to tribal governance." *Id.* "And if that were the test, we would seemingly end up applying tribal sovereign immunity whenever a tribal employee was acting within the scope of her employment—which is precisely what the Supreme Court in *Lewis* said not to do." *Id.*

Instead, we clarified that "[t]he question is whether 'any *remedy* will *operate* . . . against the sovereign.'" *Id.* at 911 (omission in original) (quoting *Pistor v. Garcia*, 791 F.3d 1104, 1113 (9th Cir. 2015)). Or, as the Supreme Court put it, "[t]he critical inquiry is who may be legally bound by the

court's adverse judgment." *Lewis*, 581 U.S. at 165. Thus, when a plaintiff's "suit for damages against tribal employees and agents 'will not require action by the sovereign or disturb the sovereign's property,' and any 'judgment will not operate against the [t]ribe,' tribal sovereign immunity does not apply." *Acres Bonusing*, 17 F.4th at 913 (quoting *Lewis*, 581 U.S. at 163).

Because the plaintiffs in *Acres Bonusing* sought money damages against the defendants in their individual capacities, any relief ordered would not have required the tribe "to do or pay anything." *Id.* at 910. So we concluded that "any 'judgment w[ould] not operate against the [t]ribe,' [the tribe] [wa]s not the real party in interest, and tribal sovereign immunity d[id] not apply." *Id.* (quoting *Lewis*, 581 U.S. at 163).

The same outcome followed in *Welsh v. Loudbear*, 178 F.4th 484 (9th Cir. 2026). Plaintiffs there sued tribal employees in their individual capacities and "s[ought] damages resulting from alleged criminal acts carried out by individuals, not [the tribe]." *Id.* at 489. "After *Lewis*," we explained, "the relevant inquiry when determining whether tribal officials enjoy sovereign immunity is 'whether the remedy sought is truly against the sovereign.'" *Id.* (quoting *Lewis*, 581 U.S. at 162). Because the complaint sought "recovery only from the tribal [employees] and d[id] not attempt to impose liability on [the tribe]," only the individual employees could be "ordered to pay the judgment"—not the tribe itself. *Id.* Thus, we determined that the tribal employees were not entitled to invoke the tribe's sovereign immunity. *See id.* at 489–90.

## C

Applying the remedy-focused test expounded by *Lewis*, *Acres Bonusing*, and *Welsh*, we conclude that tribal sovereign immunity does not bar this suit. Like the plaintiffs in those cases, Erwine seeks "money damages not from the tribal treasury but from the tribal defendants personally." *See Acres Bonusing*, 17 F.4th. at 912 (quoting *Pistor*, 791 F.3d at 1113). Because any "judgment will not operate against the Tribe," *Lewis*, 581 U.S. at 163, the Tribe is not the real party in interest, and sovereign immunity does not shield the Tribal Officers from Erwine's claims.

The Tribal Officers resist this conclusion, arguing that the litigation will "interfere with [the] [T]ribe's internal governance," because Erwine "seeks to hold [the] Tribal [Officers] liable for tribal employment decisions central to the operation of the Tribe's police department and the administration of its grievance process." But our precedent forecloses the Tribal Officers' contention. We do not evaluate the degree to which a suit relates to tribal governance. *See Acres Bonusing*, 17 F.4th at 911–13. It is instead "the 'remedy sought' [that] governs the tribal sovereign immunity analysis." *Id.* at 912 (quoting *Lewis*, 581 U.S. at 162). And under this "remedy-focused analysis," *id.* at 911 (quoting *Maxwell v. County of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013)), the Tribal Officers are not entitled to tribal sovereign immunity.

## III

Even when tribal sovereign immunity does not bar a suit, tribal officials sued in their individual capacities may still invoke "*personal* immunity defenses" such as absolute immunity or qualified immunity. *See Lewis*, 581 U.S. at 163; *Acres Bonusing*, 17 F.4th at 915. The district court

determined that absolute immunity bars each of Erwine's claims against the Tribal Officers. We review de novo questions of personal immunity, *see Acres Bonusing*, 17 F.4th at 907, and we conclude that the Tribal Officers are not protected by absolute immunity.

**A**

"Absolute immunity is an extraordinary attribute. Those who act while clad in its armor cannot be held liable for damages under any circumstances, even if they violate clearly established federal rights, and even if they do so intentionally or maliciously." *Brooks v. Clark County*, 828 F.3d 910, 915–16 (9th Cir. 2016). As a result, the Supreme Court has been "'quite sparing' in [its] recognition of absolute immunity, and ha[s] refused to extend it any 'further than its justification would warrant.'" *Burns v. Reed*, 500 U.S. 478, 487 (1991) (first quoting *Forrester v. White*, 484 U.S. 219, 224 (1988); and then quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982)). Thus, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* at 486–87. And "the official seeking absolute immunity bears the burden of showing that such immunity is justified." *Id.* at 486.

"Tribal officials, like federal and state officials, can invoke personal immunity defenses." *Acres Bonusing*, 17 F.4th at 915. In *Lewis*, the Supreme Court "described the availability of personal immunity defenses in the context of discussing generally applicable principles of individual and official capacity suits." *Id.* And the Court also explained that "[t]here is no reason to depart from these general rules in the context of tribal sovereign immunity." *Id.* (alteration in original) (quoting *Lewis*, 581 U.S. at 163). "Those

'general rules' thus include[] . . . common law personal immunity defenses." *Id.*

"In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity," the Supreme Court has prescribed a "functional approach." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Burns*, 500 U.S. at 486). "We consult the common law to identify those governmental functions that were historically viewed as so important and vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed to ensure that they are performed 'with independence and without fear of consequences.'" *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). The Court has identified several functions as protected by absolute immunity from civil liability, including "actions taken by legislators within the legitimate scope of legislative authority, actions taken by judges within the legitimate scope of judicial authority, actions taken by prosecutors in their role as advocates, and the giving of testimony by witnesses at trial." *Id.* at 363 (citations omitted).

In *Acres Bonusing*, we evaluated the absolute immunity defense raised by tribal officials under this functional approach. *See* 17 F.4th at 915–16. We determined that several officials—the tribal court judge, his law clerks, and the clerk of the tribal court—performed judicial or quasi-judicial functions. *See id.* So we affirmed the dismissal of those defendants based on absolute immunity. *See id.* at 916–17.

**B**

The Tribal Officers contend that the functional approach does not apply here. Though they concede that federal and state officials enjoy absolute immunity only when their "special functions require a full exemption from liability," they claim that "tribal immunities are broader than federal and state immunities in many areas." One such area, the Tribal Officers contend, is that tribes may "bestow" absolute immunity on tribal officials for acts taken within areas of tribal control.

The Tribal Officers' argument relies mainly on *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968). In *Davis*, a former tribal employee brought a defamation suit against his former boss, the general counsel of the Navajo Tribe. *See id.* at 83–84. The plaintiff alleged that the general counsel had "reported to the Tribal Council his views as to the competence and integrity of [the plaintiff]" and that, because of those statements, the plaintiff "was discharged from office and suffered loss of reputation." *Id.* at 84–85. The district court granted summary judgment for the general counsel, finding him immune from liability. *See id.* at 84. We affirmed. *See id.* at 86.

*Davis* began by determining "[w]hether the Navajo Tribe enjoys sufficient independent status and control over its own laws and internal relationships to be able to accord absolute privilege to its officers within the areas of tribal control." *Id.* at 84. Because "tribal sovereignty has been found a sufficient basis for extending to Indian tribes sovereign immunity from suit," we concluded that the tribe could bestow immunity on its officers. *Id.*

We then considered whether the Navajo Tribe had, in fact, bestowed immunity. *See id.* We found that it had.

Though the Navajo Tribe's Tribal Code did not expressly bestow immunity on tribal officers, the Code suggested that the immunity question should "be guided by federal or appropriate state law." *Id.* (citing Navajo Tribal Code, tit. 7, ch. 3, § 34(C)). And both federal law and Arizona law, we determined, recognized absolute executive immunity for defamation. *See id.* at 84–85.

From there, we evaluated whether the general counsel could claim absolute executive immunity. That question turned on "whether [the position] encompasses public duties, official in character." *Id.* at 85. The functions of the general counsel included providing "advice with respect to the administration of the public affairs of the [t]ribe." *Id.* And looking to the plaintiff's complaint, the alleged defamation had "resulted from the manner in which [the general counsel] reported to the Tribal Council his views as to the competence and integrity of [the plaintiff], a subordinate employee." *Id.* Those duties, we determined, "are precisely the duties which were regarded as requiring the protection of privilege"—"the elimination of the 'constant dread of retaliation' for injury committed in the course of duty and the allowance of 'unflinching discharge of (official) duties' free from the threat of suit and charge of malice." *Id.* (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)).

We finally considered whether Arizona courts would honor this immunity "bestowed by a foreign sovereign in a suit brought by an Arizona citizen." *Id.* Because "the state, in the public interest, ha[d] seen fit to formulate [the immunity]" so as to protect its own officers, we reasoned that it would be "inconsistent for [Arizona] to cherish the rule for itself while denying its benefits to a sovereign which does not possess the economic power to provide a just

alternative." *Id.* at 84–85. On that basis, we predicted that "Arizona state courts would accord comity to an Indian tribe geographically located within the state boundaries." *Id.* at 86. Absolute immunity thus barred the assistant's claim against the general counsel. *See id.* at 83, 86.

The Tribal Officers contend that *Davis* resolves this case. Their argument proceeds in several steps. At the first step, they draw parallels between *Davis* and this case. Like the assistant in *Davis*, Erwine is a terminated tribal employee seeking to sue his former supervisors. Like the Navajo Tribe, the Washoe Tribe is a sovereign that can bestow immunity upon its officials. And based on the allegations in the complaint, the Tribal Officers also analogize that Erwine, like the assistant, seeks to recover damages in connection with work assigned or controlled by the Tribe.

That much is true. Erwine's claims turn on allegations that the Tribal Officers supervised, reported on, and ultimately terminated him from the tribal police force. And Erwine alleges that the Tribal Officers acted as officers or employees of the Tribe "at the times relevant to [the] complaint." Indeed, the Tribe's amicus brief confirms that "the actions described [in the complaint] were taken in the performance of the [Tribal Officers'] official duties" and "fall within the scope of work assigned or controlled by the Tribe."

At the next step, the Tribal Officers stress one key difference between *Davis* and this case. Unlike the Navajo Tribal Code, the Washoe Tribe's Code expressly bestows absolute immunity on its officers. Title 33 of the Washoe Tribe's Law & Order Code provides that "[t]he sovereign immunity of the Tribe shall include but not be limited to any lawsuit, action, claim, controversy or process, in any state,

federal, or Tribal court, forum, or tribunal, unless such immunity is clearly, explicitly and unequivocally waived." Washoe Tribe of Nevada and California Law & Order Code § 33-30-010 (2014). And the Code defines "[c]laim" as "any written demand to recover damages from the Tribe or Tribal Entity, or an officer or employee of the Tribe or Tribal Entity, while engaged in work assigned or controlled by the Tribe or Tribal Entity." *Id.* § 33-20(2). Thus, as the Tribal Officers see it, whether they can claim the immunity conferred by tribal law is readily resolved in their favor because *Davis* commands that result.

The district court agreed. Applying *Davis*, it explained that "Title 33 of the Washoe Tribe's Law and Order Code bestowed absolute immunity on [the Tribal Officers] for their alleged actions described in the [complaint]—disciplining and ultimately firing Erwine," and these actions "fall[] within the scope of their official duties." The district court thus held that absolute immunity bars Erwine's claims. We disagree.

**C**

*Davis*'s conclusion that the tribal official enjoyed absolute immunity rested on our finding that Arizona courts would recognize the Navajo Tribe's conferral of absolute immunity out of comity. The Tribal Officers would have us extend *Davis*. On their reading, *Davis* empowers a tribe to confer absolute immunity on its officials *whenever* they act within areas of tribal control—including to bar liability in suits arising under federal and state law, even when the law under which the cause of action arises would *not* recognize that immunity.

We decline to extend *Davis* in this manner. Instead, we conclude that for an immunity conferred by a tribe on its

officials to apply, the specific immunity conferred by tribal law must be consistent with the law under which the cause of action arises. Thus, our analysis of Erwine's federal civil rights claims is somewhat different than our analysis of his Nevada tort claim. But we reject the Tribal Officers' assertion of absolute immunity as to both.

**1**

We begin with Erwine's federal civil rights claims against the Tribal Officers. Recall that Erwine brings claims under 42 U.S.C. §§ 1981, 1985(2), and 1985(3) and brings a *Bivens* claim for discrimination under *Davis v. Passman*.

"The elements of, and the defenses to, a federal cause of action," the Supreme Court has emphasized, "are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990); *see also Chesapeake & Ohio Ry. Co. v. Kuhn*, 284 U.S. 44, 46–47 (1931). So determining whether an immunity defense applies here is "a question of federal law." *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) (quoting *Hampton v. City of Chicago*, 484 F.2d 602, 607 (7th Cir. 1973)).

The Supreme Court has not resolved whether, in an individual-capacity action arising under federal law, an Indian tribe may confer on its officials absolute immunity from damages liability—beyond what federal law provides. And the parties have identified no case, and we have found none, in which a federal court of appeals concluded that a tribe could do so.

*Davis* also does not guide our inquiry. In *Davis*, we considered a tribal official's immunity from only a state tort claim; the plaintiff's suit had no federal cause of action. *See* 398 F.2d at 83–84. And our holding did not purport to rest on the basis that federal common law entitled the tribal

official to immunity. To the contrary, our bottom-line conclusion relied on a "prediction" about whether the Navajo Tribe's conferral of absolute immunity on its officials would apply in Arizona state court. *See id.* at 84–86. As the Tribal Officers concede, *Davis* answered this question "on state law grounds" by making a "prediction . . . that an Arizona court, as a matter of comity, would likely choose to honor the immunity the Navajo Nation had bestowed." But the Tribal Officers do not contend that federal law should merely recognize the Tribe's conferral of absolute immunity out of comity. They instead claim that such a conferral *entitles* them to absolute immunity by its own force. Because *Davis* did not address whether a tribe's immunity statute controls when a plaintiff brings a federal cause of action, this precedent does not, as the Tribal Officers urge, "resolve this case."

That returns us to the proper test for evaluating an absolute immunity defense to a federal cause of action. "We are 'bound not only by the holdings of [the Supreme Court's] decisions but also by their mode of analysis.'" *United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009) (alteration in original) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). When a defendant claims absolute immunity and no "express constitutional or statutory enactment" provides otherwise, *see Forrester*, 484 U.S. at 224, the Supreme Court has instructed us to take a "functional approach" in which we "conduct 'a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it,'" *see Rehberg*, 566 U.S. at 363 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421 (1976)). That mode of analysis governs the inquiry for each of Erwine's federal claims. *See Acres Bonusing*, 17 F.4th at 906, 915–16 (finding tribal official

defendants were entitled to absolute immunity because they performed judicial or quasi-judicial functions, when the suit included a federal cause of action); *Fry v. Melaragno*, 939 F.2d 832, 834–36, 835 n.6 (9th Cir. 1991) (employing the functional approach in a *Bivens* action); *see also Savage v. Maryland*, 896 F.3d 260, 267–70 (4th Cir. 2018) (applying the functional approach to claims brought under 42 U.S.C. §§ 1981 and 1985); *Runs After v. United States*, 766 F.2d 347, 354–55 (8th Cir. 1985) (employing the functional approach in an action against tribal officials under 42 U.S.C. § 1985).

Applying the functional approach, the Tribal Officers are not entitled to absolute immunity. The Tribal Officers recognize that Erwine's claims challenge their conduct involving "personnel management actions, including supervising [Erwine], investigating his misconduct, and terminating his employment." But the Tribal Officers do not develop, or support with authority, any argument that courts historically recognized these functions as absolutely immune from civil liability at common law. Nor could they. The Supreme Court has explained that "personnel decisions" do not give rise to absolute immunity because officials act "in an administrative capacity" when they demote or discharge an employee. *See Forrester*, 484 U.S. at 229. Thus, under the functional approach, absolute immunity does not bar Erwine's federal claims against the Tribal Officers in their individual capacities.

The Tribal Officers urge an altogether different analysis. As noted, they contend that the functional approach does not govern here. Their argument relies on *Davis*, and specifically on our observation there that tribes as "sovereign[s]" can "bestow" absolute immunity on their officials. 398 F.2d at 84. Because Congress has not

diminished tribes' sovereign ability to confer immunity, the Tribal Officers press that tribes retain authority to bestow absolute immunity on their officials from *any and all claims* implicating areas of tribal control. It is true that "unless and 'until Congress acts, the tribes retain' their historic sovereign authority." *Bay Mills*, 572 U.S. at 788 (quoting *Wheeler*, 435 U.S. at 323). But tribal sovereignty reflects "the power of regulating their internal and social relations," *Santa Clara Pueblo*, 436 U.S. at 55 (quoting *United States v. Kagama*, 118 U.S. 375, 381–82 (1886)), including the "power to make their own substantive law in internal matters" and "to enforce that law in their own forums," *id.* at 55–56. Retained tribal sovereignty does not include the power to immunize tribal employees from liability for violations of *federal law*—whether in connection with suits expressly authorized by Congress or a *Bivens* cause of action implied under the Constitution.

Our conclusion on this point is reinforced by the Supreme Court's decision in *Lewis*, which teaches that a "tribe's sovereign immunity is not implicated" in suits brought against tribal employees in their individual capacities. *See* 581 U.S. at 158. Because a tribe's retained sovereignty does not shield tribal employees from liability in individual-capacity actions, we fail to see how a tribe could nevertheless invoke its sovereignty to enact a statute that accomplishes the same end. Accepting the Tribal Officers' position would undermine *Lewis*'s holding by allowing a tribe to effect indirectly through tribal law—by bestowing absolute immunity on all its officials—what the Court has instructed its sovereign immunity does not afford. And the Tribal Officers provide no authority to support the proposition that a tribe may unilaterally create a defense to a federal cause of action for tribal officers.

Our conclusion is also in harmony with the rule that States cannot confer immunity on their employees so as to shield them from liability in federal civil rights actions. *See Doe v. Dynamic Physical Therapy, LLC*, 607 U.S. 11, 11 (2025) (per curiam) ("[A] State has no power to confer immunity from federal causes of action."). "Congress," the Supreme Court has explained, "surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Howlett*, 496 U.S. at 378 (quoting *Wilson v. Garcia*, 471 U.S. 261, 269 (1985), *superseded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 378–80 (2004)). So "a state law that immunizes government conduct otherwise subject to suit under [a federal statute] is preempted . . . because the application of the state immunity law would thwart the congressional remedy." *Felder v. Casey*, 487 U.S. 131, 139 (1988); *see also Martinez*, 444 U.S. at 284 n.8. Tribes are, of course, differently situated than States in our constitutional order. But the Tribal Officers have not shown that a tribe's retained sovereignty empowers the tribe to do something that the Supreme Court has said a State cannot: immunize conduct wrongful under federal law.

The Tribal Officers also assert that "the balance of policy considerations weighs definitively in favor of tribal absolute immunity." But the Supreme Court "ha[s] made it clear that it is not our role 'to make a freewheeling policy choice,' and that we do not have a license to create immunities based solely on our view of sound policy." *Rehberg*, 566 U.S. at 363 (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). "Instead, we conduct 'a considered inquiry into the immunity historically accorded the relevant official at

common law and the interests behind it.'" *Id.* (quoting *Imbler*, 424 U.S. at 421). Because the Tribal Officers have not shown that courts recognized personnel management functions as absolutely immune at common law, absolute immunity does not apply. *See Miller*, 335 F.3d at 897 ("[B]eyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists.").

In sum, we conclude that the functional approach governs when a tribal employee raises absolute immunity as a defense in an individual-capacity action arising under federal law. The Tribal Officers failed to meet their "burden of showing that [absolute] immunity is justified for the function in question." *See Burns*, 500 U.S. at 486. Thus, the district court erred by dismissing Erwine's federal claims on absolute immunity grounds.

**2**

We turn next to the Nevada tort claim. Erwine brings a claim for intentional interference with contractual relations against Burke, the Tribe's general counsel. This claim, like the one in *Davis*, does concern state tort liability regarding acts committed in the scope of a tribal official's employment. But again, *Davis* relied on principles of comity to "predict[]" that Arizona courts would recognize the tribal official's assertion of immunity, *see* 398 F.2d at 85–86; we did not conclude that a state court *must* recognize personal immunity defenses conferred by a tribe.

Perhaps Nevada courts would afford comity and give effect to the Tribe's conferral of absolute immunity on its officials via the Tribe's Law and Order Code. But the Tribal Officers have not advanced such an argument. And *Davis*'s conclusion that *Arizona* courts would recognize the Navajo

Tribe's conferral of absolute immunity, on the facts presented there, does not answer the question of what *Nevada* courts would do.

In *Acres Bonusing*, our evaluation of the tribal officials' absolute immunity defense did not analyze separately the plaintiffs' federal claim and state tort claims. *See* 17 F.4th at 905–06, 914–16. Relying on the functional approach, we determined that certain tribal officials were entitled to absolute immunity and, from there, concluded that the district court properly dismissed all claims against them. *See id.* When a plaintiff brings "*state* claims," however, an officer typically is entitled "only to *state* [law] immunities," and federal common law does not apply. *See Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009); *Gibson v. City of Portland*, 165 F.4th 1265, 1285 n.7 (9th Cir. 2026) (looking to state law to determine whether the defendants were entitled to absolute immunity from state law claims); *Martinez*, 444 U.S. at 282–83 (upholding a state immunity statute as "applied to defeat a tort claim arising under state law" because a "State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational"). Thus, we must consider whether Burke is entitled to absolute immunity under Nevada law.

The Supreme Court of Nevada has "employ[ed] the functional approach" to determine whether officials enjoy absolute immunity under state law. *Harrison v. Roitman*, 362 P.3d 1138, 1140–43 (Nev. 2015) (en banc); *see Nevada v. Second Jud. Dist. Ct. ex rel. County of Washoe*, 55 P.3d 420, 423–27 (Nev. 2002) (per curiam). Under Nevada law, "[t]he functional approach is made up of three separate inquiries": (1) "whether the [person seeking immunity]

performed functions sufficiently comparable to those of [persons] who have traditionally been afforded absolute immunity at common law"; (2) "whether the likelihood of harassment or intimidation by personal liability [is] sufficiently great to interfere with the [person's] performance of his or her duties"; and (3) "whether procedural safeguards exist in the system that would adequately protect against [illegitimate] conduct by the [person seeking immunity]." *Harrison*, 362 P.3d at 1140 (alterations in original) (quoting *Second Jud. Dist. Ct.*, 55 P.3d at 424–25). In applying the functional approach, the Supreme Court of Nevada has relied on cases from the Supreme Court of the United States. *See, e.g.*, *id.* at 1140–43; *Second Jud. Dist. Ct.*, 55 P.3d at 423–27.

At oral argument, counsel made clear that Burke does not claim any immunity under Nevada law. It is unclear, however, whether Burke has abandoned such a claim only for purposes of appeal. Burke did not raise in the district court, and the district court did not consider, whether state law immunities entitle Burke to absolute immunity.

"In general, an appellate court does not decide issues that the trial court did not decide." *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020). But there are exceptions to this rule, including "[w]hen 'proper resolution is beyond any doubt,' when 'injustice might otherwise result,' and when an issue is purely legal." *Id.* (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)). In the interest of judicial economy, we exercise our discretion to decide in the first instance whether Burke is entitled to absolute immunity under Nevada law. This is a purely legal question unaffected by further development of the factual record, and no party has asked us to certify it to the Supreme Court of

Nevada. Further, the Tribal Officials will not be prejudiced by our decision to reach this issue because they had an opportunity to brief it in their supplemental brief. *See Dream Palace v. County of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004).

Undertaking Nevada's three-part functional approach inquiry, we conclude Nevada courts would find that Burke is not absolutely immune for his acts relating to Erwine's termination. As discussed, Burke acted in an administrative capacity in terminating Erwine. So he did not perform functions sufficiently comparable to those recognized as absolutely immune at common law. *See Forrester*, 484 U.S. at 229 (concluding that a judge acted in an administrative capacity in discharging an employee and was not entitled to absolute immunity); *cf. Whitehead v. Nev. Comm'n On Jud. Discipline*, 906 P.2d 230, 250 (Nev. 1994) (explaining that only qualified immunity applies to "functions that are administrative or otherwise non-judicial in nature").

As to the second consideration, absolute immunity is "strong medicine, justified only when the danger of [officials' being] deflect[ed from the effective performance of their duties] is very great." *See Forrester*, 484 U.S. at 230 (alterations in original) (quoting *Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting)). We see no basis to conclude that the looming threat of liability would interfere with tribal officials' duties any more than it would with those of other public officials who fire subordinates. And the Supreme Court has recognized that qualified immunity is enough to protect officials for their employment decisions. *See id.*

Finally, on the facts as alleged, the remedies and safeguards other than civil liability are insufficient to hold

tribal officials accountable for misconduct in personnel decisions. While the Tribe had a grievance process in place, Erwine contends that Burke improperly "den[ied] him the opportunity to file a grievance and respond to the allegations surrounding his termination." So this factor likewise weighs against immunity.

We thus predict that the Supreme Court of Nevada would determine that Burke is not entitled to absolute immunity under Nevada law.

Having declined to invoke any state law immunities, Burke tells us that he instead relies on "tribal immunity, as a matter of federal law." But his assertion that the Tribe's *own* immunity protects Burke—a tribal employee sued in his individual capacity—from a state tort claim runs headlong into *Lewis*. *See* 581 U.S. at 158 ("[I]n a suit brought against a tribal employee in his individual capacity, . . . the tribe's sovereign immunity is not implicated.").

We conclude that a tribe's conferral of immunity does not, by its own force, entitle an officer to absolute immunity in an individual-capacity suit arising under Nevada state law. The district court erred in holding otherwise. Thus, Erwine's Nevada tort claim against Burke should not have been dismissed on absolute immunity grounds.

## IV

That brings us to the Tribal Officers' contention that the district court properly dismissed this suit because the Tribe is a required party under Federal Rule of Civil Procedure 19 that cannot be joined in the action on account of its sovereign immunity. "We review a district court's decision to dismiss a case for failure to join a required party under Rule 19 for abuse of discretion, and we review any legal questions

underlying that decision de novo." *Klamath Irrigation Dist.*, 48 F.4th at 943. Here too we disagree with the district court's analysis. We conclude that Erwine's claims against the Tribal Officers should proceed, and that Rule 19 does not stand in the way.

**A**

A party may move to dismiss a claim under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 sets forth a three-step inquiry.

"First, we determine whether the absent party is 'required' under Rule 19(a)." *Maverick Gaming LLC v. United States*, 123 F.4th 960, 972 (9th Cir. 2024). As relevant here, this step is satisfied when "the [t]ribe has a legally protected interest in the lawsuit that may be impaired or impeded in the [t]ribe's absence." *Id.*; *see* Fed. R. Civ. P. 19(a)(1)(B)(i).

"If the absent party is required, we then 'determine whether joinder of that party is feasible.'" *Id.* (quoting *Klamath Irrigation Dist.*, 48 F.4th at 943). "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citing Fed. R. Civ. P. 19(a)). If joinder is not feasible, we proceed to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

On appeal, the parties dispute only the first step of the inquiry: whether the Tribe is a required party. The district

court determined that joinder of the Tribe is required because Erwine's claims called for it "to evaluate the Washoe Tribe's employment policies at its police department and determine whether or not they have been violated." And, in the district court's view, this "detailed review of the Washoe Tribe's policies as applied to the facts of Erwine's termination . . . would impinge on the Washoe Tribe's ability to govern itself."

**B**

The applicable principles are settled. "To come within the bounds of Rule 19(a)(1)(B)(i), the interest of the absent party must be a legally protected interest and not merely some stake in the outcome of the litigation." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). The interest "must be 'more than a financial stake.'" *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 852 (9th Cir. 2019) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)). While "[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)," *Bakia v. Los Angeles County*, 687 F.2d 299, 301 (9th Cir. 1982) (per curiam), "we have emphasized the 'practical' and 'fact-specific' nature of the inquiry," *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008) (quoting *Makah*, 910 F.2d at 558).

Our case law recognizes that an Indian tribe is "a required party to an action that seeks to vacate, invalidate, or otherwise alter its property interests." *Welsh*, 178 F.4th at 490 (collecting cases). For example, when a plaintiff seeks injunctive relief that would impair a legally protected interest of the tribe, we have determined that the tribe is

indeed a required party. *See, e.g.*, *Jamul Action Comm.*, 974 F.3d at 990, 988, 996–98 (finding that the absent tribe had a protected interest when the plaintiff sought to enjoin construction on tribal land and also challenged the tribe's title in its land); *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155–57 (9th Cir. 2002) (finding that the suit threatened to impair the absent tribe's contractual interests when the plaintiff sought to enjoin use of hiring policy contained in contract to which the tribe was a signatory); *McClendon v. United States*, 885 F.2d 627, 629, 633 (9th Cir. 1989) (finding that the absent tribe was a required party to action seeking injunctive relief to enforce lease agreement signed by the tribe). So too when the relief sought would have "'retroactive effects' on rights already enjoyed by a tribe." *Jamul Action Comm.*, 974 F.3d at 997 (quoting *Diné Citizens*, 932 F.3d at 852–53); *see Diné Citizens*, 932 F.3d at 853 (finding a legally protected interest when relief would impair the absent tribe's existing lease, rights-of-way, and surface mining permits); *Klamath Irrigation Dist.*, 48 F.4th at 938 (finding that the declaratory relief sought would imperil the absent tribes' water and fishing rights).

This case is different from those in which we have found a tribe to be a required party. Erwine seeks money damages against the Tribal Officers in their individual capacities. But he does not challenge any tribal contract, policy, or sovereign act. He has not, for example, sought to enjoin certain provisions of the Tribe's self-determination contract with the United States or any policies of the Tribe or its police department. Nor has he asked for an injunction that would overrule the Tribe's termination decision and restore him to the police force. So a monetary judgment in his favor would not impair any legally protected interests of the Tribe

itself. *See Welsh*, 178 F.4th at 491 (finding that the tribe was not a required party because the plaintiffs "d[id] not seek to reinstate the[ir] lease" with the tribe).

The Tribal Officers disagree. Invoking the district court's reasoning, the Tribal Officers press that the "Tribe's sovereignty is implicated here" because Erwine "seeks to hold [them] liable for alleged acts they took as tribal officers and employees while directing the operations of the tribal police department, responding to complaints about [Erwine]'s behavior as a tribal police officer, and administering the Tribe's grievance process." But again, Erwine seeks relief against tribal employees only in their personal capacities. In this type of suit, a money judgment does not implicate the Tribe's interest in self-governance. *See Lewis*, 581 U.S. at 162–63 ("'[O]fficers sued in their personal capacity come to court as individuals,' and the real party in interest is the individual, not the sovereign." (alteration in original) (quoting *Hafer*, 502 U.S. at 27)). The Tribal Officers therefore have failed to demonstrate that the Tribe has a legally protected interest in the action.

While *Lewis* did not concern dismissal under Rule 12(b)(7), the Supreme Court's guidance that a tribe's own sovereignty "is not implicated" in suits brought against tribal employees in their individual capacities, *see* 581 U.S. at 158, is nevertheless instructive. Looking to that guidance and considering the scope of the relief sought here, we disagree with the district court and the Tribal Officers. We find that adjudicating Erwine's claims would not impinge on the Tribe's ability to govern itself.

Taking a different tack, the Tribal Officers contend that certain allegations in the complaint challenge conduct of the Tribe itself, not that of individual tribal officials. But given

the nature of the relief Erwine seeks and read in the context of his whole complaint, the language to which the Tribal Officers refer does not convert the Tribe into a required party to this litigation.

Because the Tribe does not have a legally protected interest in the outcome of the litigation that might be impaired in its absence, the district court erred in determining that the Tribe is a required party under Rule 19. Having determined that the Tribe is not a required party, we need not proceed to the remaining steps of the Rule 19 inquiry. The district court erred in dismissing Erwine's claims pursuant to Rule 12(b)(7).

**V**

The last ground urged for affirmance is qualified immunity. The district court did not reach the Tribal Officers' qualified immunity defenses. As noted, we generally "do[] not decide issues that the trial court did not decide." *Planned Parenthood*, 946 F.3d at 1110. And we have repeatedly declined to conduct the qualified immunity analysis in the first instance. *See, e.g.*, *Price v. Hawaii*, 939 F.2d 702, 707 (9th Cir. 1991) ("[I]mmunity is an issue that should first be addressed by the trial court."); *Hargis v. Foster*, 312 F.3d 404, 411 (9th Cir. 2002); *Grenning v. Miller-Stout*, 739 F.3d 1235, 1241 (9th Cir. 2014); *Fuqua v. Raak*, 120 F.4th 1346, 1357 n.7 (9th Cir. 2024).

We follow that course here, leaving the district court to consider the Tribal Officers' assertion of qualified immunity on remand.

**VI**

Because tribal sovereign immunity does not bar this suit, the Tribal Officers do not enjoy absolute personal immunity,

and the Tribe is not a required party under Rule 19, the district court erred by dismissing Erwine's claims. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**