**No. 25-3136**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

MICHAEL ERWINE,
*Plaintiff – Appellant,*

v.

ZACHARY WESTBROOK, *et al.*,
*Defendants – Appellees.*

On Appeal from the United States District Court for the District of Nevada
Case No. 3:24-cv-00045-MMD-CSD

---

# BRIEF OF AMICI CURIAE WASHOE TRIBE, ET AL. IN SUPPORT OF APPELLEES' PETITION FOR REHEARING EN BANC

---

Timothy C. Seward
HOBBS, STRAUS, DEAN & WALKER, LLP
1903 21st Street, 3rd Floor
Sacramento, CA 95811
Telephone: (916) 442-9444

Geoffrey D. Strommer
HOBBS, STRAUS, DEAN & WALKER, LLP
215 SW Washington St. Suite 200
Portland, OR 97204
Telephone: (503) 242-1745

Joseph D. Nady
General Counsel
WASHOE TRIBE OF NEVADA & CALIFORNIA
919 U.S. Hwy 395 N.
Gardnerville, Nevada 89410
Telephone: (775) 265-8600

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

ii. TABLE OF AUTHORITIES

1. INTEREST OF AMICI CURIAE ........ 1

2. SUMMARY ........ 3

3. ARGUMENT ........ 5

I. The Panel's Decision Nullifies the Washoe Tribe's Exercise of Protected Powers of Self-Government and Conflicts with Precedent of This Court, the Supreme Court, and Other Circuits ........ 5

II. Stripping Tribes of Their Authority to Immunize Tribal Officers within Tribal Control Raises is a Question of Exceptional Importance to Tribes. ........ 12

III. The Panel's Decision Conflicts with This Court's Consistent Rule 19 Precedent Governing. ........ 18

IV. Whether a Tribe's Interest in its Self-Governance over Internal Matters is a Legally Protected Interest for Purposes of FRCP 19 is a Question of Exceptional Importance. ........ 23

4. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

## Cases

*Acres Bonusing, Inc. v. Marston*, 17 F.4th 901 (9th Cir. 2021) ........... 6, 9

*Blatchford v. Native Village of Noatak,* 501 U.S. 775 (1991) .................. 9

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962 (9th Cir. 2008) ............................................ 22

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987) .. 11

*Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718 (9th Cir. 2008) ............ 21

*Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968) ....................................... 6, 7

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002) ......................... 19–20, 22

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843 (9th Cir. 2019) .............................. 18, 19, 22

*Gallegos v. Jicarilla Apache Nation*, 97 F. App'x 806 (10th Cir. 2003) ........................................................................ 10

*Jamul Action Comm. v. Simermeyer,* 974 F.3d 984 (9th Cir. 2020)....... 22

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751 (1998) ............... 9

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th (9th Cir. 2022) ............................................................... 22

*Lewis v. Clarke*, 581 U.S. 155 (2017) ................................................ 8, 9

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) .......... 19, 22

*Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024) ............................................................... 20, 22

*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014) ............... 9, 16

*N. Metro Harness Initiative LLC v. Beattie*, No. 24-CV-1369, 2025 WL 2374408 (D. Minn. Aug. 15, 2025)...................................... 17

*Penobscot Nation v. Fellencer*, 164 F.3d 706 (1st Cir. 1999) ................. 10

*Romero v. Peterson*, 930 F.2d 1502 (10th Cir. 1991) ............................... 7

*Romero v. Peterson*, F.3d 547 (10th Cir. 1993) ....................................... 7

*RunItOneTime LLC v. United States*, 146 S. Ct. 98 (2025) .................... 20
*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978) ................ 5, 6, 11–12
*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) ............. 20, 22
*Snyder v. Navajo Nation*, 382 F.3d 892 (9th Cir. 2004) ........................... 9
*White v. Univ. of Cal.*, 765 F.3d 1010 (9th Cir. 2014) ............................ 19
*Williams v. Lee*, 358 U.S. 217 (1959) ....................................................... 6

**Statutes and Codes**

25 U.S.C. § 2801 ............................................................................. 15–16
25 U.S.C. § 5307(b) ............................................................................... 21
Indian Reorganization Act of 1934, 25 U.S.C. § 512 et seq. ...................... 5
Indian Self-Determination and Education Assistance Act, § 5301 et seq. ................................................................................................ 5
Navajo Nation Code § 554(F)(4)(a). ....................................................... 14
The Navajo Preference in Employment Act, 15 N.N.C. § 601 et seq. .... 14
Washoe Tribal Law and Order Code, tit. 33, § 33-30-010 ....................... 7

**Other Authorities**

U.S. Comm'n on Civil Rights, *A Quiet Crisis: Federal Funding and Unmet Needs in Indian Country* (2003) ............................................ 15

**Rules**

Federal Rule of Civil Procedure 19 ........................................................ 18

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ........................................................................ 8

## INTEREST OF AMICI CURIAE

Amici are the following federally recognized Indian tribes: Cher-Ae Heights Indian Community of the Trinidad Rancheria; Cheyenne River Sioux Tribe; Colorado River Indian Tribes of the Colorado River Indian Reservation, Arizona and California; Gila River Indian Community; Hopland Band of Pomo Indians; Jamestown S'Klallam Tribe; Keweenaw Bay Indian Community; Morongo Band of Mission Indians; Navajo Nation; Oglala Sioux Tribe; Prairie Band Potawatomi Nation; Rincon Band of Luiseno Indians; San Pasqual Band of Diegueno Mission Indians; Suquamish Indian Tribe; Susanville Indian Rancheria; Washoe Tribe of Nevada and California; and Yuhaaviatam of San Manuel Nation.

Amici rely on the rights of tribal self-government derived from their closely guarded sovereign status. Unless corrected, the panel's holdings in this case threaten the ability of amici to govern their internal affairs by (i) stripping tribes of their ability to confer absolute immunity on tribal employees for individual-capacity suits related to their implementation of tribal laws governing internal matters, and

(ii) by deviating from settled precedent requiring that tribes be joined to litigation relating to tribes' governance of such matters.

As part of their system for governing official conduct, the Washoe Tribe and other amici have enacted law protecting employees who carry out tribal responsibilities and providing internal mechanisms for addressing claims. The panel's decision gives no effect to those tribal laws and allows federal litigation regarding matters of tribal self-governance to proceed without requiring the tribe to be joined to the action.

Amici will bear governmental consequences, including diminishment of their ability to govern their internal affairs and their ability to recruit and retain employees. These consequences extend far beyond this employment dispute to the daily operation of tribal governments throughout a circuit home to hundreds of federally recognized tribal nations. Amici submit this brief with the accompanying motion for leave under Federal Rule of Appellate Procedure 29(b) and Ninth Circuit Rule 29-2.[1]

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or

## SUMMARY

Plaintiff's termination and grievance claims in this case challenge how the Washoe Tribe, acting through its officers, exercised authority over a police officer employed by the Tribe's police department: responding to complaints about him, approving his removal, and administering the resulting personnel dispute. No. 25-3136, slip. op. at 5–7, 28–29, 33 (Sept. 11, 2026) ("Decision"). Although the Tribe is not a party to this case, the case is significantly related to its exercise of its powers of self-government and its legally protected interests in governing its internal affairs.

The panel's decision effectively reverses this Court's long-standing precedent and gives no legal effect to the Tribe's law regulating internal personnel matters by conferring absolute personal immunity on the Tribe's officers and employees. The panel's decision also conflicts with the well-settled precedent applying Federal Rule of Civil Procedure (FRCP) 19 ("Rule 19") by failing to consider the Tribe's legally protected interest in regulating employment relations with its police officers who

---

submitting this brief; and no person other than amici curiae contributed money that was intended to fund preparing or submitting this brief.

carry out core government functions of maintaining law and order on the Tribe's reservation.

The panel's decision conflicts with decisions of this Court, the Tenth Circuit, and the Supreme Court. Unless corrected, the panel's decision will severely undermine the rights of tribal self-government held by hundreds of federally recognized Indian tribes located within the Ninth Circuit by impeding their ability to protect their legally protected interest in regulating internal personnel matters involving employees who carry out core tribal governmental functions by: (1) stripping tribes of their ability to confer absolute immunity on tribal employees related to their implementation of tribal law; and (2) applying the wrong analysis to determine if a tribe is a required party under Rule 19.

# ARGUMENT

## I. The Panel's Decision Nullifies the Washoe Tribe's Exercise of Protected Powers of Self-Government and Conflicts with Precedent of This Court, the Supreme Court, and Other Circuits.

The questions presented in this case must be considered in the context of the long-standing federal law protecting and promoting the inherent sovereign right of federally recognized Indian tribes to exercise powers of self-government.

Congress has expressly recognized the importance of tribal self-governance and has repeatedly enacted laws promoting the inherent sovereign rights of tribal self-determination and self-governance, including but not limited to the Indian Reorganization Act of 1934, 25 U.S.C. § 512 et seq., and the Indian Self-Determination and Education Assistance Act, *id.* § 5301 et seq. (ISDEAA).

A substantial body of federal case law has been developed to protect inherent rights of tribal self-governance. As the Supreme Court has affirmed, "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (citations omitted). Indian tribes "remain a 'separate people,

with the power of regulating their internal and social relations" and "have power to make their own substantive law in internal matters . . . and to enforce that law in their own forums." *Id.* (citations omitted); *see also Williams v. Lee*, 358 U.S. 217, 220 (1959).

In *Davis v. Littell*, the Court was presented with the question of "[w]hether the Navajo Tribe is such a sovereign as can bestow absolute privilege upon its officers." 398 F.2d 83, 84 (9th Cir. 1968); *see also Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 913 n.4 (9th Cir. 2021) ("*Davis* involved the issue of whether the tribe had 'bestowed' on its officers the personal defense of absolute immunity." (citing 398 F.2d at 84–85)). *Davis* answered plainly in the affirmative: "it can hardly be disputed that the Navajo Tribe enjoys sufficient independent status and control over its own laws and internal relationships to be able to accord absolute privilege to its officers within the areas of tribal control." 398 F.2d at 84. Only because the Tribe's laws *did not* (at that time) contain provisions governing absolute immunity, but provided that such matters should be guided by federal or state law, did *Davis* look to state law on that issue. *Id.*

*Davis* is consistent with the Tenth Circuit's decisions in *Romero v. Peterson*, in which the court affirmed the lower court's ruling that tribal employees "acting solely as tribal actors . . . are entitled to absolute immunity." 5 F.3d 547 (Table) (10th Cir. 1993); 930 F.2d 1502, 1505 (10th Cir. 1991) (finding that "[i]f defendants were tribal actors they have a substantial argument that they were entitled to invoke the absolute immunity of the Indian tribe").

The panel's application of the Washoe Tribe's law conferring absolute immunity irreconcilably conflicts with *Davis* and *Romero*. The panel's decision acknowledges that in *Davis* "the Navajo Tribe's Tribal Code did not expressly bestow immunity on tribal officers, [but] suggested that the immunity question should 'be guided by federal or appropriate state law.'" Dec. at 17 (citations omitted). However, *Davis* only considered state law governing absolute immunity because that is what the Navajo Tribal Code, in effect at that time, instructed. 398 F.2d at 84. Thus, *Davis* expressly gave effect to the Tribal Code.

The panel acknowledged that the Washoe Tribal Law and Order Code, tit. 33, § 33-30-010, does not apply federal or state law, but rather expressly confers the Tribe's absolute immunity on the Tribe's officers

and employees "while engaged in work assigned or controlled by the Tribe or Tribal Entity." Dec. at 18–19. However, rather than adhere to *Davis* and apply the absolute immunity conferred by the Washoe Tribe, the panel held that a tribe's conferral of absolute immunity cannot reach federal claims and does not reach state claims "by its own force." Dec. at 23, 29.

Relying solely on its flawed reading of the Supreme Court's decision in *Lewis v. Clarke*, 581 U.S. 155 (2017), and misuse of Supreme Court decisions applying the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, to states, the panel concluded that "[r]etained tribal sovereignty does not include the power to immunize tribal employees from liability for violations of *federal law* . . . ." Dec. at 23.

However, *Lewis* instead makes clear that personal immunity defenses are available in individual-capacity actions asserted against tribal employees related to actions taken within the scope of their employment. 581 U.S. at 163. *Lewis* did not involve any assertion of a personal immunity defense, and the Court had no occasion to define the contours of personal immunities available to tribal employees. The panel's conflation of the scope of a tribe's sovereign immunity with a

tribe's authority to confer absolute immunity on its officers and employees as a power of self-government further conflicts with this Court's precedent, which affirms that "[w]hether tribal officials enjoy personal immunities from suit is a different question from whether tribal sovereign immunity applies." *Acres Bonusing*, 17 F.4th at 913 n.4 (citing *Lewis*, 581 U.S. at 163).

As the panel correctly observed, "[t]ribes are, of course, differently situated than States in our constitutional order," Dec. at 24, and the Supreme Court has often noted "that the immunity possessed by Indian tribes is not coextensive with that of the States." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 755–56 (1998) (citing *Blatchford v. Native Village of Noatak,* 501 U.S. 775 (1991)). The panel also correctly observed that "[i]t is true that 'unless and until Congress acts, the tribes retain their historic sovereign authority.'" Dec. at 8 (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014)).

In effectively overturning *Davis* and abrogating the power of tribal self-government to extend absolute immunity to tribal officers and

employees, the panel cites no congressional act abrogating such power.[2] Rather, the panel relies on Supreme Court decisions applying the Supremacy Clause to states without citing any authority regarding the application of the Supremacy Clause to tribes' exercise of their inherent right of tribal self-government over internal matters. This is not grounds to diminish the Washoe Tribe's inherent sovereign authority, where any diminishment of its tribal powers of self-government may only be effected by Congress.

Indian law jurisprudence from other circuits consistently emphasizes the importance of tribal employment relationships as matters of internal tribal self-governance. *See, e.g.*, *Penobscot Nation v. Fellencer*, 164 F.3d 706, 713 (1st Cir. 1999) (termination of a nurse's employment); *Gallegos v. Jicarilla Apache Nation*, 97 F. App'x 806, 810–11 (10th Cir. 2003) (wrongful termination claims) (citing *Penobscot Nation*, 164 F.3d at 713).

---

[2] On the contrary, the Ninth Circuit recognizes that tribal police are hired to maintain law and order within the reservation, a traditional governmental function. *See Snyder v. Navajo Nation*, 382 F.3d 892, 895 (9th Cir. 2004); *see also Gallegos v. Jicarilla Apache Nation*, 97 F. App'x 806, 811 (10th Cir. 2003) (the role of a tribal police officer is "a position central to tribal self-governance").

Regarding Plaintiff's state law claims, the panel held that the Washoe Tribe's conferral of absolute immunity did not reach those claims by its own force, effectively subordinating tribal law governing internal personnel matters arising within Indian country to state law, without any consideration of the federal law protecting tribal self-governance. Dec. at 29. This conflicts with *Davis* because, unlike in *Davis*, the Washoe Tribe's Title 33 does not provide that state law may define absolute immunity conferred on tribal officers. It also conflicts with decisions that preempt the application of state law within Indian country. *See, e.g.*, *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987) ("[S]tate laws may be applied to tribal Indians on their reservations if Congress has expressly so provided.").

As recognized in *Davis* and *Romero*, a tribe's powers of self-government include the power to confer absolute immunity to tribal employees related to actions taken in the scope of their employment. The panel's decision effectively abrogates this power, contrary to the well-established rule that only Congress has the "authority to limit, modify or eliminate the powers of local self-government which the tribes

otherwise possess." *Santa Clara Pueblo*, 436 U.S. at 56 (citations omitted).

## II. Stripping Tribes of Their Authority to Immunize Tribal Officers within Tribal Control Raises is a Question of Exceptional Importance to Tribes.

Indian tribes have successfully built on federal law protecting and promoting tribal sovereignty and self-governance to administer a myriad of core governmental services to benefit their citizens, develop their economies, and govern their territory. Those advancements depend on the federal legal framework that protects tribes' inherent rights of self-determination and self-governance. The panel's stripping tribes of their sovereign authority to confer absolute immunity on their officers and employees threatens tribal governments' ability to effectively govern internal personnel matters.

For nearly 60 years following *Davis*, the Ninth Circuit has recognized the sovereign right of tribes to confer absolute immunity on their officers and employees. Tribes have relied on that authority to regulate relations with their officers and employees pursuant to their own laws and policies, and to resolve disputes in their own forums using tribal procedures. *Davis* has provided tribes with a stable rule that

protects tribal self-governance and enabled tribes to enact and administer tribal law or policy governing absolute immunity.

Unless corrected, the panel's nullification of *Davis* will deprive tribes of the ability to protect tribal government employees, who carry out tribal law governing internal matters such as law enforcement, tribal elections, and tribal enrollment from individual capacity lawsuits. That a tribal officer's or employee's immunity would depend upon the source and forum of the claim rather than the tribe's law also undermines tribes' ability to structure employment procedures and to budget for governmental operations and the cost of legal defense. The panel's decision will govern the terms on which tribal officers and employees from the roughly 420 tribes in the Ninth Circuit may be sued in state and federal courts for carrying out core tribal governmental functions like law enforcement.

The panel's decision disregards the robust adjudicatory and administrative systems that tribes have developed to resolve employment disputes. Amicus Navajo Nation, which employs over 5,000 government employees, illustrates the point. In reliance on *Davis*, the Nation continues to extend absolute personal immunity to its

officers and employees for "[p]olicy decisions or the exercise of discretion" undertaken "in the exercise of judgment or discretion vested in the . . . individual." 1 Navajo Nation Code (N.N.C.) § 554(F)(4)(a). The Navajo Preference in Employment Act, 15 N.N.C. § 601 et seq. (NPEA) provides employment protections to all employees within the Nation's territorial jurisdiction. The NPEA provides a comprehensive administrative framework for resolving numerous labor disputes through the Navajo Nation Labor Commission or Navajo Nation Office of Hearings and Appeals. Through that framework, these administrative bodies hear between 80 and 100 employment claims annually. The panel's ruling would allow employees to bypass this system by suing tribal officers in their individual capacities in federal court, imposing significant costs and delays on the Nation and burdening the district courts with disputes that tribal forums are designed to resolve.

Other tribes have similarly adopted law and policies that confer immunity on tribal officers and employees and provide tribal mechanisms to address these internal employment matters through tribal courts, grievance procedures, and other tribal mechanisms. The

panel's decision will result in a sharp increase in costly state and federal litigation that drains already scarce resources from tribal government programs and undermines self-government gains that have been achieved through federal legislation.

The panel's decision also ignores the fact that courts have respected tribes' interests and abilities to manage these matters for decades. Tribes coordinate absolute immunity law and policies with personnel policies, insurance, defense obligations, indemnification, grievance procedures, discipline, limited waivers of tribes' or tribal entities' sovereign immunity, and administrative remedies. Removing the employee protection threatens the balance tribal governments have achieved.

As Congress and courts have recognized, tribes have limited resources, particularly compared to federal and state governmental entities. *See, e.g.*, U.S. Comm'n on Civil Rights, *A Quiet Crisis: Federal Funding and Unmet Needs in Indian Country* (2003). Congress expressly recognized the lack of funding for tribal law enforcement in the Tribal Law and Order Act, finding that "less than 3,000 tribal and Federal law enforcement officers patrol[led] more than 56,000,000 acres

of Indian country, which reflect[ed] less than 1/2 of the law enforcement presence in comparable rural communities nationwide." 25 U.S.C. § 2801 (note).

If the panel's decision stands, tribes will be left with the decision to either leave employees personally exposed or divert limited governmental funds to legal defense and indemnification. Many tribes do not have the resources to promise full indemnification for employees and officers against every federal and state individual capacity claim. Even partial or limited indemnification can divert funds from health care, housing, courts, and other governmental services. *See Bay Mills Indian Cmty.*, 572 U.S. at 812–13 (Sotomayor, J., concurring).

The panel's holding will further have concrete consequences for tribal recruitment, retention, and administration. Tribal governments compete with federal, state, and local employers for police chiefs, housing and health directors, administrators, and other employees. Candidates may decline tribal service, opting for other employers able to offer more predictable protection, demand compensation less-resourced tribes cannot afford, or refuse promotion to positions requiring the exercise of increased discretion and carrying greater risk

of personal liability. Vacancies and turnover burden public safety, limit continuity of government, and jeopardize the delivery of tribal services.

The risk of personal liability also interferes with the execution of tribal laws. Tribes govern through their officers and employees. A tribal council may adopt a policy, but an employee or officer must implement it. Personal liability may cause employees to delay action, seek unnecessary approval, decline sensitive assignments, or resist lawful tribal directives. *See N. Metro Harness Initiative LLC v. Beattie*, No. 24-CV-1369, 2025 WL 2374408, at *3 (D. Minn. Aug. 15, 2025) (a threat of substantial personal liability "is likely to severely hamper" tribal operations even when a judgment formally runs only against an individual). The effects may extend beyond employment actions to other core self-governance activities such as licensing and regulatory enforcement, housing, child and family services, public health, land and resource management, and tribal elections and enrollment.

The panel's decision will also create fragmented exposure in the Ninth Circuit whereby federal claims are governed by federal common law and state law or comity governs state law claims. The Tenth Circuit recognizes tribally conferred immunity on tribal officers and

employees within areas of tribal control, whereas the Ninth Circuit now does not. For many tribes, particularly those four that straddle the Ninth and Tenth Circuits, it will be very difficult to maintain a single tribal employment and risk-allocation system that accounts for different exposure based on the claim and filing location.

## III. The Panel's Decision Conflicts with This Court's Consistent Rule 19 Precedent Governing.

Rule 19 sets forth a three-step inquiry to analyze the compulsory joinder of required parties: (1) whether the absent party is required to be joined under Rule 19(a); (2) whether joinder of that party is feasible; and (3) whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. FRCP 19(a)–(b). Relevant to this case, a party is a "required party" that must be joined if the party claims an interest relating to the subject of the action and disposing of the action in their absence may, as a practical matter impair or impede their ability to protect the interest. FRCP 19(a)(1)(B). The Rule 19(a) inquiry "is a practical one and fact specific' . . . and 'few categorial rules inform [ ] [the] inquiry[.]" *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019) (*Diné CARE*) (citations omitted).

Rather than analyze whether the Washoe Tribe had a legally protected interest, the panel jettisoned this Court's traditional inquiry and instead solely applied *Lewis's* real party in interest test to look only at whether the plaintiff sought damages from, or injunctive relief running against, the Tribe. Dec. at 32. In doing so, the panel disregarded a long line of cases making clear that a tribe need not be a real party in interest in order to have a legally protected interest in a case.

Ninth Circuit precedent clearly demonstrates that the Rule 19(a) analysis for a legally protected interest is entirely separate from, and broader than, the real party in interest test employed by the panel. *See, e.g.*, *Diné CARE*, 932 F.3d at 851–52; *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

Further, the Ninth Circuit has repeatedly recognized that sovereign interests hold weight in Rule 19's legally protected interest inquiry. For example, in *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, the Court recognized that a judgment rendered in the Navajo Nation's absence would have "impair[ed] its

sovereign capacity to negotiate contracts and, in general, to govern [its] reservation," as well as the tribe's economic interests. 276 F.3d 1150, 1157 (9th Cir. 2002); *see also id.* (collecting Ninth Circuit cases recognizing a tribe's legally protected interest in governing its reservation); *Maverick Gaming LLC v. United States*, 123 F.4th 960, 972 (9th Cir. 2024), *cert. denied sub nom. RunItOneTime LLC v. United States*, 146 S. Ct. 98 (2025); *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). These cases correctly did not employ the real party in interest test to determine whether a tribe had a legally protected interest.

The panel cited no cases to support its new and unsupported Rule 19 inquiry. Moreover, the panel created a two-tier system that, unless corrected, subjects tribes moving for relief under Rule 19 to a substantially higher burden than other parties.

As noted in Section I, federal courts have consistently protected tribal self-governance, holding that core governmental activities like law enforcement and related employment relationships are tribal internal matters. The Washoe Tribe, thus, has a legally protected right in regulating personnel matters involving its police officers. An

individual capacity lawsuit challenging implementation of the Tribe's personnel procedures threatens the Tribe's ability to protect that interest.

This case must also be understood in the context of the ISDEAA, under which many tribes, including the Washoe Tribe, receive federal funding to operate governmental activities like law enforcement. Importantly, ISDEAA *requires* tribes and tribal organizations to provide preferences and opportunities for training and employment to Indians. 25 U.S.C. § 5307(b). This litigation, therefore, relates to the Tribe's ability to comply with the terms of its ISDEAA contract, and the panel's holding risks subjecting the Tribe to inconsistent legal obligations and jeopardizing its law enforcement funding.

"[M]atters of governance of the Indian nation or policy matters that are critical to their continuation as a tribe" deserve protection. *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 728 (9th Cir. 2008) (Gould, J., concurring). The panel failed to consider the Washoe Tribe's sovereign interest in maintaining its self-governance over internal personnel matters of its police officers and disregarded the Tribe's legally protected rights associated with such matters.

The panel's decision allows a plaintiff to litigate a case directly related to the interpretation and application of a tribe's law regulating internal personnel matters affecting core tribal governmental functions, or the propriety of tribal governmental action, in federal court without the tribe being present. This irreconcilably conflicts with this Circuit's precedent applying Rule 19 to Indian tribes. *Diné CARE*, 932 F.3d at 851–61; *Maverick Gaming*, 123 F.4th at 972–83; *Dawavendewa,* 276 F.3d at 1155–63; *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 973–77 (9th Cir. 2008); *Makah Indian Tribe*, 910 F.2d at 558–60; *Shermoen*, 982 F.2d at 1317–19; *Jamul Action Comm. v. Simermeyer,* 974 F.3d 984, 996–98 (9th Cir. 2020); *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 943–45 (9th Cir. 2022).

Because the panel's decision does not purport to overrule the long line of Rule 19 cases above, it will also create confusion in the Ninth Circuit as to which test district courts should apply, creating a lack of consistency.

## IV. Whether a Tribe's Interest in its Self-Governance over Internal Matters is a Legally Protected Interest for Purposes of FRCP 19 is a Question of Exceptional Importance.

This case is critical to core matters of tribal self-governance. Because tribes enjoy sovereign immunity, parties who have a dispute with a tribe, a tribal policy, or a tribal action commonly sue another party with the goal of taking some action against a tribal interest because the plaintiff knows that he cannot sue the tribe directly.

If tribes' sovereign and self-governance interests are disregarded in the Rule 19 inquiry, plaintiffs will be able to challenge all manner of tribal policies, codes, and internal governance decisions by only naming the individual tribal employees who carried out the tribal directive. Under the panel's radical change to the Rule 19 inquiry, tribes will likely be denied required party status no matter how significantly the litigation will affect a tribe's legally protected interest in its self-governance. This effect could extend beyond the law enforcement employment context into other matters that have also been considered core to tribal sovereignty, yet may not satisfy the real party in interest test, including treaty rights, enrollment decisions, tribal elections, and more.

The panel's substitution of the real party in interest test relegates tribes to the sidelines, while matters affecting the most significant rights of self-government are litigated by parties who do not share the tribe's interests. The panel's decision runs counter to precedent and would be unfaithful to decades of jurisprudence respecting tribal self-governance.

## CONCLUSION

The Court should grant rehearing en banc.

Dated: November 5, 2026 Respectfully submitted,

*s/ Timothy C. Seward*
Timothy C. Seward
HOBBS, STRAUS, DEAN & WALKER, LLP
1903 21st Street, 3rd Floor
Sacramento, CA 95811
Telephone: (916) 442-9444

Geoffrey D. Strommer
HOBBS, STRAUS, DEAN & WALKER, LLP
215 SW Washington St. Suite 200
Portland, OR 97204
Telephone: (503) 242-1745

Joseph D. Nady
General Counsel
WASHOE TRIBE OF NEVADA & CALIFORNIA
919 U.S. Hwy 395 N.
Gardnerville, Nevada 89410
Telephone: (775) 265-8600

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on November 5, 2026. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/ Timothy C. Seward*
Timothy C. Seward

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 25-3136

I am the attorney or self-represented party.

**This brief contains** 4,178 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ______.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Timothy C. Seward **Date** November 5, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*